UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

CASTLERIGG MASTER INVESTMENTS LTD., :
                                                          :
                      Plaintiff,            :    Civ. Action No.:  07 CIV 6385 (SAS)
                                                          :
              v.                                 :
                                                          :
APOLLO RESOURCES INTERNATIONAL, INC., :
                                                          :
                     Defendant.            :
-----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

SCHULTE ROTH & ZABEL LLP
Alan R. Glickman
David M. Hillman
Dana M. Roth
919 Third Avenue
New York, New York  10022
(212) 756-2000
*Attorneys for Castlerigg Master Investments Ltd.*

10478470.1

Table Of Contents

Table Of Authorities...............................................................................................ii

Preliminary Statement ........................................................................................... 1

Statement Of Facts................................................................................................. 3

The Note And Previous Events of Default Under The Note .................................. 3

Argument .............................................................................................................. 11

I. CASTLERIGG IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A
PRELIMINARY INJUNCTION. ........................................................................ 11

A. Castlerigg Will Suffer Irreparable Harm If Apollo Is Not Enjoined ................... 12

B. Castlerigg Is Likely To Succeed On The Merits ................................................ 15

C. The Balance Of Hardships Tips In Castlerigg's Favor ...................................... 16

Conclusion ............................................................................................................ 17

Table Of Authorities

<u>Cases</u>

*Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*,
    Nos. 02 CV 10237(GBD), 2003 WL 328302 (S.D.N.Y. Feb. 11, 2003)...........................13, 14

*Alpha Capital Aktiengesellschaft v. Group Mgmt. Corp.*,
    No. 02 Civ. 2219 (LBS), 2002 WL 31681798 (S.D.N.Y. Nov. 25, 2002) .......................14, 15

*Anacomp, Inc. v. Thompson-Kent Fin., Inc.*,
    No. 96 Civ. 5813 (JSM), 1997 WL 23178 (S.D.N.Y. Jan. 22, 1997)......................................14

*Brenntag Int'l Chems., Inc. v. Bank of India*,
    175 F.3d 245 (2d Cir. 1999) ....................................................................................12, 16

*Capital Distrib. Servs., Ltd. v. Ducor Express Airlines, Inc.*,
    440 F. Supp. 2d 195 (E.D.N.Y. 2006) ......................................................................14

*Clemente Global Growth Fund, Inc. v. Pickens*,
    705 F. Supp. 958 (S.D.N.Y. 1989) ...........................................................................16

*In re Feit & Drexler, Inc.*,
    760 F.2d 406 (2d Cir. 1985) ...................................................................................13

*Gelfand v. Stone*,
    727 F. Supp. 98 (S.D.N.Y. 1989) ............................................................................16

*Helene Curtis v. Nat'l Wholesale Liquid. Inc.*,
    890 F. Supp. 152 (E.D.N.Y. 1995) ...........................................................................13

*Innoviant Pharmacy, Inc. v. Morganstern*,
    390 F. Supp. 2d 179 (N.D.N.Y. 2005) ......................................................................13

*Republic of Philippines v. Marcos*,
    806 F.2d 344 (2d Cir. 1986) ...................................................................................13

*Rudd v. Advance Bedding Corp.*,
    No. 95 CV 2099, 1995 WL 548723 (E.D.N.Y. Sept. 8, 1995)........................................14

*Seide v. Crest Color, Inc.*,
    835 F. Supp. 732 (S.D.N.Y. 1993) ...........................................................................14

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999) .....................................................................................13

*Transamerica Rental Fin. Corp. v. Rental Experts*,
    790 F. Supp. 378 (D. Conn. 1992)............................................................................16

*United States v. New York,*
    708 F.2d 92 (2d Cir. 1983) ................................................................14

*Wenner Media LLC v. N. & Shell N. Am. Ltd.,*
    No. 05 Civ. 1286 (CSH), 2005 WL 323727 (S.D.N.Y. Feb. 8, 2005)....................12

*Zeltser v. Regal V World-Wide Holdings, Inc.,*
    No. 96-7820, 1997 WL 176851 (2d Cir. Mar. 25, 1997).........................................13

<u>Rules and Regulations</u>

Fed. R. Civ. P. 65..................................................................................................12

Fed. R. Civ. P. 65(a) .................................................................................................2

17 C.F.R. § 240.14c-2 (2007) ...................................................................................8

17 C.F.R. § 240.14c-5 (2007) ...................................................................................8

Preliminary Statement

On July 12, 2007, Castlerigg Master Investments Ltd. ("Plaintiff" or "Castlerigg") commenced this action against Apollo Resources International, Inc. ("Apollo" or the "Company") for breach of a Senior Secured Convertible Note that Apollo issued to Castlerigg at the end of last year (the "Note") for amounts owed thereunder in excess of $9 million as a result of Apollo's numerous Events of Default, including its failure to pay Castlerigg principal and interest when due.[1]

The basis for this motion is that during the pendency of the action, Apollo intends to consummate at least two transactions that would clearly violate contractual covenants made by Apollo in the Note and jeopardize Plaintiff's ability to collect on any judgment awarded in the action.

