UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
CASTLERIGG MASTER INVESTMENTS LTD.,  :
           Plaintiff,  :  Civ. Action No.: 07 CIV 6385

           v.  :

APOLLO RESOURCES INTERNATIONAL, INC.,  :  **COMPLAINT**

           Defendant.  :
------------------------------------------------------------x

JUDGE SCHEINDLIN

RECEIVED JUL 12 2007 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff Castlerigg Master Investments Ltd. ("Castlerigg"), by its attorneys Schulte Roth & Zabel LLP, as and for its Complaint against Defendant Apollo Resources International, Inc. ("Apollo" or the "Company"), hereby alleges on the basis of knowledge with respect to itself and its actions, and on the basis of information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is an action for damages resulting from Apollo's breach of covenants relating to a Senior Secured Convertible Note it issued to Castlerigg on December 29, 2006 (the "Note"), including Apollo's refusal to redeem the Note as it is required to do. A copy of the Note is attached hereto as Exhibit A.

## THE PARTIES

2. Plaintiff Castlerigg Master Investments Ltd. is a British Virgin Islands company with its registered office at P.O. Box 71, Criagmuir Chambers, Road Town, Tortola, British Virgin Islands.

3. Defendant Apollo is a Utah corporation with its principal place of business at 3001 Knox Street, Suite 403, Dallas, Texas 75205.

## JURISDICTION AND VENUE

4. Jurisdiction in this action is based upon diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332.

5. The amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs.

6. Venue for this action is proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events and omissions giving rise to the claim occurred in this District.

7. The parties have agreed that this dispute may be adjudicated in this Court. The Note that is the subject of this action provides as follows:

> The Company [Apollo] hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in The City of New York, Borough of Manhattan, for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper.

(Exhibit A at § 26.)

8. In addition, Section 8(d) of the Amendment Agreement dated as of December 29, 2006, which was entered into between Apollo and Castlerigg provides, in part, as follows:

> Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in The City of New York, Borough of Manhattan, for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper.

A copy of the Amendment Agreement, the contract pursuant to which the Note was issued to Castlerigg, without its exhibits, is attached hereto as Exhibit B.

## FACTS

The Transaction Documents

9. Pursuant to the terms of a Securities Purchase Agreement, dated as of July 25, 2006 (the "Securities Purchase Agreement"), entered into between Apollo and Castlerigg, among others, Apollo issued to Castlerigg 13,157,895 shares (the "Common Shares") of common stock of Apollo, $0.001 par value per share (the "Common Stock") and warrants exercisable into 16,477,369 shares of Common Stock (the "Warrants"). Castlerigg paid Apollo five million dollars ($5,000,000) to purchase the aforementioned Common Shares and Warrants. A copy of the Securities Purchase Agreement without exhibits is annexed hereto as Exhibit C.

10. At the same time that Apollo and Castlerigg entered into the Securities Purchase Agreement, they also entered into a Registration Rights Agreement, dated as of July 25, 2006 (the "Registration Rights Agreement"), pursuant to which Apollo agreed to provide certain registration rights with respect to Registrable Securities, as that term is defined in the Registration Rights Agreement. A copy of the Registration Rights Agreement is annexed hereto as Exhibit D.

11. Several months later, Apollo and Castlerigg entered into an Amendment Agreement dated as of December 29, 2006, which, among other things, amended the Securities Purchase Agreement and the Registration Rights Agreement. *See* Exhibit B at § 2. The Amendment Agreement, the Securities Purchase Agreement, the Registration Rights Agreement and the Note, together with the agreements entered into between the parties in connection with the transactions contemplated by the Securities Purchase Agreement and the Amendment

Agreement, are collectively referred to as the "Transaction Documents." (Exhibit B at § 2(c); Exhibit C at § 3(b).)

12. Under the Amendment Agreement, in exchange for the delivery to Apollo for cancellation of the Common Shares and Warrants previously issued to Castlerigg, Apollo issued the Note to Castlerigg with a principal amount of Eight Million Two Hundred Ninety-Six Thousand Seven Hundred and Fifty-Two Dollars ($8,296,752), which represented the sum of Eight Million Fifty-Two Thousand Six Hundred and Thirty-Two Dollars ($8,052,632) and Two Hundred Forty-Four Thousand One Hundred and Twenty Dollars ($244,120) of projected Registration Delay Payments, as that term is defined in Section 2(f) of the Registration Rights Agreement.

