Exhibit 99.1

# PURCHASE AND SALE AGREEMENT
between
**APOLLO RESOURCES INTERNATIONAL, INC.**
**MOUNTAIN STATES PETROLEUM COMPANY**
AND
**BC&D OIL AND GAS CORPORATION**
(Sellers)
and
**IMPERIAL PETROLEUM, INC.**
(Buyer)

## PURCHASE AND SALE AGREEMENT

This Agreement ("Agreement") dated June 19, 2007, is between Apollo Resources International, Inc., a Utah corporation, Mountain States Petroleum Company, a New Mexico corporation and BC&D Oil and Gas Corporation, a New Mexico corporation (herein collectively called "Seller") and Imperial Petroleum, Inc. a Nevada corporation (herein called "Buyer").

### WITNESSETH:

1. **Property to be Sold and Purchased**. Seller agrees to sell and Buyer agrees to purchase, for the consideration hereinafter set forth, and subject to the terms and provisions herein contained, the following described properties, rights and interests:

   (a) all right, title and interest of Seller in and to the oil and gas wells, leases and other, interests, if any, described on Exhibit A hereto (and any ratifications, amendments and extensions thereof, whether or not the same are described on Exhibit A) and all equipment, buildings, fixtures and other improvements located thereon and all rights, easements, rights-of-way and other interests incidental thereto and used or necessary for the use and enjoyment of the properties by Buyer;

   (b) Without limitation of the foregoing, all other right, title and interest (of whatever kind or character, whether legal or equitable, and whether vested or contingent) of Seller in and to the leases and other interests, if any, described on Exhibit A hereto and in and to all lands described on Exhibit A or described or covered by such leases or other interests (including, without limitation, interests in oil, gas and/or mineral leases, overriding royalties, production payments, net profits interests, fee mineral interests, fee royalty interests and other interests insofar as they cover such lands), even though Seller's interest therein may be incorrectly described in, or omitted from, such Exhibit A; and

   (c) all rights, titles and interests of Seller in and to, or otherwise derived from, all presently existing and valid oil, gas and/or mineral unitization, pooling, and/or communitization agreements, declarations, designations and/or orders (including, without limitation, those described on Exhibit A hereto) and in and to the properties covered and the units created thereby (including, without limitation, all units formed under orders, rules, regulations, or other official acts of any federal, state, or other authority having jurisdiction, and voluntary unitization agreements, designations and/or declarations) relating to the properties described in subsections (a) and (b) above;

   (d) to the extent assignable, all rights, titles and interests of Seller in and to all presently existing and valid production sales contracts, operating agreements, and other agreements and contracts, including any presently existing plugging bonds or deposits, deposits for services, damages or similar deposits or trust agreements and deposits which relate to any of the properties described in subsections (a), (b) and (c) above (the "Contracts"); and

   (e) all rights, titles and interests of Seller in and to all materials, supplies, machinery, equipment, improvements and other personal property and fixtures (including, but not by way of limitation, all wells, wellhead equipment, pumping units, flowlines, tanks, buildings, saltwater disposal facilities, injection facilities, compression facilities, gathering

- 1 -

systems, and other equipment) used in connection with the exploration, development, operation or maintenance of the properties described in subsections (a), (b) and (c) above, and, to the extent assignable, in and to all permits and licenses (including, without limitation, all environmental and other governmental permits, licenses and authorizations), rights of way, easements, and other rights of surface use, water rights and other rights and interests used in connection with the exploration, development, operation or maintenance of the properties described in subsections (a), (b) and (c) above.

