Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## SCHEDULE 13E-3

RULE 13E-3 TRANSACTION STATEMENT
(Pursuant to Section 13(e) of the Securities Exchange Act of 1934)

# APOLLO RESOURCES INTERNATIONAL, INC.
(Name of Issuer)

APOLLO RESOURCES INTERNATIONAL, INC.
(Name of Person Filing Statement)

**Common Stock, $0.001 par value**
(Title of Class of Securities)

**037622107**
(CUSIP Number of Class of Securities)

Dennis G. McLaughlin, III
Chief Executive Officer
Apollo Resources International, Inc.
3001 Knox Street, Suite 403
Dallas, Texas 75205
(214) 389-9800
(Name, Address and Telephone Number of Person Authorized to Receive
Notices and Communications on Behalf of Persons Filing Statement)

This statement is filed in connection with (check the appropriate box):

☑ a. The filing of solicitation materials or an information statement subject to Regulation 14A, Regulation 14C or Rule 13e-3 (c) under the Securities Exchange Act of 1934.
☐ b. The filing of a registration statement under the Securities Act of 1933.
☐ c. A tender offer.
☐ d. None of the above.

Check the following box if the soliciting materials or information statement referred to in checking box (a) are preliminary copies: ☑

Check the following box if the filing is a final amendment reporting the results of the transaction: ☐

**Calculation of Filing Fee**

| Transaction Value* | Amount of Filing Fee** |
|---|---|
| $2,179,636 | $66.91[(1)] |

\*   For purposes of calculating the filing fee only, this amount assumes the aggregate cash payment of $2,179,636 by the Issuer in lieu of fractional shares immediately following a 1-for-65,000 reverse stock split to holders of fewer than 65,000 shares of the Issuer's common stock prior to the reverse stock split. The aggregate cash payment is equal to the product of the price of $0.035 per pre-split share and 62,275,323 pre-split shares, the estimated aggregate number of shares held by such holders.

\*\*  Determined pursuant to Rule 0-11(b)(1) as the product of $2,179,636 and 30.7 per million.

☐ Check the box if any part of the fee is offset as provided by Rule 0-11(a)(2) of the Securities Exchange Act of 1934 and

identify the filing with which the offsetting fee was previously paid. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

Amount Previously Paid: $ 0
Form or Registration No.:   n/a
Filing Party:               n/a
Date Filed:                 n/a

Table of Contents

# INTRODUCTION

This Rule 13E-3 Transaction Statement on Schedule 13E-3 (the "Schedule 13E-3") is being filed by Apollo Resources International, Inc., a Utah corporation (the "Company").

Concurrently with the filing of this Schedule 13E-3, the Company is filing an Information Statement (the "Information Statement") pursuant to Regulation 14C under the Securities Exchange Act of 1934, as amended (the "Exchange Act"). A copy of the Information Statement is attached hereto as Exhibit 1. The information in the Information Statement, including all annexes thereto, is expressly incorporated by reference herein in its entirety and responses to each item herein are qualified in their entirety by the information contained in the Information Statement and the annexes thereto. Capitalized terms used but not defined herein have the meanings given to them in the Information Statement.

All references to subsections in the Items below are to the subsection of the applicable Item in Regulation M-A

**Item 1. Summary Term Sheet.**

    The information set forth in the Information Statement under the captions "Summary of Terms of Reverse/Forward Stock Split" and "Questions and Answers About the Reverse/Forward Stock Split" is incorporated herein by reference.

**Item 2. Subject Company Information.**

(a) *Name and Address*. Apollo Resources International, Inc. is the subject company. Its principal executive office is located at 3001 Knox Street, Suite 403 Dallas, Texas 75205 and its telephone number is (214) 389-9800.

(b) *Securities*. As of April 4, 2007, there were 376,738,622 outstanding shares of common stock, par value $0.001, of the Company ("Common Stock").

(c) *Trading Market and Price*. The Company's Common Stock was formerly quoted on the NASD's Over the Counter Bulletin Board ("OTCBB") under the ticker symbol "AOOR.OB." On or about April 23, 2007, the NASD notified the Company that the Company's securities were to be removed from quotation on the OTCBB effective at the open of business on April 27, 2007. As such, the Company now trades on as an OTC "Pink Sheet" security under the ticker symbol "AOORE.OB" and shall be trading under the symbol "AOOR.PK." We consider our common stock to be thinly traded and any reported bid or sale prices may not be a true market-based valuation of the common stock. On May 17, 2007, the last practicable trading day prior to the date of this Information Statement, our Common Stock's closing price was $0.034. The information set forth in the Information Statement under the caption "Trading Market and Price of our Common Stock and Dividend Policy" is incorporated herein by reference.

