Table of Contents

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# SCHEDULE 14C INFORMATION
Information Statement Pursuant to Section 14(c) of the Securities Exchange Act of 1934

**Check the appropriate box:**

☑ Preliminary Information Statement

☐ Confidential, for Use of the Commission Only (as permitted by Rule 14c-5(d)(2))

☐ Definitive Information Statement

# APOLLO RESOURCES INTERNATIONAL, INC.
(Name of Registrant as Specified in its Charter)

Payment of Filing Fee (Check the appropriate box):

☑ No fee required

☐ Fee computed on table below per Exchange Act Rules 14c-5(g) and 0-11

    (1) Title of each class of securities to which transaction applies:

    (2) Aggregate number of securities to which transaction applies:

    (3) Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

    (4) Proposed maximum aggregate value of transaction:

    (5) Total fee paid:

☐ Fee paid previously with preliminary materials.

☐ Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

    (1) Amount Previously Paid:

    (2) Form, Schedule or Registration Statement No.:

(3)   Filing Party:
_____

(4)   Date Filed:
_____

Table of Contents

**APOLLO RESOURCES INTERNATIONAL, INC.**
3001 Knox Street, Suite 403
Dallas, Texas 75205
(214) 389-9800

## NOTICE OF ACTION BY WRITTEN CONSENT OF SHAREHOLDERS

This Information Statement is being furnished to you, as a record holder of common stock, par value $0.001 ("*Common Stock*") of Apollo Resources, Inc., a Utah corporation (the "*Company*" or "*we*"), on May 18, 2007, to inform you of (i) the approval on March 9, 2007 and April 4, 2007 of consent resolutions by our Board of Directors (the "*Board*") proposing amendments to our Restated Articles of Incorporation (the "*Articles of Incorporation*") to effect a reverse stock split of our Common Stock followed immediately by a forward stock split of our Common Stock (the "*Reverse/Forward Stock Split*") and (ii) our receipt of written consents dated April 23, 2007, approving such amendments by stockholders entitled to vote on the matter as of April 9, 2007 (the "*Record Date*"). As of the Record Date, there were 376,738,622 shares of Common Stock issued and outstanding each entitled to one vote per share. A majority of the votes entitled to be cast by holders of the issued and outstanding shares of Common Stock was required to approve the Reverse/Forward Stock Split. Stockholders holding 197,893,644 shares of our issued and outstanding Common Stock, or 52.5% of the total Common Stock class vote, voted in favor of the Reverse/Forward Stock Split and the Articles of Amendment (hereinafter defined). The resolutions adopted by the Board and the written consents of the stockholders give us the authority to file Articles of Amendment to the Articles of Incorporation (the "*Articles of Amendment*"). The Articles of Amendment shall be filed with the Utah Division of Corporations and Commercial Code on or after the expiration of 20 calendar days following the date this Information Statement is first mailed to our stockholders and will become effective immediately thereafter (the "*Effective Date*"). As a result of the Reverse/Forward Stock Split, as described in more detail below, stockholders owning fewer than 65,000 shares of our Common Stock will be paid consideration of $0.035 per share for all shares owned and will no longer be stockholders in the Company, and the holdings of all other stockholders will remain unchanged. The Reverse/Forward Stock Split was approved by the Board upon evaluating the feasibility and fairness from a financial point of view to the unaffiliated stockholders of the Company of a going private transaction and to recommend a price to effect that transaction that is fair to those stockholders.

Although the Reverse/Forward Stock Split has been approved by the requisite number of stockholders, the Board reserves the right, in its discretion, to abandon the Reverse/Forward Stock Split prior to the proposed Effective Date if it determines that abandoning the Reverse/Forward Stock Split is in the best interests of the Company and its stockholders. This could occur because stockholders may purchase, sell or otherwise transfer shares of our Common Stock after the date of the mailing of this Information Statement, and the possible number of stockholders who would receive cash payments in connection with the Reverse/Forward Stock Split and the number of shares which we would purchase from such stockholders may fluctuate between the date of the mailing of this Information Statement and the date immediately preceding the Effective Date.

