Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# SCHEDULE 14C INFORMATION

Information Statement Pursuant to Section 14(c)
of the Securities Exchange Act of 1934

Check the appropriate box:

☐ Preliminary Proxy Statement
☐ **Confidential, for Use of the Commission Only (as permitted by Rule 14c-5(d)(2))**
☒ Definitive Information Statement

**APOLLO RESOURCES INTERNATIONAL, INC.**
(Name of Registrant as Specified In Its Charter)

Payment of Filing Fee (Check the appropriate box):

☒ No fee required.
☐ Fee computed on table below per Exchange Act Rules 14c-5(g) and 0-11

   (1) Title of each class of securities to which transaction applies:

   (2) Aggregate number of securities to which transaction applies:

   (3) Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

   (4) Proposed maximum aggregate value of transaction:

   (5) Total fee paid:

☐ Fee paid previously with preliminary materials.
☐ Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

   (1) Amount Previously Paid:

   (2) Form, Schedule or Registration Statement No.:

(3)  Filing Party:

_____

(4)  Date Filed:

_____

Table of Contents

**APOLLO RESOURCES INTERNATIONAL, INC.**
3001 Knox Street, Suite 403
Dallas, Texas 75205

---

**NOTICE OF ACTION BY WRITTEN CONSENT OF SHAREHOLDERS**

---

Dear Shareholder:

The purpose of this letter is to inform you that shareholders representing more than 50% of our outstanding Common Stock have executed a Written Consent in Lieu of Special Meeting, approving an reverse stock split of our Common Stock followed immediately by a forward stock split of our Common Stock (the "*Reverse/Forward Stock Split*"). Under Utah law, our Articles of Incorporation, and Bylaws, this consent will satisfy the shareholder approval requirement for the Reverse/Forward Stock Split of our Common Stock.

This letter and the accompanying Information Statement are being furnished to the holders of record of the Company's Common Stock as of April 9, 2007. The Information Statement is being mailed to shareholders on or about May 29, 2007.

**WE ARE NOT ASKING YOU FOR A PROXY AND
YOU ARE REQUESTED NOT TO SEND US A PROXY**

Section 16-10a-704 of the Utah Revised Business Corporation Act (the "*Business Corporation Act*") provides that the written consent of the holders of the outstanding shares of voting stock, having not less than the minimum number of votes which would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted, may be substituted for such a meeting. Pursuant to Section 16-10a-1003 of the Business Corporation Act, a majority of the outstanding voting shares of stock entitled to vote thereon is required in order to amend our Articles of Incorporation. In order to eliminate the costs and management time involved in having a special meeting of shareholders and obtaining proxies, and in order to effect the resolutions as early as possible in order to accomplish the purposes of the Company as hereafter described, the Board of Directors of the Company voted to utilize, and did in fact obtain, the written consent of the holders of a majority of the voting power of the Company.

Pursuant to Section 16-10a-704 of the Business Corporation Act, the Company is required to provide prompt notice of the taking of the corporate action without a meeting of the shareholders who have not consented in writing to such action. The Information Statement is intended to provide such notice. No dissenters' or appraisal rights under the Business Corporation Act are afforded to the Company's shareholders as a result of the approval of the proposal.

The accompanying Information Statement is for informational purposes only. It describes why an increase in the authorized Common Stock capitalization limit was required, and contains other disclosures required by law in connection with shareholder approval of the increase in the authorized Common Stock capitalization limit of our Company. Please read the accompanying Information Statement carefully.

APOLLO RESOURCES INTERNATIONAL, INC.

*[signature: Dennis N. McLaughlin, III]*

Dennis G. McLaughlin, III
*Chief Executive Officer*

Dallas, Texas
May 29, 2007

2 of 34

Table of Contents

APOLLO RESOURCES INTERNATIONAL, INC.
3001 Knox Street, Suite 403
Dallas, Texas 75205
(214) 389-9800