First, Apollo along with two of its subsidiaries intends to consummate an asset sale to Imperial Petroleum, Inc. ("Imperial") (the "Apollo/Imperial Transaction"). As part of that transaction, Apollo is funding Imperial's assumption of up to $8.3 million of Apollo debt that was incurred in clear violation of the Note.

Second, Apollo, which is currently a publicly held corporation, has proposed to do a "going private" transaction through a reverse/forward stock split. Apollo has estimated that the transaction, which violates a number of covenants in the Note and a related agreement that Apollo has with Castlerigg, will cost Apollo in excess of $2.1 million.

The effect of both of these transactions will be to irreparably harm Castlerigg by impairing the ability of Apollo, which already is in severe financial straits, from paying its

---

[1]    A copy of the Complaint without its exhibits is attached as Exhibit A to the Declaration of Alan R. Glickman, Esq. dated July 30, 2007 ("Glickman Declaration"). Relevant portions of the Note are attached as Exhibit B to the Glickman Declaration

obligations due and owing under the Note. In addition to having defaulted on principal and

interest payments under the Note, Apollo has not filed financial and operating reports with the

Securities and Exchange Commission ("SEC") since filing its Form 10-Q for the third quarter of

2006. That is the result of Apollo's having had to replace its prior chief financial officer, who

resigned in April of this year, formally expressing his being "most troubled by ... [his] ability to

move Apollo in a direction toward better internal controls, fiscal responsibility and basic

corporate governance." Apollo has conceded that it does "not have the financial wherewithal to

manage the implementation of Sarbanes-Oxley."

The contemplated transactions could cost Apollo in excess of $10 million and

clearly violate covenants in the Note, which expressly states that their violation would constitute

irreparable harm entitling Castlerigg to injunctive relief. (Exhibit B to the Glickman Declaration

at § 18.) Time is of the essence because the Apollo/Imperial Transaction is scheduled to close on

August 1, 2007, and Apollo has the ability to mail out its Schedule 14C Information Statement,

which begins the "going private" process, any day.

Accordingly, Castlerigg is moving by order to show cause pursuant to Federal

Rule of Civil Procedure 65(a) for a preliminary injunction, and a temporary restraining order

pending the hearing on that injunction, that would enjoin Apollo from consummating the

impending transactions and prevent it from otherwise breaching the covenants at issue. In

particular, the preliminary injunction and temporary restraining order would enjoin and restrain

Apollo from directly or indirectly taking any actions to:

> (a)      consummate the Apollo/Imperial Transaction or permit its subsidiaries to do so;
>
> (b)      otherwise redeem, defease, repurchase, repay or make payments in respect of any existing Indebtedness as defined in Section 27(s) of the Note;
>
> (c)      incur, guaranty, or assume any new Indebtedness as defined in Section 27(s) of the Note;

10478470.1

2

(d)      proceed with a going private transaction through a Reverse/Forward Stock Split, as described in the definitive Information Statement pursuant to Section 14(c) of the Securities Exchange Act of 1934 filed by Apollo with the SEC on May 29, 2007, whereby certain Apollo stock is to be purchased by Apollo; and

(e)      otherwise redeem, repurchase or declare or pay any cash dividend or distribution on its stock.

Statement Of Facts

The Note And Previous Events of Default Under The Note

On December 29, 2006, Apollo issued the Note to Castlerigg with a principal amount of $8,296,752, which was due to mature, unless redeemed earlier, on May 30, 2008.[2] (Exhibit B to the Glickman Declaration.)  The Note provides, among other things, that Castlerigg may require Apollo to redeem the Note if there is an "Event of Default" thereunder.  (Exhibit B to the Glickman Declaration at § 4(b).)  To date, as set forth below and in the Complaint, there have been multiple Events of Default by Apollo.