13. The Note provides, among other things, that Castlerigg may require the Company to redeem the Note if there is an Event of Default thereunder: "[u]pon the occurrence of an Event of Default with respect to th[e] Note . . . the Holder may require the Company to redeem all or any portion of th[e] Note[.]" (Exhibit A at § 4(b).)

Events Of Default Under Note Sections 4(a)(ix) and 4(a)(v)

*Unpaid Installment Amounts and Interest*

14. The Company has failed to pay Castlerigg the required Installment Amounts and Interest, as those terms are defined in the Note.

15. Section 1 of the Note provides, in part, that "[o]n each Installment Date, the Company shall pay to the Holder [Castlerigg] an amount equal to the Installment Amount due on such Installment Date in accordance with Section 8," which provides that the Company shall pay Castlerigg the Installment Amount due on each applicable Installment Date by redeeming such amount in accordance with the terms of the Note. (Exhibit A at § 1.)

16. The Note defines "Installment Amount" as follows:

> [T]he lesser of (A) the Principal amount under the Note as of such Installment Date together with the sum of any accrued and unpaid Interest with respect to such Principal amount and accrued and unpaid Late Charges, if any, with respect to such Principal amount and Interest and (B) (i) with respect to the March 31, 2007 Installment Date, $2,750,000, (ii) with respect to the May 30, 2007 Installment Date, the sum of (x) $3,000,000 and (y) the Registration Delay Amount (as defined in the Amendment Agreement) and (z) with respect to the March 31, 2007 Installment Date, $1,000,000, in each case, as any such Installment Amount may be reduced pursuant to the terms of this Note, whether upon conversion, redemption or otherwise, together with, in each case the sum of any accrued and unpaid Interest with respect to such Principal amount and accrued and unpaid Late Charges, if any, with respect to such Principal amount and Interest. In the event the Holder shall sell or otherwise transfer any portion of this Note, the transferee shall be allocated a pro rata portion of the each unpaid Installment Amount hereunder.

(Exhibit A at § 27(t).) The Installment Dates identified in the Note are March 31, 2007, May 30, 2007 and November 30, 2007. (Exhibit A at § 27(u).)

17. The Company failed to pay Castlerigg the required Installment Amounts on March 31, 2007 and May 30, 2007. Those failures constitute Events of Default under Section 4(a)(xi) of the Note, which states, in part, that any breach or failure to comply with Section 8 of the Note constitutes an Event of Default.

18. Under Section 2 of the Note, Interest on the Note began accruing on the issuance date of December 29, 2006, and is "computed on the basis of a 360-day year comprised of twelve (12) thirty (30) day months and shall be payable in arrears for each Interest Period on the applicable Installment Date ... (each, an Interest Date)." In addition, the Note provides that "[f]rom and after the occurrence and during the continuance of an Event of Default, the Interest Rate shall be increased to fifteen percent (15%)." (Exhibit A at § 2.) However, the Company failed to pay the required Interest on the applicable Interest Dates.

19. Apollo's failure to pay Castlerigg the Interest on the applicable Interest

Dates continued for a period of more than ten (10) Business Days, as that term is defined in the Note, that, and the failure to pay Castlerigg the Installment Amounts when due, constitute Events of Default under Section 4(a)(v) of the Note, which provides that the following are Events of Default:

> the Company's failure to pay to the Holder any amount of Principal, Interest, Late Charges or other amounts when and as due under this Note (including, without limitation, the Company's failure to pay any redemption payments or amounts hereunder) or any other Transaction Document (as defined in the Securities Purchase Agreement) or any other agreement, document, certificate or other instrument delivered in connection with the transactions contemplated hereby and thereby to which the Holder is a party, except, in the case of a failure to pay Interest and Late Charges when and as due, in which case only if such failure continues for a period of at least ten (10) Business Days[.]

(Exhibit A at § 4(a)(v).)

Event of Default Under Note Section 4(a)(ii)

*Common Stock Not Listed on "Eligible Market"*

20.  An Event of Default also occurs under the Note when the Company is suspended from trading or its Common Stock fails "to be listed on an Eligible Market for a period of five (5) consecutive Trading Days or for more than an aggregate of ten (10) Trading Days in any 365-day period[.]" (Exhibit A at § 4(a)(ii).)

21.  The Note defines "Eligible Market" as "the Principal Market [OTC Bulletin Board ("OTCBB")], The New York Stock Exchange, Inc., the American Stock Exchange, the NASDAQ Global Select Market, The NASDAQ Global Market or The NASDAQ Capital Market." (Exhibit A at § 27(m).)