The properties, rights and interests described in subsections (a) through (c) above are herein sometimes called the "Oil and Gas Properties," and the properties, rights and interests described in subsections (a) through (e) above are herein sometimes called the "Properties." It is provided however, that Properties does not include: (a) all of Seller's corporate minute books, financial records, and other business records that relate to Seller's business generally (including the ownership and operation of the Properties); (b) all trade credits, all accounts, receivables and all other proceeds, income or revenues attributable to the Properties with respect to any period of time prior to the Effective Date (below defined); (c) all claims and causes of action of Seller arising under or with respect to any Contracts that are attributable to periods of time prior to the Effective Date (including claims for adjustments or refunds); (d) all rights and interests of Seller (i) under any policy or agreement of insurance or (ii) to any insurance proceeds, arising, in each case, from acts, omissions or events, or damage to or destruction of property (except as provided in Section 14 hereof); (e) all hydrocarbons produced and sold from the Properties with respect to all periods prior to the Effective Date; (f) all claims of Seller for refunds of or loss carry forwards with respect to (i) production or any other taxes attributable to any period prior to the Effective Date, (ii) income or franchise taxes or (iii) any taxes attributable to any period prior to the Effective Date; (g) all office leases, office furniture, personal computers and associated peripherals and all radio and telephone equipment not on the Properties; (h) all of Seller's proprietary computer software, patents, trade secrets, copyrights, names, trademarks, logos and other intellectual property; (i) all documents and instruments of Seller that may be protected by an attorney-client privilege; (j) all data that cannot be disclosed to Buyer as a result of confidentiality arrangements under agreements with third parties; (k) all geophysical, and other seismic and related technical data and information relating to the Properties to the extent not assignable without payment of fee or penalty; (l) documents prepared or received by Seller with respect to (i) lists of prospective purchasers for the Properties compiled by Seller, (ii) bids submitted by other prospective purchasers of the Properties, (iii) analyses by Seller of any bids submitted by any prospective purchaser, (iv) correspondence between or among Seller, its respective representatives, and any prospective purchaser other than Buyer and (v) correspondence between Seller or any of its respective representatives with respect to any of the bids, the prospective purchasers, or the transactions contemplated in this Agreement.

**1.01** <u>Properties Retained</u> Subject to the completion of a forward sale of up to 150 mmcf of helium reserves from the Dineh-bi-Keyah and Beautiful Mountain fields to Praxair, Inc. within ninety (90) days from the execution of this Agreement and under terms similar to that certain proposed Confidential Term Sheet as attached to the Letter of Intent dated May 16, 2007 by and between Imperial Petroleum, Inc. as Buyer and Apollo Resources International, inc. et al as Sellers, Seller shall retain 100% of the leasehold rights in and to the Aneth through the McCracken formations in the Dineh-bi-Keyah and Beautiful Mountain fields as encountered in the Navajo #10 well from depths of 3,600 ft to 3,900 ft and the stratagraphic equivalents thereto

- 2 -

("Retained Properties") and as further defined in Exhibit A-1. Seller's retained leasehold rights shall be subject to a fifty (50%) percent back-in (50.0% working interest and 41.665% net revenue interest) and in favor of Buyer after delivery of up to 150 mmcf of helium to Praxair in accordance with the proposed term sheet and shall be further subject to the execution of an AAPL 610 Form (1989) Operating Agreement with the COPAS 1984 Accounting Procedure by and between Seller and Buyer providing that Buyer shall be named Operator of any and all wells produced and drilled on the leasehold. Subject Operating Agreement shall provide for producing rate overhead of $750/well/month and drilling rate overhead of $5,000/workover or drill well operation as well as the reimbursement by Seller of any of Buyer's costs for bonding associated with any of Seller's retained wells or interests and reimbursement of any and all operating expenses associated with the operations of any wells retained or drilled by Seller. To the extent that Seller completes its proposed transaction with Praxair and is required to produce, workover or drill any wells on the Retained Properties, Seller agrees to enter into an escrow agreement with Buyer for such amounts as Buyer and Seller shall agree may be reasonably necessary to pay for and complete the production, workover or drilling operations contemplated by the Praxair agreement, including the payment of advance overhead rates to Buyer. Except for the forward sale to Praxair on similar terms as contemplated in the Confidential Term Sheet between Seller and Praxair, Seller agrees not to further encumber the Retained Properties in any manner whatsoever, including but not limited to the assignment of overriding royalty, net profits or other mineral rights or interests, pledging as collateral, selling or otherwise creating additional financial burdens against the Retained Properties or the modification or addition of any plant processing, operating or service fees related to the processing of the helium gas stream at the Shiprock Plant, that would reduce the economic value to Buyer of the back-in interest included herein.