(d) *Dividends*. No dividends have been paid by the Company on its Common Stock during the past two years. The information set forth in the Information Statement under the caption "Trading Market and Price of our Common Stock and Dividend Policy" is incorporated herein by reference.

(e) *Prior Public Offerings*. The Company has not made an underwritten public offering of its Common Stock for cash during the three years preceding the date of the filing of this Schedule 13E-3.

(f) *Prior Stock Purchases*. The Company has not purchased any of its Common Stock for cash during the three years preceding the date of the filing of this Schedule 13E-3.

**Item 3. Identity and Background of the Filing Person.**

(a) *Name and Address*. Apollo Resources International, Inc., the subject company, is the filing person of this Schedule 13E-3. The business office address for the Company is 3001 Knox Street, Suite 403 Dallas, Texas 75205 and the business telephone number for the Company is (214) 389-9800. The executive officers and directors of the Company are set forth below.

## Table of Contents

Billy A. Mickle, age 61, is a practicing attorney and Managing Partner of BFM Investments, LLC in Durant, Oklahoma. He was an Oklahoma State Senator from 1988 to 2002, and was Majority Leader of the Oklahoma State Senate from 1994 to 2002. While serving under the Oklahoma State Senate, Mr. Mickle was the Appropriation Chairman of the Sub-Committee on Judiciary and General Government from 1990 to 1994, and was Chairman of the Judiciary Committee from 1988 to 1994. He has worked on several economic development projects for the state of Oklahoma and currently serves as a member of the Oklahoma Housing Finance Agency. During his tenure as Oklahoma State Senator, Mr. Mickle led international trade missions to Mexico, Malaysia, Singapore, Hong Kong, Vietnam, The Czech Republic, Pakistan, Cuba, Nigeria, and The United Arab Emirates. His past experience includes positions as an adjunct professor at Southeastern Oklahoma State University, a public school educator, a sergeant E-5 with the United States Marine Corp, an Oklahoma state highway patrol trooper, and he is a Vietnam Veteran. He has been a practicing attorney since 1974, and has won several state legislative awards, including National State Legislator of the Year by Safari Club International. Mr. Mickle received a Bachelor of Science Degree from Northeastern State University in 1967, a Juris Doctorate Degree from Oklahoma City University in 1974, and graduated from the National Judicial College of Reno, Nevada in 1983.

Glenn E. Floyd, age 69, is the founding attorney and owner of the Floyd Law Firm, PC based in Norman, Oklahoma since 1972, where his practice has focused mainly on public finance, taxation, and business law and has completed approximately 2,000 financings since that time. Prior to becoming an attorney he taught mathematics at East Central University, the University of Arkansas and the University of Oklahoma. He was a Special Lecturer at the University of Oklahoma College of Law from 1969 to 1971. Mr. Floyd was a Member of the Oklahoma House of Representatives from 1974 to 1978. He has authored several articles published in the Oklahoma Law Review, the Boston University Law Review, the Tulsa Law Journal, The Monthly Digest of Legal Articles, and The Bond Lawyer. Additionally, he was editor and author of the first and several following editions of "Tax-Exempt Municipal Bonds in Oklahoma" from 1972 to 2005. He was an original Founder of, and has been a Fellow and Director for the American College of Bond Counsel since 1996. Also in 1996, he was selected as a Distinguished Alumnus, East Central University, Ada, Oklahoma. Mr. Floyd is a member of the Oklahoma and American Bar Associations, the National Association of Bond Lawyers, and was Founder of the Oklahoma Public Finance Forum. He is a member of Phi Delta Phi, Pi Mu Epsilon, and Order of the Coif. He has been the General Manager for Floyd Land and Cattle Co. since 1968 and has practiced law since 1967. Mr. Floyd received a Bachelor of Science degree in Mathematics from East Central State College (Oklahoma) in 1958, a Masters degree in Mathematics from the University of Arkansas in 1961, a Juris Doctor degree from the University of Oklahoma Law School in 1967, and a Masters of Law (LLM) degree from Harvard Law School in 1968.