The intended effect of the Reverse/Forward Stock Split is to reduce the number of record holders of our Common Stock to fewer than 300 so that we will be eligible to terminate the public registration of our Common Stock under the Securities Exchange Act of 1934, as amended (the "*Exchange Act*"). Provided that the Reverse/Forward Stock Split has the intended effect, we intend to immediately file a Certificate and Notice of Termination of Registration under Section 12(g) of the Exchange Act on Form 15 to terminate the registration of our Common Stock. Upon filing the Form 15, our obligation to file periodic reports with the Securities and Exchange Commission (the "*Commission*") such as Forms 10-QSB, 10-KSB and 8-K will be immediately suspended and we will no longer be subject to the Commission's proxy rules. However, we will continue to be subject to the general anti-fraud provisions of federal and applicable state securities laws. Deregistration of our Common Stock will be effective 90 days after the filing of the Form 15.

**WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY.**

This Information Statement is dated May 18, 2007 and is first being mailed to our stockholders on or about May 29, 2007.

Table of Contents

**NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES COMMISSION (i) HAS APPROVED OR DISAPPROVED OF THIS TRANSACTION; (ii) PASSED UPON THE MERITS OR FAIRNESS OF THE TRANSACTION; OR (iii) PASSED UPON THE ADEQUACY OR ACCURACY OF THE DISCLOSURE IN THIS INFORMATION STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.**

All necessary corporate approvals in connection with the Reverse/Forward Stock Split have been obtained. This Information Statement is being furnished to all of our stockholders pursuant to Section 14(c) of the Exchange Act, the rules promulgated thereunder and the provisions of the Utah Revised Business Corporation Act (the "*Business Corporation Act*"), solely for the purpose of informing stockholders of the Reverse/Forward Stock Split before it takes effect.

Pursuant to Section 16-10a-704 of the Business Corporation Act, the Company is required to provide prompt notice of the taking of the corporate action without a meeting of the shareholders who have not consented in writing to such action. The Information Statement is intended to provide such notice. No dissenters' or appraisal rights under the Business Corporation Act are afforded to the Company's shareholders as a result of the approval of the proposal.

The Reverse/Forward Stock Split is comprised first of a reverse stock split (the "*Reverse Split*") pursuant to which each 65,000 shares of Common Stock registered in the name of a stockholder immediately prior to the effective time of the Reverse Split will be converted into one share of Common Stock, followed immediately thereafter by a forward stock split (the "*Forward Split*"), pursuant to which each share of Common Stock outstanding upon consummation of the Reverse Split will be converted into 65,000 shares of Common Stock. Interests in fractional shares owned by stockholders owning fewer than 65,000 shares of Common Stock, whose shares of Common Stock would be converted into less than one share in the Reverse Split, will instead be converted solely into the right to receive a cash payment of $0.035 per share owned by such stockholders prior to the Reverse Split. However, if a registered stockholder holds 65,000 or more shares of Common Stock in his or her account immediately prior to the effective time of the Reverse Split, any fractional share in such account resulting from the Reverse Split will not be cashed out and the total number of shares held by such holder will not change as a result of the Reverse/Forward Stock Split.

The determination of the 1 for 65,000 Reverse Split ratio was based on the Company's intention to reduce the number of record stockholders remaining after the Reverse Split to fewer than 300 so that the Company could terminate the registration of its Common Stock with the Commission. The resulting estimated cost to cash out these shares was determined to be reasonable in light of the expected benefits from the Reverse/Forward Stock Split.

We intend for the Reverse/Forward Stock Split to treat stockholders holding Common Stock in street name through a nominee (such as a bank or broker) in the same manner as stockholders whose shares are registered in their names, and nominees will be instructed to effect the Reverse/Forward Stock Split for their beneficial holders. However, nominees may have different procedures, and stockholders holding shares in street name should contact their nominees. A stockholder holding fewer than 65,000 shares of Common Stock in street name who wants to receive cash in the Reverse/Forward Stock Split should instruct his, her or its nominee to transfer such stockholder's shares into a record account in such stockholder's name by June 15, 2007 to ensure that such stockholder will be considered a holder of record prior to the Effective Date of the Reverse/Forward Stock Split. A stockholder holding fewer than 65,000 shares of Common Stock in street name through a nominee who does not transfer shares into a record account by June 15, 2007 may not have his, her or its shares cashed out in connection with the Reverse/Forward Stock Split. For instance, a stockholder's shares may not be cashed out if such stockholder's nominee is a record holder of an aggregate of 65,000 or more shares of Common Stock, holds shares for multiple stockholders in street name and does not provide such beneficial ownership positions by June 15, 2007 to Colonial Stock Transfer Company, Inc., our exchange agent (the "Exchange Agent").