### NOTICE OF ACTION BY WRITTEN CONSENT OF SHAREHOLDERS

This Information Statement is being furnished to you, as a record holder of common stock, par value $0.001 ("*Common Stock*") of Apollo Resources, Inc., a Utah corporation (the "*Company*" or "*we*"), on May 18, 2007, to inform you of (i) the approval on March 9, 2007 and April 4, 2007 of consent resolutions by our Board of Directors (the "*Board*") proposing amendments to our Restated Articles of Incorporation (the "*Articles of Incorporation*") to effect a reverse stock split of our Common Stock followed immediately by a forward stock split of our Common Stock (the "*Reverse/Forward Stock Split*") and (ii) our receipt of written consents dated April 23, 2007, approving such amendments by stockholders entitled to vote on the matter as of April 9, 2007 (the "*Record Date*"). As of the Record Date, there were 376,738,622 shares of Common Stock issued and outstanding each entitled to one vote per share. A majority of the votes entitled to be cast by holders of the issued and outstanding shares of Common Stock was required to approve the Reverse/Forward Stock Split. Stockholders holding 197,893,644 shares of our issued and outstanding Common Stock, or 52.5% of the total Common Stock class vote, voted in favor of the Reverse/Forward Stock Split and the Articles of Amendment (hereinafter defined). The resolutions adopted by the Board and the written consents of the stockholders give us the authority to file Articles of Amendment to the Articles of Incorporation (the "*Articles of Amendment*"). The Articles of Amendment shall be filed with the Utah Division of Corporations and Commercial Code on or after the expiration of 20 calendar days following the date this Information Statement is first mailed to our stockholders and will become effective immediately thereafter (the "*Effective Date*"). As a result of the Reverse/Forward Stock Split, as described in more detail below, stockholders owning fewer than 65,000 shares of our Common Stock will be paid consideration of $0.035 per share for all shares owned and will no longer be stockholders in the Company, and the holdings of all other stockholders will remain unchanged. The Reverse/Forward Stock Split was approved by the Board upon evaluating the feasibility and fairness from a financial point of view to the unaffiliated stockholders of the Company of a going private transaction and to recommend a price to effect that transaction that is fair to those stockholders.

Although the Reverse/Forward Stock Split has been approved by the requisite number of stockholders, the Board reserves the right, in its discretion, to abandon the Reverse/Forward Stock Split prior to the proposed Effective Date if it determines that abandoning the Reverse/Forward Stock Split is in the best interests of the Company and its stockholders. This could occur because stockholders may purchase, sell or otherwise transfer shares of our Common Stock after the date of the mailing of this Information Statement, and the possible number of stockholders who would receive cash payments in connection with the Reverse/Forward Stock Split and the number of shares which we would purchase from such stockholders may fluctuate between the date of the mailing of this Information Statement and the date immediately preceding the Effective Date.

The intended effect of the Reverse/Forward Stock Split is to reduce the number of record holders of our Common Stock to fewer than 300 so that we will be eligible to terminate the public registration of our Common Stock under the Securities Exchange Act of 1934, as amended (the "*Exchange Act*"). Provided that the Reverse/Forward Stock Split has the intended effect, we intend to immediately file a Certificate and Notice of Termination of Registration under Section 12(g) of the Exchange Act on Form 15 to terminate the registration of our Common Stock. Upon filing the Form 15, our obligation to file periodic reports with the Securities and Exchange Commission (the "*Commission*") such as Forms 10-QSB, 10-KSB and 8-K will be immediately suspended and we will no longer be subject to the Commission's proxy rules. However, we will continue to be subject to the general anti-fraud provisions of federal and applicable state securities laws. Deregistration of our Common Stock will be effective 90 days after the filing of the Form 15.

**WE ARE NOT ASKING YOU FOR A PROXY AND YOU ARE REQUESTED NOT TO SEND US A PROXY.**

This Information Statement is dated May 18, 2007 and is first being mailed to our stockholders on or about May 29, 2007.

Table of Contents

**NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES COMMISSION (i) HAS APPROVED OR DISAPPROVED OF THIS TRANSACTION; (ii) PASSED UPON THE MERITS OR FAIRNESS OF THE TRANSACTION; OR (iii) PASSED UPON THE ADEQUACY OR ACCURACY OF THE DISCLOSURE IN THIS INFORMATION STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.**

All necessary corporate approvals in connection with the Reverse/Forward Stock Split have been obtained. This Information Statement is being furnished to all of our stockholders pursuant to Section 14(c) of the Exchange Act, the rules promulgated thereunder and the provisions of the Utah Revised Business Corporation Act (the "*Business Corporation Act*"), solely for the purpose of informing stockholders of the Reverse/Forward Stock Split before it takes effect.