First, Apollo failed to pay Castlerigg the required Installment Amounts, as defined in the Note, on March 31, 2007 and May 30, 2007, which constitute Events of Default under Section 4(a)(xi) of the Note.  (Pliskin Aff. at ¶ 5; Exhibit B to the Glickman Declaration at §§ 1 and 4(a)(xi).)  Apollo also failed to pay Interest, as that term is defined in the Note, that had accrued to date on the unpaid Installment Amounts.  (Pliskin Aff. at ¶ 6; Exhibit B to the Glickman Declaration at § 2.)  Apollo's failure to pay Castlerigg the Installment Amounts and

---

[2]      Prior to Apollo's issuance of the Note, in July 2006, Apollo and Castlerigg had entered into a Securities Purchase Agreement and a Registration Rights Agreement.  (Affidavit of Matthew Pliskin sworn to on July 30, 2007 ("Pliskin Aff.") at ¶ 3.)  Relevant portions of the Securities Purchase Agreement and the Registration Rights Agreement are attached as Exhibits C and D, respectively, to the Glickman Declaration.  Apollo and Castlerigg also entered into an Amendment Agreement dated as of December 29, 2006, pursuant to which Apollo, in exchange for the delivery to Apollo for cancellation of the common shares and warrants previously issued to Castlerigg under the Securities Purchase Agreement, issued the Note to Castlerigg.  (Pliskin Aff. at ¶ 4.)  Relevant portions of the Amendment Agreement are attached as Exhibit E to the Glickman Declaration.

Interest constitute Events of Default under Section 4(a)(v) of the Note. (Exhibit B to the Glickman Declaration at § 4(a)(v).)

Second, the Company has failed to maintain its listing on any Eligible Market[3] for more than five (5) consecutive Trading Days, as defined in the Note. (Pliskin Aff. at ¶ 7.) Instead, the Company now only trades as an OTC "Pink Sheet." (Pliskin Aff. at ¶ 7.) Because the Company has not been listed on any Eligible Market for more than five (5) consecutive Trading Days, an Event of Default has occurred under Section 4(a)(ii) of the Note. (Exhibit B to the Glickman Declaration at § 4(a)(ii).)

Third, the Company has failed to file a Registration Statement by the defined Filing Deadline, which is required by the Registration Rights Agreement, as amended by the Amendment Agreement. (Pliskin Aff. at ¶ 8.) Apollo also failed to have the Registration Statement declared effective by the SEC by the defined Effectiveness Deadline, as required. (Pliskin Aff. at ¶ 9; Exhibit D to the Glickman Declaration at § 2(a).) Accordingly, an Event of Default has occurred and is continuing under Section 4(a)(i) of the Note. (Exhibit B to the Glickman Declaration at § 4(a)(i).)

Fourth, Apollo failed to pay Castlerigg Registration Delay Payments, which were required because of the Company's failure to meet the Filing Deadline and the Effectiveness Deadline. (Pliskin Aff. at ¶ 10; Exhibit D to the Glickman Declaration at § 2(f).) The Company's non-payment of the required Registration Delay Payments constitutes an Event of Default under Section 4(a)(v) of the Note. (Exhibit B to the Glickman Declaration at § 4(a)(v).)

---

[3]    The Note defines "Eligible Market" as "the Principal Market [OTC Bulletin Board ("OTCBB")], The New York Stock Exchange, Inc., the American Stock Exchange, The NASDAQ Global Select Market, The NASDAQ Global Market or The NASDAQ Capital Market." (Exhibit B to the Glickman Declaration at § 27(m).)

Based on the above-described Events of Default, Castlerigg sent Apollo an Event of Default Redemption Notice on May 11, 2007 (the "Notice"). (Pliskin Aff. at ¶ 11.) A copy of the Notice is attached as Exhibit F to the Glickman Declaration. The Notice informed the Company of Castlerigg's election to "exercise its redemption right pursuant to Section 4(b) of the Note . . . [and of its] elect[ion] to redeem the entire Note in full at the Event of Default Redemption Price[.]" *Id.* The Notice further informed the Company that, pursuant to Section 11(a) of the Note, it was required to pay Castlerigg the Event of Default Redemption Price within five (5) business days of receipt of the Notice. (*Id.*; Exhibit B to the Glickman Declaration at § 11(a).)[4]

Despite service of the Event of Default Redemption Notice on May 11, 2007, Apollo failed to redeem the Note as required. (Pliskin Aff. at ¶ 11.) Consequently, Castlerigg commenced the instant action on July 12, 2007. (Exhibit A to the Glickman Declaration.)

Impermissible Apollo/Imperial Transaction

According to a Form 8-K filed with the SEC on June 26, 2007, the Company along with two of its subsidiaries, Mountain States Petroleum Company ("MSP") and BC&D Oil and Gas Corporation ("BC&D"), have agreed to sell certain assets to Imperial. (Exhibit G to the Glickman Declaration.) The sale is scheduled to close on August 1, 2007. *Id.* Copies of the relevant portions of the Imperial Purchase and Sale Agreement are collectively attached as Exhibit H to the Glickman Declaration.