22.  According to the Schedule 13E-3 that the Company filed on or about May 18, 2007 with the Securities and Exchange Commission, "[o]n or about April 23, 2007, the NASD notified the Company that the Company's securities were to be removed from quotation

on the OTCBB effective at the open of business on April 27, 2007." The Company now trades as an OTC "Pink Sheet."

23. Because the Company was removed from the OTCBB on April 27, 2007, and has not been listed on any Eligible Market for more than five (5) consecutive Trading Days, an Event of Default has occurred under Section 4(a)(ii) of the Note.

Events of Default Under Note Sections 4(a)(i) and 4(a)(v)

*The Registration Statement Has Not Been Filed Or Deemed Effective*

24. Section 2(a) of the Registration Rights Agreement, as amended by the Amendment Agreement, provides that the "Company shall prepare, and, as soon as practicable but in no event later than the Filing Deadline, file with the SEC the Registration Statement on Form S-3 covering the resale of all of the Registrable Securities issuable upon then outstanding Securities." (Exhibit D at § 2(a).)

25. The Filing Deadline for the Company to file the Registration Statement was October 24, 2006, because it was ninety (90) days after the Closing Date of July 26, 2006. (Exhibit D at § 1(e); Exhibit C at § 1(a)(ii).) However, the Company failed to file the Registration Statement by the Filing Deadline.

26. The Registration Rights Agreement also provides that the "Company shall use its best efforts to have the Registration Statement declared effective by the SEC as soon as practicable, but in no event later than the Effectiveness Deadline." (Exhibit D at § 2(a).)

27. The Effectiveness Deadline is defined in the Registration Rights Agreement as "the date which is (i) in the event that the Registration Statement is not subject to a review by the SEC, 120 calendar days after the Closing Date [November 23, 2006] or (ii) in the event that the Registration Statement is subject to a review by the SEC, 180 calendar days after the Closing Date [January 22, 2007]." *See* Exhibit D at § 1(d).

28.     Because the Registration Statement was never filed by the Company, the SEC never determined whether it would review the Registration Statement. However, in no event could the Effectiveness Deadline have been later than January 22, 2007.

29.     Pursuant to Section 4(a)(i) of the Note, an Event of Default occurs upon:

> the failure of the applicable Registration Statement required to be filed pursuant to the Registration Rights Agreement to be declared effective by the SEC on or prior to the date that is sixty (60) days after the applicable Effectiveness Deadline (as defined in the Registration Rights Agreement), or, while the applicable Registration Statement is required to be maintained effective pursuant to the terms of the Registration Rights Agreement, the effectiveness of the applicable Registration Statement lapses for any reason (including, without limitation, the issuance of a stop order) or is unavailable to any holder of the Notes for sale of all of such holder's Registrable Securities (as defined in the Registration Rights Agreement) in accordance with the terms of the Registration Rights Agreement, and such lapse or unavailability continues for a period of ten (10) consecutive days (other than days during an Allowable Grace Period (as defined in the Registration Rights Agreement)[)] or for more than an aggregate of thirty (30) days in any 365-day period (other than days during an Allowable Grace Period)[.]

(Exhibit A at § 4(a)(i).)

30.     Sixty (60) days after the latest possible Effectiveness Deadline of January 22, 2007 was March 23, 2007. The required Registration Statement for the Required Registration Amount of shares of Common Stock was not declared effective by the SEC by March 23, 2007. In fact, no Registration Statement has been declared effective by the SEC for such shares of Common Stock as of the date of this Complaint. Accordingly, an Event of Default has occurred and is continuing under Section 4(a)(i) of the Note.

31.     In addition, as a result of the foregoing, the Company was required to make "Registration Delay Payments" to Castlerigg under Section 2(f) of the Registration Rights Agreement. That section requires Registration Delay Payments to be paid if, *inter alia*, the Company misses the Filing Deadline or if the Registration Statement is not declared effective by the SEC by the Effectiveness Deadline. Pursuant to the foregoing, the Company was required to

make Registration Delay Payments to Castlerigg on January 23, 2007, February 22, 2007, March 24, 2007, April 23, 2007 and May 23, 2007.

32. Notwithstanding its obligation to do so, the Company failed to make the required Registration Delay Payments, which constituted an Event of Default under Section 4(a)(v) of the Note.

Castlerigg Demands Redemption

33. On May 11, 2007, Castlerigg sent Apollo an Event of Default Redemption Notice (the "Notice") via facsimile, e-mail and overnight courier. A copy of the Notice is attached hereto as Exhibit E.