In the event that Seller does not conclude an agreement to forward sell up to 150 mmcf of helium to Praxair from the Dineh-bi-Keyah and Beautiful Mountain fields within 90 days from the execution of this Agreement, Buyer shall have the right for a period of ninety (90) days, but not the obligation, to purchase the Retained Properties for the assumption of up to but not more than $3.5 million in Seller's obligations, including the obligation of Seller to obtain a right-of-way from the Navajo Indian Nation for its pipeline to the Shiprock Helium Plant and including assumption of the Promissory Note by and between Seller and Neptune Leasing, Inc. dated November 17, 2006 in the amount of $2.5 million in connection with the purchase of the Shiprock Helium Plant by Seller. If Buyer elects not to purchase the Retained Properties, the leasehold interest of Seller in the Retained Properties shall remain subject to a fifty (50%) percent back-in after delivery or sales of 150 mmcf of helium in favor of Buyer. Seller agrees not to further encumber the Retained Properties in any manner whatsoever, including but not limited to the assignment of overriding royalty, net profits or other mineral rights or interests, pledging as collateral, selling or otherwise creating additional financial burdens against the Retained Properties or the modification or addition of any plant processing, operating or service fees related to the processing of the helium gas stream at the Shiprock Plant, that would reduce the economic value to Buyer of the assets as if purchased as of the Closing of this Agreement. Buyer shall notify Seller of its election to purchase or not purchase the Retained Properties in writing within 90 days after the expiration of Seller's rights to complete a forward sale to Praxair.

- 3 -

2. **Purchase Price**.

The purchase price for the Properties shall be Two Million Five Hundred Thousand and no/100 Dollars ($2,500,000.00) (such amount, unadjusted by any adjustments provided for in this Agreement or agreed to by the parties, being herein called the "Base Purchase Price"). Such Base Purchase Price shall be adjusted as provided in this Agreement (the Base Purchase Price, as so adjusted, and as the same may otherwise be adjusted as provided in this Agreement, being herein called the "Purchase Price"). The Purchase Price shall be paid as provided in Section 10(a)(vi). Additionally, as a part of the consideration given to Seller for Buyer pursuant to this Agreement, Buyer also agrees to assume and or discharge certain of Seller's obligations ("Agreed Obligations") as shown on Exhibit "B", including accounts and revenue payables attributable to the period prior to the Effective Date as set forth on Exhibit "C" attached hereto but not to exceed $3,000,000 ("Agreed Payables") regardless of the total amount shown on Exhibit C.

Additionally as part of the consideration given to Seller for Buyer pursuant to this Agreement, Buyer agrees to deliver at Closing a certificate representing Five Million (5,000,000) shares of the restricted common stock of Buyer ("Imperial Shares"), subject to Registration Rights as provided in Exhibit D attached hereto and made a part hereof. The shares when issued and delivered shall be fully paid and non-assessable.

3. **Representations of Seller**. Seller represents to Buyer that:

(a) **Organization and Qualification**. Each Seller is a corporation duly organized and legally existing and in good standing under the laws of the state of its incorporation, and is qualified to do business and in good standing in each of the states in which the Properties are located where the laws of such state would require a corporation owning the Properties located in such state to so qualify.

(b) **Due Authorization**. Seller has full power to enter into and perform its obligations under this Agreement and has taken all proper action to authorize entering into this Agreement and performance of its obligations hereunder.