### Item 4. Terms of the Transaction.

(a) *Material Terms.* The information set forth in the Information Statement under the captions "Summary of Terms of Reverse/Forward Stock Split," "Questions and Answers About the Reverse/Forward Stock Split," "Special Factors," "Structure of the Reverse/Forward Stock Split," "Fairness of the Reverse/Forward Stock Split to Stockholders," "Description of the Reverse/Forward Stock Split," "Financing of the Reverse/Forward Stock Split," "Costs of the Reverse/Forward Stock Split" and "Recommendation of the Board; Fairness of the Reverse/Forward Stock Split — Reservation of Rights" is incorporated herein by reference.

(c) *Different Terms.* The information set forth in the Information Statement under the captions "Summary of Terms of Reverse/Forward Stock Split," "Questions and Answers About the Reverse/Forward Stock Split," "Special Factors — Potential Disadvantages of the Reverse/Forward Stock Split to Stockholders; Accretion in Ownership and Control of Certain Stockholders," "Special Factors — Effects of the Reverse/Forward Stock Split," "Special Factors — Effect of the Reverse/Forward Stock Split on Option Holders," "Special Factors — Effect of the Reverse/Forward Stock Split on Warrant Holders," "Special Factors — Effect of the Reverse/Forward Stock Split on Holders of Outstanding Convertible Debentures," "Special Factors — Financial Effect of the Reverse/Forward Stock Split," "Special Factors — Federal Income Tax Consequences of the Reverse/Forward Stock Split," "Structure of the Reverse/Forward Stock Split," "Fairness of the Reverse/Forward Stock Split to Stockholders," "Description of the Reverse/Forward Stock Split — Holders as of Effective Date; Net Effect After Reverse/Forward Stock Split," and "Description of the Reverse/Forward Stock Split — Exchange of Certificates for Cash Payment or Shares" is incorporated herein by reference.

**Table of Contents**

(b) *Appraisal Rights.* The information set forth in the Information Statement under the captions "Summary of Terms of Reverse/Forward Stock Split," "Questions and Answers About the Reverse/Forward Stock Split" and "Description of the Reverse/Forward Stock Split — Appraisal Rights" is incorporated herein by reference.

(c) *Provisions for Unaffiliated Security Holders.* The information set forth in the Information Statement under the caption "Fairness of the Reverse/Forward Stock Split to Stockholders — Procedural Fairness to All Stockholders" is incorporated herein by reference.

(d) *Eligibility for Listing or Trading.* Not applicable.

**Item 5. Past Contacts, Transactions, Negotiations and Agreements.**

(a) *Transactions.* The information set forth in the Information Statement under the caption "Interests of Certain Persons" is incorporated herein by reference.

During the past 2 years, Apollo transacted business with the following affiliates:

- Effective November 22, 2006, Apollo entered into a Share Exchange Agreement with Earth Biofuels, Inc. for the sale of one hundred percent of its fifty-one percent interest in Apollo LNG, Inc., a Texas company. Under the Agreement, Apollo agreed to sell to Earth Biofuels all of the issued and outstanding shares of the LNG Business owned by Apollo. Apollo agreed to receive 9,422,111 shares of the common stock of Earth Biofuels as consideration for the Apollo LNG Shares. The transaction was valued at roughly $36,000,000.

(b) *Significant Corporate Events.*

During the past 2 years, the following were significant corporate events:

   (1) *Merger.* None.

   (2) *Consolidation.* None.

   (3) *Acquisition.*

   - On August 19, 2005, Apollo entered into a Securities Purchase Agreement to acquire additional shares of Earth Biofuels, Apollo's 50%-owned subsidiary. As a consequence of the acquisition, Apollo owned 80% of the issued and outstanding shares of Earth Biofuels. Pursuant to the transaction, Apollo issued 6 million restricted shares of its common stock to Earth Biofuels shareholders.