As soon as practicable after the Effective Date, we will send all stockholders with stock certificates representing the right to receive cash payments a letter of transmittal to be used to transmit Common Stock certificates to the Exchange Agent. Upon proper completion and execution of the letter of transmittal, and the return of the letter of transmittal and accompanying stock certificate(s) to the Exchange Agent, each stockholder entitled to receive payment will receive a check for such stockholder's stock. Stockholders should allow for approximately five (5) business days after mailing for the Exchange Agent to receive the letter of transmittal and accompanying stock certificate. The Exchange Agent will send a check for such stockholder's stock within approximately five (5) business days of receiving such letter of transmittal and accompanying stock certificate. In the event we are unable to locate certain stockholders or if a stockholder fails properly to complete, execute and return the letter of

Table of Contents

transmittal and accompanying stock certificate to the Exchange Agent, any funds payable to such holders pursuant to the Reverse/Forward Stock Split will be held in escrow until a proper claim is made, subject to applicable abandoned property laws.

4 of 33

Table of Contents

On May 17, 2007, the last practicable trading day prior to the date of this Information Statement, our Common Stock's closing price was $0.034.

### Security Ownership of Certain Beneficial Owners and Management

The following table sets forth certain information regarding beneficial ownership of our Common Stock, our only class of equity securities currently outstanding, as of April 4, 2007, by (1) each director and named executive officer of the Company, (2) all officers and directors of the Company as a group, and (3) all persons who are known by the Company to be beneficial owners of 5% or more of the Company's outstanding common stock.

| Title of Class | Name and Address | Number of Shares[1] | % of Class |
|---|---|---|---|
| Common Stock | Dennis McLaughlin CEO and Director | 161,575,476[2] | 42.9% |
| Common Stock | Christopher P. (Kit) Chambers Corporate Secretary and Director | 1,000,000 | 0.3% |
| Common Stock | Darren L. Miles Chief Financial Officer and Director | 0 | 0.0% |
| Common Stock | Billy A. Mickle Director | 0 | 0.0% |
| Common Stock | Glenn E. Floyd Director | 0 | 0.0% |
| Common Stock | Officers and Directors as a Group (5 persons) | 162,575,476 | 43.2% |
| Common Stock | 5%+ Shareholders — None except as described above | — | —% |

---

\*   Indicates less than one percent (1%).

(1) Except as set forth above and based solely upon reports of beneficial ownership required to be filed with the Securities and Exchange Commission pursuant to Rule 13d-1 under the Securities Exchange Act of 1934, as amended, the Company does not believe that any other person beneficially owned, as of April 4, 2007, greater than 5% of the outstanding common stock. Except as otherwise noted, the address of the named individuals is 3001 Knox Street, Suite 403, Dallas, Texas 75205.

(2) Shares held directly of 5,879,323 and shares beneficially owned of 155,696,153 through interest in AP Holdings, Inc.

### Interests of Certain Persons

Our directors and executive officers have interests in the Reverse/Forward Stock Split that may be different from your interests as a stockholder and have relationships that may present conflicts of interest, including the following:

- As noted below in the section entitled "Security Ownership of Certain Beneficial Owners and Management," Dennis G. McLaughlin, III and Christopher P. (Kit) Chambers who are members of our Board of Directors, and executive officers, each own 65,000 or more shares of our Common Stock and will continue to own shares of Common Stock after the transaction; and

- As a result of the Reverse/Forward Stock Split, the stockholders who own 65,000 or more shares, such as our directors and executive officers, will have a slight increase in their percentage ownership interest in the Company as a result of the transaction. Our directors and executive officers currently beneficially own approximately 43.2% of the outstanding Common Stock and will have their beneficial ownership increased by less than 22.3% following completion of the Reverse/Forward Stock Split

We will make no payments to officers and directors in connection with the Reverse/Forward Stock Split. The executive officers and directors immediately prior to the Reverse/Forward Stock Split will be the executive officers and directors of the Company immediately following the transaction. In addition, the Reverse/Forward Stock Split

27 of 33