Pursuant to Section 16-10a-704 of the Business Corporation Act, the Company is required to provide prompt notice of the taking of the corporate action without a meeting of the shareholders who have not consented in writing to such action. The Information Statement is intended to provide such notice. No dissenters' or appraisal rights under the Business Corporation Act are afforded to the Company's shareholders as a result of the approval of the proposal.

The Reverse/Forward Stock Split is comprised first of a reverse stock split (the "*Reverse Split*") pursuant to which each 65,000 shares of Common Stock registered in the name of a stockholder immediately prior to the effective time of the Reverse Split will be converted into one share of Common Stock, followed immediately thereafter by a forward stock split (the "*Forward Split*"), pursuant to which each share of Common Stock outstanding upon consummation of the Reverse Split will be converted into 65,000 shares of Common Stock. Interests in fractional shares owned by stockholders owning fewer than 65,000 shares of Common Stock, whose shares of Common Stock would be converted into less than one share in the Reverse Split, will instead be converted solely into the right to receive a cash payment of $0.035 per share owned by such stockholders prior to the Reverse Split. However, if a registered stockholder holds 65,000 or more shares of Common Stock in his or her account immediately prior to the effective time of the Reverse Split, any fractional share in such account resulting from the Reverse Split will not be cashed out and the total number of shares held by such holder will not change as a result of the Reverse/Forward Stock Split.

The determination of the 1 for 65,000 Reverse Split ratio was based on the Company's intention to reduce the number of record stockholders remaining after the Reverse Split to fewer than 300 so that the Company could terminate the registration of its Common Stock with the Commission. The resulting estimated cost to cash out these shares was determined to be reasonable in light of the expected benefits from the Reverse/Forward Stock Split.

We intend for the Reverse/Forward Stock Split to treat stockholders holding Common Stock in street name through a nominee (such as a bank or broker) in the same manner as stockholders whose shares are registered in their names, and nominees will be instructed to effect the Reverse/Forward Stock Split for their beneficial holders. However, nominees may have different procedures, and stockholders holding shares in street name should contact their nominees. A stockholder holding fewer than 65,000 shares of Common Stock in street name who wants to receive cash in the Reverse/Forward Stock Split should instruct his, her or its nominee to transfer such stockholder's shares into a record account in such stockholder's name by June 15, 2007 to ensure that such stockholder will be considered a holder of record prior to the Effective Date of the Reverse/Forward Stock Split. A stockholder holding fewer than 65,000 shares of Common Stock in street name through a nominee who does not transfer shares into a record account by June 15, 2007 may not have his, her or its shares cashed out in connection with the Reverse/Forward Stock Split. For instance, a stockholder's shares may not be cashed out if such stockholder's nominee is a record holder of an aggregate of 65,000 or more shares of Common Stock, holds shares for multiple stockholders in street name and does not provide such beneficial ownership positions by June 15, 2007 to Colonial Stock Transfer Company, Inc., our exchange agent (the "Exchange Agent").

As soon as practicable after the Effective Date, we will send all stockholders with stock certificates representing the right to receive cash payments a letter of transmittal to be used to transmit Common Stock certificates to the Exchange Agent. Upon proper completion and execution of the letter of transmittal, and the return of the letter of transmittal and accompanying stock certificate(s) to the Exchange Agent, each stockholder entitled to receive payment will receive a check for such stockholder's stock. Stockholders should allow for approximately five (5) business days after mailing for the Exchange Agent to receive the letter of transmittal and accompanying stock certificate. The Exchange Agent will send a check for such stockholder's stock within approximately five (5) business days of receiving such letter of transmittal and accompanying stock certificate. In the event we are unable to locate certain stockholders or if a stockholder fails properly to complete, execute and return the letter of

Table of Contents

transmittal and accompanying stock certificate to the Exchange Agent, any funds payable to such holders pursuant to the Reverse/Forward Stock Split will be held in escrow until a proper claim is made, subject to applicable abandoned property laws.

Table of Contents

"Recommendation of the Board; Fairness of the Reverse/Forward Stock Split" in this Information Statement.

**Q: What are some of the reasons for going private now?**

A: Our Board believes that any material benefit from our public company status is outweighed by the significant and increasing costs of being a public company.

- Do not have significant staff to manage the aspects of being public
- Do not have the financial wherewithal to manage the implementation of Sarbanes-Oxley

See also information under the caption "Special Factors—Reasons for and Purposes of the Reverse/Forward Stock Split" in this Information Statement.