---

[4]     Furthermore, because the Company has failed to timely pay Castlerigg the Event of Default Redemption Price, the Company also owes late charges to Castlerigg. (Exhibit B to the Glickman Declaration at § 23(b).) Apollo also is liable for Castlerigg's costs, attorneys' fees and disbursements incurred in connection with this action to enforce the provisions of the Note. (Exhibit B to the Glickman Declaration at § 19). Apollo also has breached five (5) post-closing covenants in the Amendment Agreement, including covenants relating to providing Castlerigg with interests in certain collateral, such as a promissory note with an aggregate principal amount of $2,750,000 and OGC Pipeline, LLC. (Exhibit E to the Glickman Declaration at §§ 4(e)(i)-(v).)

As part of the purchase price, Imperial will provide three forms of consideration: (a) cash payment to Apollo in the amount of $2.5 million (subject to adjustment); (b) payment or discharge of certain of Apollo's debts in the aggregate of up to $8.3 million, as set forth on Exhibit B to the Imperial Purchase and Sale Agreement; and (c) five million shares of the restricted common stock of Imperial subject to a registration rights agreement. (*See* Exhibit H to the Glickman Declaration at 4 and Exhibit B.) Apollo's debts to be assumed by Imperial are set forth on Exhibit B to the Imperial Purchase and Sale Agreement as follows (collectively referred to as "Apollo's Debt"):

- Accounts payable and revenue payable directly associated with the assets, but not to exceed $3 million;

- Notes payable to banks and secured by the properties not to exceed $0.8 million;

- Pipeline right-of-way payments to the Navajo Indian nation in the amount of $1.0 million affecting the Boundary Butte field;

- Plugging bond due the State of New Mexico in the amount of $0.7 million and assumption of plugging liability in the Hospah field in an estimated amount of $2.8 million; and

- Plugging liability for the damaged SWD well in the DBK field.

(Exhibit H to the Glickman Declaration at Exhibit B.)

Obviously, the consideration that Imperial is paying for the assets subject to the Apollo/Imperial Transaction is commensurately less because Imperial also is assuming obligations of a substantial amount -- up to $8.3 million -- of Apollo Debt. That reduction constitutes a payment by Apollo with respect to those debts.

Apollo's payment of the Apollo Debt violates covenants in the Note. The Note identifies Apollo's disclosed and permitted debt while the Note is outstanding -- defined as "Permitted Indebtedness." (Exhibit B to the Glickman Declaration at § 27(z).) In particular, Apollo agreed that as long as the Note is outstanding, it would not incur or allow any of its

subsidiaries to incur, directly or indirectly, any Indebtedness as defined therein other than "Permitted Indebtedness" (the "Restricted Debt Covenant").  (Exhibit B to the Glickman Declaration at § (13)(b); Exhibit O to the Glickman Declaration at § 27(s).)  None of the liabilities included within the debt to be assumed by Imperial was included in the Note's definition of "Permitted Indebtedness."[5]  Therefore, such debt was either (i) not disclosed by Apollo to Castlerigg to the extent such debt existed at the time the Note was issued on December 29, 2006; or (ii) incurred by Apollo or its subsidiaries after the Note was issued in violation of the Note.  Accordingly, the mere existence of Apollo's Debt, as detailed above, violates the Restricted Debt Covenant in the Note.

In addition, after an Event of Default has occurred and is continuing, the Note has an explicit restriction on the payment of debts, a "Restricted Payments Covenant."  (Exhibit B to the Glickman Declaration at § 13(d).)  Pursuant to this covenant, no debt can be paid off by Apollo once an Event of Default has occurred and is continuing.  *Id.*  The Restricted Payments Covenant provides:

> The Company shall not, and the Company shall not permit any of its Subsidiaries to, directly or indirectly, redeem, defease, repurchase, repay or make any payments in respect of, by the payment of cash or cash equivalents (in whole or in part, whether by way of open market purchases, tender offers, private transactions or otherwise), all or any portion of any Permitted Indebtedness, whether by way of payment in respect of principal of (or premium, if any) or interest on, such Indebtedness if at the time such payment is due or is otherwise made or, after giving effect to such payment, (i) an event constituting an Event of Default has occurred and is continuing or (ii) an event that with the passage of time and without being cured would constitute an Event of Default has occurred and is continuing.

---

[5]     "Permitted Indebtedness" is defined in the Note as Senior Indebtedness ("the principal amount of approximately $416,600 outstanding under the 8% Secured Convertible Promissory Notes of the Company issued in accordance with that certain Note and Warrant Purchase Agreement dated June 30, 2005 with certain investors, in each case, as in effect as of [December 29, 2006]") and the Indebtedness evidenced by the Note and potential "Other Notes."  (Exhibit B to the Glickman Declaration at § 27(z).)