34. The Notice states that "the Company [had] failed to pay both Interest . . . and the Installment Amount . . . due to the Investor on March 31, 2007 . . . , and [because] such failure ha[d] continued for more than ten (10) Trading Days, an Event of Default ha[d] occurred and is continuing pursuant to Section 4(a)(v) of the Note."

35. In addition, Castlerigg informed Apollo that inasmuch "as the Company was removed from the OTC Bulletin Board on April 27, 2007 and ha[d] not been listed on any Eligible Market ... for more than five (5) consecutive Trading Days, an Event of Default ha[d] occurred and is continuing pursuant to Section 4(a)(ii) of the Note."

36. Castlerigg also advised the Company that "pursuant to Section 4(a)(i) of the Note, as more than sixty (60) days ha[d] passed since January 22, 2007, the date of the Effectiveness Failure, as of March 23, 2007, an Event of Default ha[d] occurred and is continuing."

37. The Notice also stated that an Event of Default had occurred under Section 4(a)(v) of the Note because of the Company's failure to timely pay Castlerigg Registration Delay

Payments with respect to its having missed the Filing Deadline and because the Registration Statement was not declared effective by the SEC by the Effectiveness Deadline.

38. Based on the above-described Events of Default, the Notice informed the Company of Castlerigg's election to "exercise its redemption right pursuant to Section 4(b) of the Note . . . [and of its] elect[ion] to redeem the entire Note in full at the Event of Default Redemption Price[.]" The Notice further informed the Company that, pursuant to Section 11(a) of the Note, it was required to pay Castlerigg the Event of Default Redemption Price within five (5) business days of receipt of the Notice. (Exhibit A at § 11(a).)

39. As of the date of filing of this Complaint, the Company has failed to pay Castlerigg the Event of Default Redemption Price.

40. Furthermore, because the Company has failed to timely pay Castlerigg the Event of Default Redemption Price, the Company also owes late charges to Castlerigg. Section 23(b) of the Note provides:

> Any amount of Principal or other amounts due under the Transaction Documents, other than Interest, which is not paid when due shall result in a late charge being incurred and payable by the Company in an amount equal to interest on such amount at the rate of eighteen percent (18%) per annum from the date such amount was due until the same is paid in full ("Late Charge").

(Exhibit A at § 23(b).)

41. In addition to the amounts Apollo owes to Castlerigg set forth above, Apollo is also liable for Castlerigg's costs, attorneys' fees and disbursements incurred in connection with this action to enforce the provisions of the Note. Section 19 of the Note provides that:

> If (a) this Note is placed in the hands of an attorney for ... enforcement or is ... enforced through any legal proceeding or the Holder otherwise takes action to collect amounts due under this Note or to enforce the provisions of this Note ..., then the Company shall pay the costs incurred by the Holder for such ...

enforcement or action ..., including, but not limited to, attorneys' fees and disbursements.

(Exhibit A at § 19.)

## **CLAIM FOR RELIEF**
(Breach of Contract)

42. Castlerigg repeats and realleges each and every allegation set forth in paragraphs 1 through 41 above as though fully set forth herein.

43. As described above, Apollo has breached its covenants under the Transaction Documents and Events of Default have occurred.

44. Based on the aforesaid Events of Defaults, Castlerigg has demanded that the Company redeem the Note. Despite its clear contractual obligations, Apollo has failed to do so.

45. In addition, Apollo has failed to make Registration Delay Payments to Castlerigg, as required under the Transaction Documents.

46. As a result, Castlerigg has been damaged in an amount to be determined at trial, but which is not less than $9,579,459, which is comprised of the Event of Default Redemption Price, as defined in Section 4(b) of the Note, the accrued and unpaid Installment Amounts, Interest, Registration Delay Payments and Late Charges (in each case calculated as of the date of filing of this Complaint), plus interest accruing thereon.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A. Money damages of not less than $9,579,459 plus interest accruing thereon;

B. Costs, reasonable attorneys' fees and disbursements incurred in enforcing its rights in bringing this action; and

    C.    Such other and further relief as this Court may deem just and proper.

Dated: New York, New York  
       July 12, 2007

SCHULTE ROTH & ZABEL LLP

By: _____  
Alan R. Glickman  
Jeffrey S. Sabin  
Dana M. Roth  
919 Third Avenue  
New York, New York 10022  
(212) 756-2000  
*Attorneys for Castlerigg Master Investments Ltd.*