(c) **Approvals**. Other than requirements (if any) that there be obtained consents to assignment (or waivers of preferential rights to purchase) from third parties, and except for approvals ("Routine Governmental Approvals") required to be obtained from governmental entities that are customarily obtained post-closing and except as described in the Disclosure Schedule (the "Disclosure Schedule") attached hereto as Schedule II, neither the execution and delivery of this Agreement by Seller, nor the consummation of the transactions contemplated hereby by Seller, nor the compliance by Seller with the terms hereof, will result in

- 4 -

Exhibit A

Property Descriptions

Exhibit A: To Purchase And Sale Agreement
Dated June 19, 2007
between Imperial Petroleum, Inc., as Buyer, and
Apollo Resources International, Inc., Mountain States Petroleum Company and BC&D oil and Gas Corporation, as Sellers

| State | County | API # | Lease | Wells, Units, WI and NRI Field | Operator | WI | NRI |
|---|---|---|---|---|---|---|---|
| AZ | APACHE | 02-001-20001 | 01 NAVAJO (377) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20012 | 01 NAVAJO-138 (388) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20092 | 01 NAVAJO-C (484) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20068 | 01X NAVAJO-B (445) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20055 | 02 NAVAJO-88 (431) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20010 | 02 NAVAJO-B (385) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20253 | 03 NAVAJO-138 (723) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20066 | 03 NAVAJO-88 (443) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20011 | 03X NAVAJO (386) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20009 | 04 NAVAJO (384) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20014 | 06 NAVAJO (390) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20252 | 06 NAVAJO-88 (722) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20020 | 07 NAVAJO (389) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20020 | 09 NAVAJO (396) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20106 | 11 NVAJO (506) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20040 | 14 NAVAJO (416) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20041 | 15 NAVAJO (417) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20043 | 16 NAVAJO (419) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20190 | 17 NAVAJO (618) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20240 | 19 NAVAJO (691) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20245 | 20 NAVAJO (696) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20242 | 21 NAVAJO (693) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20241 | 22 NAVAJO (692) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20244 | 24 NAVAJO (695) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20249 | 25 NAVAJO (719) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20250 | 26 NAVAJO (720) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| AZ | APACHE | 02-001-20251 | 27 NAVAJO (721) | DINEH-BI-KEYAH (HERMOSA) | MOUNTAIN STATES | 1.00000000 | 0.80833300 |
| UT | SAN JUAN | 43-037-15911 0000 | ENGLISH 1 | BOUNDARY BUTTE | MOUNTAIN STATES | 1.00000000 | 0.85000000 |
| UT | SAN JUAN | 43-037-15915 0000 | ENGLISH 6 | BOUNDARY BUTTE | MOUNTAIN STATES | 1.00000000 | 0.85000000 |
| UT | SAN JUAN | 43-037-15916 0000 | ENGLISH 7 | BOUNDARY BUTTE | MOUNTAIN STATES | 1.00000000 | 0.85000000 |
| UT | SAN JUAN | 43-037-15918 0000 | ENGLISH 9 | BOUNDARY BUTTE | MOUNTAIN STATES | 1.00000000 | 0.85000000 |
| UT | SAN JUAN | 43-037-15919 0000 | ENGLISH 10 | BOUNDARY BUTTE | MOUNTAIN STATES | 1.00000000 | 0.85000000 |
| UT | SAN JUAN | 43-037-15920 0000 | ENGLISH 11 | BOUNDARY BUTTE | MOUNTAIN STATES | 1.00000000 | 0.85000000 |

## Exhibit B

### Agreed Obligations

Imperial will assume and or discharge the following obligations of Apollo with respect to the assets:

a.) Accounts payable and revenue payable directly associated with the assets not to exceed $3.0 million as provided on Exhibit C.

b.) Notes payable to banks and secured by the properties not to exceed $0.8 million.

c.) Pipeline right-of-way payments to the Navajo Indian nation in the amount of $1.0 million affecting the Boundary Butte field.

d.) Plugging bond due the State of New Mexico in the amount of $0.7 million and assumption of plugging liability in the Hospah field in an estimated amount of $2.8 million.

e.) Plugging liability for the damaged SWD well in the DBK field.