   - On May 1, 2006, OGC Pipeline LLC, an Oklahoma limited liability company and wholly-owned subsidiary of Company, sold approximately 248 miles of its pipeline system in central Oklahoma and north Texas, as well as the easements, surface lease agreements, rights-of-way, permits, licenses, leases, and other rights of access and agreements related to such pipeline segment, to Cimmarron Gathering, LP ("Cimmarron"). The consideration for the sale was $1 million. The Company has begun leasing mineral rights adjacent to this segment, in anticipation of a strategic working relationship with Cimmarron;

   - On May 12, 2006, Apollo Resources International, Inc., a Utah corporation (the "Company") entered into a Securities Purchase Agreement (the "Agreement") with Siam Imports, Inc., a Nevada corporation ("Siam"). Pursuant to the Agreement, the Company sold to Siam all of the Company's ownership in Apollo Drilling, LLC, a Texas limited liability company, in consideration of the issuance to the Company of 13,700,000 restricted shares of common stock of Siam, representing a controlling interest in Siam. The assets of Apollo Drilling are comprised of one fully operational drilling rig, two disassembled, partial drilling rigs, an inventory of drill pipe, and spare equipment;

   - Effective November 22, 2006, Mountain States Petroleum Corporation, Inc., ultimately a wholly-owned subsidiary of Company, entered into an asset purchase agreement with Neptune Leasing, Inc. to acquire a helium processing plant located near Shiprock, New Mexico. The plant processes gas

**Table of Contents**

for transactions of this type. The foregoing description of the Agreement is a summary of the material terms of the Agreement and does not purport to be complete and is qualified in its entirety by reference to the Agreement, a copy of which is as set forth in Form 8-K as Exhibit 10.1 filed with the S.E.C. by the Company on November 29, 2006 and is incorporated herein by reference.

(c) *Negotiations or Contacts.*

- As regards the LNG Business sale referred to in Item 5(a) herein, the Company negotiated the terms and conditions with Earth representatives. In addition, an independent fairness opinion was rendered prior to the transaction by the independent business valuation firm, Bernstein Conklin & Balcombe, who concluded that the market value of Apollo LNG was approximately $36 million, and that the consideration being paid was fair. The foregoing description of the fairness opinion is a summary of the material terms of the opinion and does not purport to be complete and is qualified in its entirety by reference to the fairness opinion, a copy of which is as set forth in Form 8-K/A as Exhibit 10.3 filed with the S.E.C. by the Earth on December 19, 2006 and is incorporated herein by reference.

(e) *Agreements Involving the Company's Securities.* None.

**Item 6. Purposes of the Transaction and Plans or Proposals.**

(b) *Use of Securities Acquired.* The Company will make a cash payment of $0.035 per pre-split share of Common Stock in lieu of issuing fractional shares that would otherwise result from the Reverse/Forward Stock Split. The fractional shares acquired in the Reverse/Forward Stock Split will be retired and returned to the status of authorized but unissued shares of Company Common Stock.

(a) *Plans.*

   (1) *Extraordinary Transactions.* None.

   (2) *Purchase/Sale/Transfer.* None.

   (3) *Dividend Policy Change.* The information set forth in the Information Statement under the captions "Summary of Terms of Reverse/Forward Stock Split," "Questions and Answers About the Reverse/Forward Stock Split," "Special Factors — Reasons for and Purposes of the Reverse/Forward Stock Split," "Special Factors — Effects of the Reverse/Forward Stock Split," "Special Factors — Effect of the Reverse/Forward Stock Split on Option Holders," "Special Factors — Financial Effect of the Reverse/Forward Stock Split," and "Conduct of the Company's Business After the Reverse/Forward Stock Split" are incorporated herein by reference.

   (4) *Director/Management Changes.* None.

   (5) *Corporate Structure Changes.* The information set forth in the Information Statement under the caption "Conduct of the Company's Business After the Reverse/Forward Stock Split" are incorporated herein by reference.

   (6) *Delisting.* The information set forth in the Information Statement under the captions "Special Factors — Potential Disadvantages of the Reverse/Forward Stock Split to Stockholders; Accretion in Ownership and Control of Certain Stockholders," "Fairness of the Reverse/Forward Stock Split to Stockholders — Termination of Exchange Act Registration," and "Conduct of the Company's Business After the Reverse/Forward Stock Split" are incorporated herein by reference.