**Q: What are some of the factors that the Board considered in approving the Reverse/Forward Stock Split?**

A: The Board considered several factors in approving the Reverse/Forward Stock Split. Importantly, the Board considered the relative advantages and disadvantages discussed above and under the captions "Special Factors—Reasons for and Purposes of the Reverse/Forward Stock Split," "Special Factors—Strategic Alternatives Considered, "Special Factors—Background of the Reverse/Forward Stock Split" and "Special Factors—Effects of the Reverse/Forward Stock Split" in this Information Statement. The Board also considered numerous other factors, including:

- the financial presentations and analyses of management regarding the Reverse/Forward Stock Split, including the valuation of the Company and determination of the range of fair prices per pre-split share;
- the Board's discussions and conclusions about the fairness of the price of $0.035 per pre-split share to be paid following the Reverse/Forward Stock Split to our stockholders owning fewer than 65,000 shares of our Common Stock;
- the recommendation of the C.E.O. to the Board regarding the fairness of the Reverse/Forward Split to our stockholders;
- the opinion that, as of March 9, 2007 and April 4, 2007 (the date of the approval of the Articles of Amendment by the Board), consideration of $0.035 per pre-split share is fair, from a financial point of view, to holders of shares of the Company's Common Stock who will receive cash payments for their pre-split shares and will not be continuing stockholders of the Company; and
- the projected tangible and intangible cost savings to us by terminating our status as a public company.

See also information under the captions "Fairness of the Reverse/Forward Stock Split—Opinion of Imperial Capital" and "Recommendation of the Board; Fairness of the Reverse/Forward Stock Split" in this Information Statement.

**Q: What are the interests of directors and executive officers in the Reverse/Forward Stock Split?**

A: As a result of the Reverse/Forward Stock Split, we believe that our directors and executive officers, collectively, will increase their direct beneficial ownership of our Common Stock from approximately 43.2% to 53.0%. The number of shares held by our directors and officers will remain substantially unchanged as a result of the Reverse/Forward Stock Split.

See also information under the captions "Special Factors—Effects of the Reverse/Forward Stock Split" and "Special Factors—Potential Disadvantages of the Reverse/Forward Stock Split to Stockholders; Accretion in Ownership and Control of Certain Stockholders" in this Information Statement.

Table of Contents

Q: **What is the total cost of the Reverse/Forward Stock Split to the Company?**

A: We estimate that we will pay up to approximately $2,179,636 to cash out fractional shares. In addition, we anticipate incurring approximately $500,000 in advisory, legal, financial, accounting, printing and other fees and costs in connection with the Reverse/Forward Stock Split.

See also information under the captions "Special Factors—Effects of the Reverse/Forward Stock Split," "Special Factors—Financial Effect of the Reverse/Forward Stock Split" and "Costs of the Reverse/Forward Stock Split" in this Information Statement.

Q: **At what prices has our stock traded recently?**

A: Our Common Stock was formerly quoted on the NASD's Over the Counter Bulletin Board ("OTCBB") under the ticker symbol "AOOR.OB." On or about April 23, 2007, the NASD notified the Company that the Company's securities were to be removed from quotation on the OTCBB effective at the open of business on April 27, 2007. As such, the Company now trades on as an OTC "Pink Sheet" security under the ticker symbol "AOORE.OB and shall be trading under the symbol "AOOR.PK." We consider our common stock to be thinly traded and any reported bid or sale prices may not be a true market-based valuation of the common stock. On May 17, 2007, the last practicable trading day prior to the date of this Information Statement, our Common Stock's closing price was $0.034..

See also information under the caption "Trading Market and Price of our Common Stock and Dividend Policy" in this Information Statement.

## Special Factors

### a) Reasons for and Purposes of the Reverse/Forward Stock Split

The primary purpose of the Reverse/Forward Stock Split is to reduce the number of record holders of our Common Stock to fewer than 300, so that we can terminate the registration of our Common Stock under Section 12(g) of the Exchange Act. The Reverse/Forward Stock Split is expected to result in the elimination of the expenses related to our disclosure, compliance and reporting requirements under the Exchange Act, to decrease the management resources deployed to comply with the federal securities laws and to decrease the administrative expense we incur in servicing a large number of record stockholders who own relatively small numbers of our shares.