*Id.* Therefore, even if Apollo's Debt were "Permitted Indebtedness," which unequivocally it is not, it cannot be paid once an Event of Default has occurred under the Note.[6] Inasmuch as "Permitted Indebtedness" cannot be paid under these circumstances, obviously impermissible indebtedness cannot be paid either. Yet, that is precisely what Apollo is trying to do by providing Imperial with the consideration to assume the Apollo Debt. In light of the indisputable Events of Default that have occurred to date and that continue, payment of Apollo's Debt directly violates the Restricted Payments Covenant.

Apollo's "Going Private" Transaction

Apollo proposed to take itself private with a "Reverse/Forward Stock Split" in a Schedule 13e-3 filed with the SEC. (Exhibit I to the Glickman Declaration.) On May 18, 2007, Apollo filed a preliminary Information Statement on Schedule 14C with the SEC on May 18, 2007. (Exhibit J to the Glickman Declaration at 2.) On May 29, 2007, Apollo filed a definitive Information Statement on Schedule 14C ("Schedule 14C"), which indicates that the SEC either approved the preliminary Information Statement filed on May 18, 2007, or decided not to review the preliminary Information Statement. (Exhibit K to the Glickman Declaration.) Once the Schedule 14C was properly filed, Apollo is permitted, pursuant to the Securities Exchange Act of 1934 Act, to immediately commence its mailing. 17 C.F.R. § 240.14c-5 (2007). Under Regulation 14C of the 1934 Act, the written consent described in the Information Statement will automatically become effective twenty (20) days after such mailing. 17 C.F.R. § 240.14c-2 (2007).

---

[6]     In fact, the payoff of Apollo's Debt is itself an Event of Default under Section 4(a)(xi) of the Note, which provides that "any breach or failure in any respect" to comply with Section 13 of the Note, which includes both the Restricted Debt and Restricted Payments Covenants, constitutes an Event of Default. (Exhibit B to the Glickman Declaration at § (4)(a)(xi).)

In a Form 8-K filed with the SEC on June 20, 2007, the Company indicated that it "inten[ded]" to file amended Schedules 13e-3 and 14C on June 18, 2007, and that, as a result, "the effective date [of its "going private" transaction would] now be postponed until the … [SEC] completes its standard review of the filings." (Exhibit L to the Glickman Declaration.) However, to date, Apollo has not filed amendments to its Schedules 13e-3 or 14C with the SEC. (Pliskin Aff. at ¶ 12.) Accordingly, Apollo could still mail out its existing Schedule 14C any day.

Pursuant to section 13(e) of the Note, a breach of which is another Event of Default, Apollo agreed not to "directly or indirectly, redeem, repurchase or declare or pay any cash dividend or distribution on its capital stock without the prior express written consent of the Required Holders." (Exhibit B to the Glickman Declaration at § 13(e); Exhibit B to the Glickman Declaration at 4(a)(xi).) Required Holders are defined in the Note as the noteholders "representing at least a majority of the aggregate principal amount of the Notes then outstanding." (Exhibit B to the Glickman Declaration at § 27(ff).) Castlerigg is the only Required Holder. (Pliskin Aff. at ¶ 16.)

By pursuing a Reverse/Forward Stock Split, Apollo thus will be undertaking an indirect redemption of its stock without Castlerigg's requisite prior express written consent in violation of Section 13(e) of the Note. (Exhibit B to the Glickman Declaration at § 13(e).) Apollo has estimated that the redemption contemplated by the Reverse/Forward Stock Split will cost in excess of $2.1 million. (Exhibit K to the Glickman Declaration at 12, 25-26.) Those $2.1 million are additional monies that will be unavailable to Apollo to repay the Note.

Apollo also agreed, pursuant to Section 9 of the Note, that it would not seek to amend its Certificate of Incorporation in order to avoid the performance of its obligations under

the Note.[7] (Exhibit B to the Glickman Declaration at § 9.) Yet Apollo has disclosed that its Board of Directors intends to consummate the Reverse/Forward Stock Split through an amendment to Apollo's Restated Articles of Incorporation. (Exhibit K to the Glickman Declaration at 3.) Accordingly, Apollo's intended filing of amended Restated Articles of Incorporation is a threatened breach of the Note. (Exhibit B to the Glickman Declaration at § 9.)

"Going private" also will result in a breach of Apollo's obligations under the Securities Purchase Agreement, which provides that "[n]either the Company nor any of its Subsidiaries shall take any action which would be reasonably expected to result in the delisting or suspension of the Common Stock." (Exhibit C to the Glickman Declaration at § 4(f).) By going private, Apollo will no longer be a public company and will be incapable of being listed on any public exchange.[8]

Apollo's Precarious Financial Condition

Apollo seeks to enter into an asset sale in exchange for consideration that includes the assumption of up to $8.3 million of its debt, and to incur $2.1 million for an impermissible transaction at a time when it is facing serious financial problems. (Exhibit H to the Glickman Declaration at Exhibit B; Exhibit K to the Glickman Declaration at 12 and 25.)