   (7) *Termination of Securities Class(es).* The information set forth in the Information Statement under the captions "Summary of Terms of Reverse/Forward Stock Split," "Questions and Answers About Reverse/Forward Stock Split," "Special Factors — Reasons for and Purposes of the Reverse/Forward Stock Split," "Special Factors — Effects of the Reverse/Forward Stock Split," "Special Factors — Potential Disadvantages of the Reverse/Forward Stock Split to Stockholders; Accretion in Ownership and Control of Certain Stockholders," "Fairness of the Reverse/Forward Stock Split to Stockholders — Termination of Exchange Act Registration" and "Conduct of the Company's Business After the Reverse/Forward Stock Split" are incorporated herein by reference.

   (8) *Suspension of Filing Obligations.* The information set forth in the Information Statement under the captions "Summary of Terms of Reverse/Forward Stock Split," "Questions and Answers About

Table of Contents

Reverse/Forward Stock Split," "Special Factors — Reasons for and Purposes of the Reverse/Forward Stock Split," "Special Factors — Effects of the Reverse/Forward Stock Split," "Special Factors — Potential Disadvantages of the Reverse/Forward Stock Split to Stockholders; Accretion in Ownership and Control of Certain Stockholders," "Fairness of the Reverse/Forward Stock Split to Stockholders — Termination of Exchange Act Registration" and "Conduct of the Company's Business After the Reverse/Forward Stock Split" are incorporated herein by reference.

**Item 7. Purposes, Alternatives, Reasons and Effects.**

(a) *Purposes.* The information set forth in the Information Statement under the captions "Questions and Answers About the Reverse/Forward Stock Split," "Special Factors — Reasons for and Purposes of the Reverse/Forward Stock Split" and "Special Factors — Background of the Reverse/Forward Stock Split" is incorporated herein by reference.

(b) *Alternatives.* The information set forth in the Information Statement under the caption "Special Factors — Strategic Alternatives Considered" is incorporated herein by reference.

(c) *Reasons.* The information set forth in the Information Statement under the captions "Questions and Answers About the Reverse/Forward Stock Split," "Special Factors — Reasons for and Purposes of Reverse/Forward Stock Split" and "Special Factors — Background of the Reverse/Forward Stock Split" is incorporated herein by reference.

(d) *Effects.* The information set forth in the Information Statement under the captions "Summary of Terms of Reverse/Forward Stock Split," "Questions and Answers About the Reverse/Forward Stock Split," "Structure of the Reverse/Forward Stock Split," "Special Factors — Effects of the Reverse/Forward Stock Split," "Special Factors — Potential Disadvantages of the Reverse/Forward Stock Split to Stockholders; Accretion in Ownership and Control of Certain Stockholders," Special Factors — Effect of the Reverse/Forward Stock Split on Option Holders," "Special Factors — Effect of the Reverse/Forward Stock Split on Warrant Holders," "Special Factors — Effect of the Reverse/Forward Stock Split on Holders of Outstanding Convertible Debentures," "Special Factors — Financial Effect of the Reverse/Forward Stock Split," "Special Factors — Federal Income Tax Consequences of the Reverse/Forward Stock Split," "Financing of the Reverse/Forward Stock Split," "Costs of the Reverse/Forward Stock Split" and "Conduct of the Company's Business After the Reverse/Forward Stock Split" is incorporated herein by reference.

**Item 8. Fairness of the Transaction.**

(a) *Fairness.* The information set forth in the Information Statement under the captions "Summary of Terms of Reverse/Forward Stock Split," "Questions and Answers About the Reverse/Forward Stock Split," "Special Factors — Reasons for and Purposes of the Reverse/Forward Stock Split," "Special Factors — Background of the Reverse/Forward Stock Split," "Fairness of the Reverse/Forward Stock Split to Stockholders" and "Recommendation of the Board; Fairness of the Reverse/Forward Stock Split" is incorporated herein by reference. No director dissented or abstained from voting on the Rule 13e-3 transaction.

(b) *Factors Considered in Determining Fairness.* The information set forth in the Information Statement under the captions "Summary of Terms of Reverse/Forward Stock Split," "Questions and Answers About the Reverse/Forward Stock Split," "Special Factors — Reasons for and Purposes of the Reverse/Forward Stock Split," "Special Factors — Background of the Reverse/Forward Stock Split," "Fairness of the Reverse/Forward Stock Split to Stockholders" and "Recommendation of the Board; Fairness of the Reverse/Forward Stock Split" is incorporated herein by reference

(c) *Approval of Security Holders.* The information set forth in the Information Statement under the captions "Fairness of the Reverse/Forward Stock Split to Stockholders — Procedural Fairness to All Stockholders" and "Description of the Reverse/Forward Stock Split — Vote Required" is incorporated herein by reference.