The Board believes that any material benefit derived from continued registration under the Exchange Act is outweighed by the significant and increasing cost. The Company's historical costs associated with being a public company are approximately $500,000 annually, before taxes. We expect these costs to increase since we will be required to comply with Section 404 of the Sarbanes-Oxley Act beginning in our fiscal year ending December 31, 2007. We estimate one-time expenses of at least $50,000 and future annual expenses of approximately $1,000,000 relating to compliance with Section 404. We believe we have been unable to provide increased value to our stockholders as a public company, and particularly as a result of the increased cost and tangible and intangible burdens associated with being a public company following the passage of the Sarbanes-Oxley Act, we do not believe that continuing our public company status is in the best interest of the Company or our stockholders. The corporate governance, reporting, internal control documentation and attestation procedures, and disclosure compliance obligations required by the Sarbanes-Oxley Act are disproportionately more burdensome to us based on our size, financial resources, human capital, cost of remaining a public company, small number and percentage of shares that are held by the public, absence of sustained interest from public investors and securities research analysts and inability to access the capital markets, compared to a larger public company. The expenses involved for compliance with the Sarbanes-Oxley Act are a disproportionately larger percentage of our revenues compared to that of a larger public company. Compliance under the Sarbanes-Oxley Act means significant increases in annual accounting, legal

Table of Contents

stock within approximately five (5) business days of receiving such letter of transmittal and accompanying stock certificate. In the event we are unable to locate certain stockholders or if a stockholder fails properly to complete, execute and return the letter of transmittal and accompanying stock certificate to the Exchange Agent, any funds payable to such holders pursuant to the Reverse/Forward Stock Split will be held in escrow until a proper claim is made, subject to applicable abandoned property laws. Record holders owning fewer than 65,000 shares of Common Stock on the Effective Date will receive in exchange a cash payment in the amount of $0.035 per pre-split share. Those record holders beneficially owning at least 65,000 shares of Common Stock will continue to hold the same number of shares of Common Stock.

If the Reverse/Forward Stock Split is effected, any stockholder owning fewer than 65,000 shares of the currently outstanding Common Stock will cease to have any rights with respect to our Common Stock, except to be paid the cash consideration, as described in this Information Statement. No interest will be paid or accrued on the cash payable to holders of fewer than 65,000 shares after the Reverse/Forward Stock Split is effected.

No service charges will be payable by stockholders in connection with the exchange of certificates for cash, all expenses of which will be borne by us except for expenses, if any, imposed by your nominee.

Nominees (such as a bank or broker) may have required procedures, and a stockholder holding Common Stock in street name should contact his, her or its nominee to determine how the Reverse/Forward Stock Split will affect them. The Exchange Agent appointed by us to carry out the exchange has informed us that nominees are expected to provide beneficial ownership positions to them so that beneficial owners may be treated appropriately in effecting the Reverse/Forward Stock Split. However, if you are a beneficial owner of fewer than 65,000 shares of Common Stock, you should instruct your nominee to transfer your shares into a record account in your name by June 15, 2007 to ensure that you will be considered a holder of record prior to the Effective Date, which is anticipated to be on or after June 11, 2007, the date twenty (20) calendar days after the date this Information Statement is first mailed to our stockholders as well as those other requisite filings. A stockholder holding fewer than 65,000 shares of Common Stock in street name who does not transfer shares into a record account by June 15, 2007 may not have his or her shares cashed out in connection with the Reverse/Forward Stock Split. For instance, such stockholder's shares may not be cashed out if such stockholder's nominee is a record holder of an aggregate of 65,000 or more shares of Common Stock, holds shares for multiple stockholders in street name and does not provide such beneficial ownership positions by June 15, 2007 to the Exchange Agent.

In the event that any certificate representing shares of Common Stock is not presented for cash upon request by us, the cash payment will be administered in accordance with the relevant state abandoned property laws. Until the cash payments have been delivered to the appropriate public official pursuant to the abandoned property laws, such payments will be paid to the holder thereof or his or her designee, without interest, at such time as the shares of Common Stock have been properly presented for exchange.

f) Appraisal Rights

No appraisal rights are available under Utah law or our Articles of Incorporation to any dissenting stockholder.