Apollo has not filed financial and operating reports with the SEC since its Form 10-Q for the quarter ended September 30, 2006, and has not filed a report since entering into the

---

[7]     Apollo refers to its Certificate of Incorporation as "Restated Articles of Incorporation" in its Schedule 14C. (Exhibit J to the Glickman Declaration at 2.)

[8]     In addition, the going private transaction will be an Event of Default under Section 4(a)(x) of the Note, which occurs upon the Company's breach of any representation, warranty, covenant or other term or condition of any Transaction Document, e.g., the Note, "which breach has ... a cost or adverse impact on the Company ... in excess of $250,000." (Exhibit B to the Glickman Declaration at § 4(a)(x).) Inasmuch as Apollo has estimated that going private with a Reverse/Forward Stock Split will cost in excess of $2.1 million, the requisite threshold will be satisfied.

Note with Castlerigg. (Pliskin Aff. at ¶ 13.) To date, Apollo has not filed its Form 10-K for the year ending December 31, 2006, or its Form 10-Q for the quarter ending March 31, 2007. (Pliskin Aff. at ¶ 14.) The reason Apollo has given for needing more time to file its overdue financial statements is because its new CFO would need "a reasonable opportunity to review the Company's financial condition." (Exhibit M to the Glickman Declaration.) The reason Apollo has a new CFO is because its former CFO resigned over concerns about the Company's corporate governance and internal controls. The former CFO's resignation letter stated, in part, as follows:

> I am perhaps most troubled by my ability to move Apollo in a direction toward better internal controls, fiscal responsibility and basic corporate governance. ... During my tenure at Apollo I have tried to impress upon management and the Board the need for sound corporate governance and internal controls, I have come to the conclusion that my efforts are futile. The lack of ability of Apollo's directors and officers to improve and solidify Apollo's internal controls is particularly troubling.

(Exhibit N to the Glickman Declaration.) In addition, Apollo has conceded that it does "not have the financial wherewithal to manage the implementation of Sarbanes-Oxley." (Exhibit K to the Glickman Declaration at 11.)[9]

<u>Argument</u>

I.    **CASTLERIGG IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION.**

To justify a preliminary injunction, the moving party must show that (1) it will suffer irreparable harm and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships

---

[9]    Moreover, Apollo's subsidiary, Earth Biofuels, Inc. ("EBOF"), is presently the subject of an involuntary bankruptcy case in Delaware Bankruptcy Court. (Pliskin Aff. at ¶ 15.) Five creditors, including Castlerigg, have asserted that EBOF has failed to generally pay its debts as they become due. (Pliskin Aff. at ¶ 15.) Apollo's failure to pay Castlerigg the requisite Installment Amounts, Interest and Registration Delay Payments further reflects its financial problems.

tipping decidedly in the movant's favor. *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).[10]

## A.    Castlerigg Will Suffer Irreparable Harm If Apollo Is Not Enjoined

Apollo's contemplated transactions, which violate various covenants and provisions in the Note and a related agreement, will result in irreparable harm to Castlerigg because of the loss of available funds to satisfy an adverse judgment on the Note. In the case of the Apollo/Imperial Transaction, up to $8.3 million is being impermissibly transferred. And, in the case of the going private transaction, $2.1 million will be lost. The loss of these monies clearly will impair Castlerigg's ability to collect on its $9.5 million judgment, particularly given the already precarious financial condition of the Company and its evident inability to pay principal and interest on the Note.

Significantly, the Note provides that a violation of its terms by Apollo would constitute irreparable harm to Castlerigg:

> The remedies provided in this Note shall be cumulative and in addition to all other remedies available under this Note and any of the other Transaction Documents at law or in equity (including a decree of specific performance and/or other injunctive relief), and nothing herein shall limit the Holder's right to pursue actual and consequential damages for any failure by the Company to comply with the terms of this Note. Amounts set forth or provided for herein with respect to payments, conversion and the like (and the computation thereof) shall be the amounts to be received by the Holder [Castlerigg] and shall not, except as expressly provided herein, be subject to any other obligation of the Company (or the performance thereof). The Company acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the Holder [Castlerigg] and that the remedy at law for any such breach may be inadequate. The Company therefore agrees that, in the event of any such breach or threatened breach, the Holder [Castlerigg] shall be entitled, in addition to all other available remedies, to

---

[10]    The standard for granting a temporary restraining order is identical to the standard for granting a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. *Wenner Media LLC v. N. & Shell N. Am. Ltd.,* No. 05 Civ. 1286 (CSH), 2005 WL 323727, at *3 (S.D.N.Y. Feb. 8, 2005).

an injunction restraining any breach, without the necessity of showing economic
loss and without any bond or other security being required.