(d) *Unaffiliated Representative.* No director who is not an employee of the Company has retained an unaffiliated representative to act solely on behalf of unaffiliated security holders for purposes of negotiating the terms of the Rule 13e-3 transaction and/or preparing a report concerning the fairness of the transaction. The information set forth in the Information Statement under the caption "Fairness of the Reverse/Forward Stock Split to Stockholders — Procedural Fairness to All Stockholders" is incorporated herein by reference.

Table of Contents

> in order to resolve the Dispute, in so much as MAC shall not take action against Company for its dispute with Mercatus, entered into that certain Settlement Agreement whereby Company agreed to issue to MAC a total of 10,467,629.78 restricted shares of the common capital stock of Company ("AOOR Restricted Shares"); provided however, if MAC shall receive, at any time, payment for all that is due and payable to MAC pursuant to the AOOR Agreement, then MAC shall promptly return all of the AOOR Restricted Shares to Company. The foregoing description of the Settlement Agreement is a summary of the material terms of the Settlement Agreement and does not purport to be complete and is qualified in its entirety by reference to the Settlement Agreement, a copy of which is attached to this Schedule 13E-3 as Exhibit 11-5 and are incorporated herein by reference;

**Item 12. The Solicitation or Recommendation.**

(d) *Intent to Tender or Vote in a Going-Private Transaction.* The information set forth in the Information Statement under the captions "Summary of Terms of Reverse/Forward Stock Split," "Questions and Answers About the Reverse/Forward Stock Split," "Special Factors — Background of the Reverse/Forward Stock Split," "Fairness of the Reverse/Forward Stock Split to Stockholders — Vote Required" "Interests of Certain Persons," and "Recommendation of the Board; Fairness of the Reverse/Forward Stock Split" is incorporated herein by reference.

(a) *Recommendations of Others.* The information set forth in the Information Statement under the captions "Summary of Terms of Reverse/Forward Stock Split," "Questions and Answers About the Reverse/Forward Stock Split," "Special Factors — Background of the Reverse/Forward Stock Split" and "Recommendation of the Board; Fairness of the Reverse/Forward Stock Split" is incorporated herein by reference.

**Item 13. Financial Statements.**

(a) *Financial Statements.*

(1) The information set forth in the Information Statement under the caption "Financial Statements–Financial Information" is incorporated herein by reference.

(2) The information set forth in the Information Statement under the caption "Financial Statements–Financial Information" is incorporated herein by reference.

(3) Not applicable.

(4) For the period ending September 30, 2006, the undiluted book value of the Company was approximately $0.38 per share as set forth in Form 10-QSB as filed with the S.E.C. by the Company on November 21, 2006 and is incorporated herein by reference.

(b) *Pro Forma Information.*

(1) Not applicable as the information is not material to this transaction.

(2) Not applicable as the information is not material to this transaction.

(3) Not applicable as the information is not material to this transaction.

**Item 14. Persons/Assets, Retained, Employed, Compensated or Used.**

(a) *Solicitations or Recommendations.* No persons have been employed, retained or compensated to make solicitations or recommendations in connection with the transaction.

(b) *Employees and Corporate Assets.* As authorized, empowered, and directed by the Board of Directors, the senior executives, and certain key employees as may be necessary, of the Company shall be used in connection with completing this transaction.

Table of Contents

# SIGNATURE

After due inquiry and to the best of my knowledge and belief, the undersigned certifies that the information set forth in this statement is true, complete and correct.

|  |  |
|---|---|
| Dated: May 18, 2007 | APOLLO RESOURCES INTERNATIONAL, INC.<br><br>By: /s/ Dennis G. McLaughlin, III<br>　　　Dennis G. McLaughlin, III<br>　　　Chief Executive Officer |

14 of 15

Table of Contents

# EXHIBIT INDEX

| Exhibit No. | Description |
|---|---|
| (1) | The Information Statement on Schedule 14C (filed with the Securities and Exchange Commission concurrently with this form is incorporated herein by reference). |