### Financing of the Reverse/Forward Stock Split

Completion of the Reverse/Forward Stock Split will require approximately $2,329,636, which includes approximately $150,000 in advisory, legal, financial, accounting, printing and other fees and costs related to the transaction. As a result, we will have decreased working capital and borrowing capacity following the Reverse/Forward Stock Split which may have a material effect on our capitalization, liquidity, results of operations and cash flow. The costs of the transaction and related fees and expenses will be paid from revenues from oil and gas operations, loan receivables, and the potential sale of certain assets. You should read the discussion under the caption "Costs of the Reverse/Forward Stock Split" in this Information Statement for a description of the fees and expenses we expect to incur in connection with the transaction.

### Costs of the Reverse/Forward Stock Split

The following is an estimate of the costs incurred or expected to be incurred by us in connection with the Reverse/Forward Stock Split. Final costs of the transaction may be more or less than the estimates shown below. We

Table of Contents

will be responsible for paying these costs. Please note that the following estimate of costs does not include the cost of paying for shares of those stockholders holding fewer than 65,000 shares pursuant to the Reverse/Forward Stock Split.

| | |
|---|---:|
| Legal fees | $ 50,000 |
| Transfer and exchange agent fees | $ 50,000 |
| Printing and mailing costs | $ 50,000 |
| Miscellaneous (including SEC filing fees) | $ 0 |
| Total | $150,000 |

### Conduct of the Company's Business After the Reverse/Forward Stock Split

We expect our business and operations to continue as they are currently being conducted and, except as disclosed in this Information Statement, the Reverse/Forward Stock Split is not anticipated to have any effect upon the conduct of our business. We expect to realize management time and cost savings as a result of terminating our public company status. When the Reverse/Forward Stock Split is consummated, all persons owning fewer than 65,000 shares of Common Stock at the effective time of the Reverse/Forward Stock Split will no longer have any equity interest in, and will not be stockholders of, the Company, and therefore will not participate in our future potential earnings and growth.

When the Reverse/Forward Stock Split is effected, we believe that, based on our stockholder records, approximately 248 holders will remain as holders of Common Stock, beneficially owning 100% of the outstanding Common Stock. Stockholders who currently beneficially own approximately 81.5% of the outstanding Common Stock will beneficially own 100% of the outstanding Common Stock after the Reverse/Forward Stock Split. See also information under the caption "Security Ownership of Certain Beneficial Owners and Management" in this Information Statement. When the Reverse/Forward Stock Split is effected, members of the Board and our executive officers, collectively, will directly beneficially own approximately 53.0% of the outstanding Common Stock compared to approximately 42.3% of the outstanding Common Stock prior to the Effective Date.

We plan, following the consummation of the Reverse/Forward Stock Split, to become a privately held company. The registration of our Common Stock under the Exchange Act will be terminated and our Common Stock will cease to be quoted on the OTCBB and only will be traded in the "pink sheets." In addition, because our Common Stock will no longer be publicly held, we will be relieved of the obligation to comply with the proxy rules of Regulation 14A under Section 14 of the Exchange Act, and our officers and directors and stockholders owning more than 10% of Common Stock will be relieved of the stock ownership reporting requirements and "short swing" trading restrictions under Section 16 of the Exchange Act. Further, we will no longer be subject to the periodic reporting requirements of the Exchange Act and will cease filing information with the Commission, such as Forms 10-KSB, 10-QSB and 8-K. Among other things, the effect of this change will be to enable us to realize management time and cost savings from not having to comply with the requirements of the Exchange Act.

### Recommendation of the Board; Fairness of the Reverse/Forward Stock Split

The Board believes that the Reverse/Forward Stock Split is fair to our unaffiliated stockholders, including those whose interests are being cashed out pursuant to the Reverse/Forward Stock Split and those who will retain an equity interest in the Company subsequent to the consummation of the Reverse/Forward Stock Split. The discussion below summarizes the material factors, both positive and negative, considered by the Board in reaching their fairness determination, in addition to the detailed discussion in this Information Statement under the captions "Special Factors—Reasons for and Purposes of the Reverse/Forward Stock Split," "Special Factors—Strategic Alternatives Considered," "Special Factors—Background of the Reverse/Forward Stock Split" and "Special Factors—Effects of the Reverse/Forward Stock Split." For the reasons described above under the caption "Fairness of the Reverse/Forward Stock Split to Stockholders—Procedural Fairness to All Stockholders," the Board also believes that the process by which the transaction has been approved is fair to all unaffiliated stockholders, including those whose interests are being cashed out pursuant to the Reverse/Forward Stock Split and those who will retain an equity interest in the Company subsequent to the consummation of the Reverse/Forward Stock Split.