(Exhibit B to the Glickman Declaration at § 18.)[11]

Courts have given such contractual provisions great weight as evidence of

irreparable harm. *See, e.g., Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*,

No. 02 CV 10237(GBD), 2003 WL 328302, at *5 (S.D.N.Y. Feb. 11, 2003) (noting that the

Second Circuit has given "great weight" to such provisions (citing *Ticor Title Ins. Co. v. Cohen*,

173 F.3d 63, 69 (2d Cir. 1999) (provision "might arguably be viewed as an admission")));

*Innoviant Pharmacy, Inc. v. Morganstern*, 390 F. Supp. 2d 179, 189 (N.D.N.Y. 2005) (holding

that such provisions "buttress the conclusion" that defendant's actions, if left unchecked, will give

rise to likelihood of irreparable injury to plaintiff, and "could be construed as representing . . .

acknowledgment of this fact").

In addition, courts in this Circuit repeatedly have recognized that "preliminary

injunctions are proper to prevent a defendant from making a judgment uncollectible." *Republic of*

*Philippines v. Marcos*, 806 F.2d 344, 356 (2d Cir. 1986); *Zeltser v. Regal V World-Wide*

*Holdings, Inc.*, No. 96-7820, 1997 WL 176851, at *3 (2d Cir. Mar. 25, 1997) (affirming issuance

of preliminary injunction where it was "highly unlikely" that absent the injunction, party would be

able to collect on money judgment for value of the Notes); *In re Feit & Drexler, Inc.*, 760 F.2d

406, 416 (2d Cir. 1985) (finding no abuse of discretion where injunctive relief granted to prevent

defendant from making potential judgment uncollectible); *Alpha Capital*, 2003 WL 328302, at *4

---

[11]    This same provision reflects Apollo's agreement that Castlerigg need not post a bond or
any other security when seeking the instant injunctive relief. Courts have given effect to
agreements between parties to waive the requirement to post a bond. *See, e.g., Helene Curtis v.*
*Nat'l Wholesale Liquid. Inc.*, 890 F. Supp. 152, 160-61 (E.D.N.Y. 1995).

(S.D.N.Y. Feb. 11, 2003) ("A court may properly find that irreparable harm exists where nothing in the record suggests that a defendant will be able to pay a judgment.").[12]

As determined by the court in *Alpha Capital Aktiengesellschaft v. Group Management Corp.*, No. 02 Civ. 2219 (LBS), 2002 WL 31681798 (S.D.N.Y. Nov. 25, 2002), negotiated covenants in a loan agreement are there to protect the lender and breaches of such covenants may present irreparable harm. *Id.* at *10-11. In *Alpha Capital*, the court reviewed its earlier grant of injunctive relief to enforce a contractual bond provision that was intended to secure a lender's ability to convert any outstanding loan amount into common stock. *Id.* at *1, *10. In so doing, the court characterized the bond provision, and other similar provisions, as "protections" that the lenders had "very carefully built into the agreement." *Id.* at *3. The court found that the diminution of such protections amounted to irreparable harm *regardless of Defendant's ability to pay on the loans* stating: "because the obvious purpose of the contractual bond provision was to allay any risk that Plaintiffs would be required to litigate the conversion requests without security, the mere absence of the bond likely presented irreparable harm in itself, whatever the financial condition of Defendant." *Id.* at *11. The covenants in the Note with respect to incurrence and payments of other debt plainly were intended to allay risk to Castlerigg

---

[12]     *See also Anacomp, Inc. v. Thompson-Kent Fin., Inc.*, No. 96 Civ. 5813 (JSM), 1997 WL 23178, at *3 (S.D.N.Y. Jan. 22, 1997) (recognizing that where movant will not be able to collect money judgment absent injunction, equitable remedy is appropriate); *United States v. New York*, 708 F.2d 92, 93 (2d Cir. 1983) (per curiam) (concluding plaintiff had established irreparable harm where suit to recover damages would be barred); *Capital Distrib. Servs., Ltd. v. Ducor Express Airlines, Inc.*, 440 F. Supp. 2d 195, 210 (E.D.N.Y. July 21, 2006) (finding irreparable harm where defendant's actions would frustrate plaintiff's efforts to collect a judgment); *Rudd v. Advance Bedding Corp.*, No. 95 CV 2099, 1995 WL 548723, at *2 (E.D.N.Y. Sept. 8, 1995) (finding irreparable harm where "a judgment as to damages after trial probably will not make plaintiff whole"); *Seide v. Crest Color, Inc.*, 835 F. Supp. 732, 738-39 (S.D.N.Y. 1993) (granting injunction to stop sale of assets where sale would jeopardize funds' ability to collect on amounts owed).

here.  Like the lender in *Alpha Capital*, Castlerigg therefore is entitled to both enforcement of that provision and a preliminary injunction.

### B.    Castlerigg Is Likely To Succeed On The Merits

There can be no dispute that the Apollo/Imperial Transaction would be a violation of the covenants of the Note, which prohibit not only the incurrence of indebtedness other than Permitted Indebtedness while the Note is outstanding, but also the payment of Permitted Indebtedness other than the Note when an Event of Default has occurred and is continuing. (Exhibit B to the Glickman Declaration at § 13(d).)  Inasmuch as "Permitted Indebtedness" cannot be paid under these circumstances, obviously, impermissible indebtedness cannot be paid either.

Multiple Events of Default have now occurred and are continuing, including under Section 4(a)(xi) of the Note because of Apollo's incurrence of indebtedness -- or nondisclosure regarding the existence of Indebtedness other than the Note and Permitted Indebtedness -- in breach of Section 13(b) of the Note.  And, unless the Apollo/Imperial Transaction is enjoined, Apollo will breach the covenant set forth in Section 13(d) of the Note, which precludes Apollo from paying off any of its or its subsidiaries' debt -- directly or indirectly -- while the Note is outstanding once an Event of Default has occurred and is continuing.

Nor can there be any question that the proposed going private transaction would violate Sections 9 and 13(e) of the Note, as described above.  (Exhibit B to the Glickman Declaration at §§ 9 and 13(e).)[13]

When faced with similar facts, courts have found that a likelihood of success on the merits has been established. *See, e.g., Alpha Capital*, 2002 WL 31681798, at \*10 (observing that "terms of the contract before the Court were undisputable and indeed undisputed");

---

[13]    Castlerigg is also likely to prevail on its claim that Apollo has defaulted under the Note for the reasons set forth above at pages 3-5.

*Transamerica Rental Fin. Corp. v. Rental Experts*, 790 F. Supp. 378, 382 (D. Conn. 1992) (finding likelihood of success on the merits where "[u]ncontroverted evidence establishe[d] the existence of a security agreement between the parties, the [defendant's] default . . . , and the amount of the unpaid balance of the loan").

### C.    The Balance Of Hardships Tips In Castlerigg's Favor

Because Castlerigg has shown irreparable harm and a likelihood of success on the merits, it need not show sufficiently serious questions going to the merits to make them a fair ground for litigation or that the balance of hardships tips decidedly in its favor. *Brenntag*, 175 F.3d at 249. However, if Castlerigg is required to do so, it could show not only that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, but also that the balance of hardships tips decidedly in its favor.

"To demonstrate that the balance of hardships tips in its favor, a movant must show that the harm it would suffer absent the relief sought is substantially greater than the harm its opponent would suffer if relief was granted." *Clemente Global Growth Fund, Inc. v. Pickens*, 705 F. Supp. 958, 971 (S.D.N.Y. 1989). The evidence of Apollo's existing and threatened breaches of the Note demonstrate that Castlerigg is likely to succeed on the merits. Because, where, as here, "there is a real risk that plaintiff[] will be unable to collect what [it is] due," courts have concluded that the balance of hardships clearly tips in favor of the party seeking the preliminary injunction. *Gelfand v. Stone*, 727 F. Supp. 98, 102-03 (S.D.N.Y. 1989).

If Apollo is not enjoined from consummating the transaction with Imperial or its "going private" transaction, there is a genuine risk that Apollo will be unable to pay an adverse judgment. In essence, Apollo will be rewarded for its improper conduct and will be in a better position than it was before the transactions closed. Castlerigg on the other hand will be in a worse

position because it runs the risk that even when it obtains a judgment against Apollo in the instant

litigation, it will likely be unable to collect what it is due under the Note.

<u>Conclusion</u>

Based on the foregoing, Plaintiff requests that this Court grant the temporary

restraining order, preliminary injunction and such other and further relief as this Court deems just

and proper.

Dated: New York, New York
      July 30, 2007

                     SCHULTE ROTH & ZABEL LLP

                By:                                            
                    Alan R. Glickman
                    David M. Hillman
                    Dana M. Roth
                    919 Third Avenue
                    New York, New York  10022
                    (212) 756-2000
                    *Attorneys for Castlerigg Master Investments Ltd.*

                                  17