GAS NO. _____ P657-13

CONTRACT NO. 14-20-_____

Form 6-157
(Jan. 1962)

# UNITED STATES
## DEPARTMENT OF THE INTERIOR
### BUREAU OF INDIAN AFFAIRS

Coll. 40678

## OIL AND GAS MINING LEASE—TRIBAL INDIAN LANDS

THIS INDENTURE OF LEASE, made and entered into in quintuplicate this __12th__ day of ___October___, 19__64__, by and between ___Chairman___ ___Navajo Tribal Council___ of ___Apache___, State of ___Arizona___, for and on behalf of the ___Navajo___ Tribe of Indians, lessor, and ___Sunray DX Oil Refining Company___ ___P. O. Box 601___ of ___Tulsa___, State of ___Oklahoma___, lessee:

### WITNESSETH

1. Lessor, in consideration of a cash bonus of $ _____, paid to the payee designated by the Area Director, receipt of which is hereby acknowledged and in consideration of rents and royalties to be paid, and the covenants to be observed as herein set forth, does hereby grant and lease to the lessee the exclusive right and privilege to drill for, mine, extract, remove, and dispose of all the oil and natural gas deposits including helium gas, carbon dioxide gas, and sulphur gas in or under the following-described tracts of land situated in the county of ___Apache___, State of ___Arizona___, and more particularly described as follows:

```
TOWNSHIP 30 NORTH, RANGE 29 EAST, G & SRM
    SECTION - 25 - All
    SECTION - 26 - All                        TRACT # 68
    SECTION - 35 - All
    SECTION - 36 - All    - Protraction Diagram # 38
```

containing __2,560.00__ acres more or less, together with the right to construct and maintain thereupon all works, buildings, plants, waterways, roads, telegraph and telephone lines, pipe lines, reservoirs, tanks, pumping stations, or other structures necessary to the full enjoyment hereof for the term of 10 years from and after the approval hereof by the Secretary of the Interior and as much longer thereafter as oil and/or gas is produced in paying quantities from said land.

2. The term "oil and gas supervisor" as employed herein shall refer to such officer or officers as the Secretary of the Interior may designate to supervise oil and gas operations on Indian lands. The term "superintendent" as used herein shall refer to the superintendent or other official in charge of the Indian Agency having jurisdiction over the lands leased.

3. In consideration of the foregoing, the lessee hereby agrees:

(a) Bond.—To furnish such bond as may be required by the regulations of the Secretary of the Interior, with satisfactory surety, or United States bonds as surety therefor, conditioned upon compliance with the terms of this lease.

(b) Wells.—(1) To drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands or lands of the lessor leased at a lower royalty rate, or in lieu thereof, to compensate the lessor in full each month for the estimated loss of royalty through drainage: *Provided*, That during the period of supervision by the Secretary of the Interior, the necessity for offset wells shall be determined by the oil and gas supervisor and payment in lieu of

(1)

607386

2

drilling and production shall be with the consent of, and in an amount determined by the Secretary of the Interior; (2) at the election of the lessee to drill and produce other wells: *Provided*, That the right to drill and produce such other wells shall be subject to any system of well spacing or production allotments authorized and approved under applicable law or regulations, approved by the Secretary of the Interior and affecting the field or area in which the leased lands are situated; and (3) if the lessee elects not to drill and produce such other wells for any period the Secretary of the Interior may, within 10 days after due notice in writing, either require the drilling and production of such wells to the number necessary, in his opinion, to insure reasonable diligence in the development and operation of the property, or may in lieu of such additional diligent drilling and production require the payment on and after the first anniversary date of this lease of not to exceed $1 per acre per annum, which sum shall be in addition to any rental or royalty hereinafter specified.

(c) *Rental and royalty.*—To pay, beginning with the date of approval of the lease by the Secretary of the Interior or his duly authorized representative, a rental of $1.25 per acre per annum in advance during the continuance hereof, the rental so paid for any one year to be credited on the royalty for that year, together with a royalty of 16⅔ percent of the value or amount of all oil, gas, and/or natural gasoline, and/or all other hydrocarbon substances produced and saved from the land leased herein, save and except oil, and/or gas used by the lessee for development and operation purposes on said lease, which oil or gas shall be royalty free. During the period of supervision, "value" for the purposes hereof may, in the discretion of the Secretary, be calculated on the basis of the highest price paid or offered (whether calculated on the basis of short or actual volume) at the time of production for the major portion of the oil of the same gravity, and gas, and/or natural gasoline, and/or all other hydrocarbon substances produced and saved from the field where the leased lands are situated, and the actual volume of the marketable product less the content of foreign substances as determined by the oil and gas supervisor. The actual amount realized by the lessee from the sale of said products may, in the discretion of the Secretary, be deemed mere evidence of or conclusive evidence of such value. When paid in value, such royalties shall be due and payable monthly on the last day of the calendar month following the calendar month in which produced; when royalty on oil produced is paid in kind, such royalty oil shall be delivered in tanks provided by the lessee on the premises where produced without cost to the lessor unless otherwise agreed to by the parties thereto, at such time as may be required by the lessor: *Provided*, That the lessee shall not be required to hold such royalty oil in storage longer than 30 days after the end of the calendar month in which said oil is produced: *And provided further*, That the lessee shall be in no manner responsible or held liable for loss or destruction of such oil in storage caused by acts of God. All rental and royalty payments, except as provided in section 4 (c) shall be made by check or draft drawn on a solvent bank, open for the transaction of business on the day the check or draft is issued, to the payee designated by the Area Director. All such rental and royalty payments shall be mailed to the oil and gas supervisor for transmittal to the payee designated by the Area Director. It is understood that in determining the value for royalty purposes of products, such as natural gasoline, that are derived from treatment of gas, a reasonable allowance for the cost of manufacture shall be made, such allowance to be two-thirds of the value of the marketable product unless otherwise determined by the Secretary of the Interior on application of the lessee or on his own initiative, and that royalty will be computed on the value of gas or casinghead gas, or on the products thereof (such as residue gas, natural gasoline, propane, butane, etc.), whichever is the greater.

(d) *Monthly statements.*—To furnish to the oil and gas supervisor monthly statements in detail in such form as may be prescribed by the Secretary of the Interior, showing the amount, quality, and value of all oil, gas, natural gasoline, or other hydrocarbon substances produced and saved during the preceding calendar month as a basis upon which to compute, for the treasurer of said tribe or the superintendent, the royalty due the lessor. The leased premises and all wells, producing operations, improvements, machinery, and fixtures thereon and connected therewith and all books and accounts of the lessee shall be open at all times for the inspection of any duly authorized representative of the Secretary of the Interior.

(e) *Log of well.*—To keep a log in the form prescribed by the Secretary of the Interior of all the wells drilled by the lessee showing the strata and character of the formations passed through by the drill, which log or a copy thereof shall be furnished to the oil and gas supervisor.

(f) *Diligence, prevention of waste.*—To exercise reasonable diligence in drilling and operating wells for oil and gas on the lands covered hereby, while such products can be secured in paying quantities; to carry on all operations hereunder in a good and workmanlike manner in accordance with approved methods and practice, having due regard for the prevention of waste of oil or gas developed on the land, or the entrance of water through wells drilled by the lessee to the productive sands or oil or gas-bearing strata to the destruction or injury of the oil or gas deposits, the preservation and conservation of the property for future productive operations, and to the health and safety of workmen and employees; to plug securely all wells before abandoning the same and to effectually shut off all water from the oil or gas-bearing strata; not to drill any well within 200 feet of any house or barn now on the premises without the lessor's written consent; to carry out at the expense of the lessee all reasonable orders and requirements of the oil and gas supervisor relative to prevention of waste, and preservation of the property and the health and safety of workmen; to bury all pipe lines crossing tillable lands below plow depth unless other arrangements therefor are made with the superintendent; to pay the lessor all damages to crops, buildings, and other improvements of the lessor occasioned by the lessee's operations: *Provided*, That the lessee shall not be held responsible for delays or casualties occasioned by causes beyond the lessee's control.

(g) *Regulations.*—To abide by and conform to any and all regulations of the Secretary of the Interior now or hereafter in force relative to such leases, including 30 CFR 221: *Provided*, That no regulation hereafter approved shall effect a change in rate of royalty or annual rental herein specified without the written consent of the parties to this lease.

(h) *Assignment of lease.*—Not to assign this lease or any interest therein by an operating agreement or otherwise nor to sublet any portion of the leased premises before restrictions are removed, except with the approval of the Secretary of the Interior. If this lease is divided by the assignment of an entire interest in any part of it, each part shall be considered a separate lease under all the terms and conditions of the original lease.

4. The lessor expressly reserves:

(a) *Disposition of surface.*—The right to lease, sell, or otherwise dispose of the surface of the lands embraced within this lease under existing law or laws hereafter enacted, such disposition to be subject at all times to the right of the lessee herein to the use of so much of said surface as is necessary in the extraction and removal of the oil and gas from the land herein described.

(b) *Use of gas.*—The right to use sufficient gas free of charge for any school or other buildings belonging to the tribe on said lands by making connection at its own expense with the well or wells thereon, the use of such gas to be at the lessor's risk at all times.

(c) *Royalty in kind.*—The right to elect on 30 days' written notice to take lessor's royalty in kind.

5. *Surrender and termination.*—The lessee shall have the right at any time during the term hereof to surrender and terminate this lease or any part thereof upon the payment of the sum of one dollar and all rentals, royalties, and other obligations due and payable to the lessor; and in the event restrictions have not been removed, upon a showing satisfactory to the Secretary of the Interior that full provision has been made for conservation and protection of the property and the proper abandonment of all wells drilled on the portion of the lease surrendered, the lease to continue in full force and effect as to the lands not so surrendered. If this lease has been recorded lessee shall file a recorded release with his application to the superintendent for termination of this lease.

6. *Cancelation and forfeiture.*—When, in the opinion of the Secretary of the Interior and the Tribal Council, there has been a violation of any of the terms and conditions of this lease, the Secretary of the Interior shall have the right at any time after 30 days' notice to the lessee, specifying the terms and conditions violated, and after a hearing, if the lessee shall so request within 30 days of receipt of notice, to declare this lease null and void, and the lessor shall then be entitled and authorized to take immediate possession of the land: *Provided*, That after restrictions are removed the lessor shall have and be entitled to any available remedy in law or equity for breach of this contract by the lessee.

7. *Removal of buildings, improvements, and equipment.*—Lessee shall be the owner of and shall have the right to remove from the leased premises, within 90 days after termination of this lease, any and all buildings, structures, casing, material, and/or equipment placed thereon for the purpose of development and operation hereunder, save and except casing in wells and other material, equipment, and structures necessary for the continued operation of wells producing or capable of being produced in paying quantities as determined by the Secretary of the Interior, on said leased land at the time of surrender of this lease or termination thereof; and except as otherwise provided herein, all casing in wells, material, structures, and equipment shall be and become the property of the lessor.

8. *Drilling and producing restrictions.*—It is covenanted and agreed that the Secretary of the Interior may impose restrictions as to time or times for the drilling of wells and as to the production from any well or wells drilled when in his judgment such action may be necessary or proper for the protection of the natural resources of the leased land and the interests of the Indian lessor, and in the exercise of his judgment the Secretary may take into consideration, among other things, Federal laws, State laws, or regulations by competent Federal or State authorities or lawful agreements among operators regulating either drilling or production, or both.

9. *Unit operation.*—The parties hereto agree to subscribe to and abide by any agreement for the cooperative or unit development of the field or area, affecting the leased lands, or any pool thereof, if and when collectively adopted by a majority operating interest therein and approved by the Secretary of the Interior, during the period of supervision.

10. *Conservation.*—The lessee in consideration of the rights herein granted agrees to abide by the provisions of any act of Congress, or any order or regulation prescribed pursuant thereto, relating to the conservation, production, or marketing of oil, gas, or other hydrocarbon substances.

11. *Heirs and successors in interest.*—It is further covenanted and agreed that each obligation hereunder shall extend to and be binding upon, and every benefit hereof shall inure to, the heirs, executors, administrators, successors of, or assigns of the respective parties hereto.

12. No lease, assignment thereof, or interest therein, will be approved to any employee or employees of the United States Government whether connected with the Indian Service or otherwise and no employee of the Interior Department shall be permitted to acquire any interest in any mineral lease covering restricted Indian lands by ownership of stock in corporations having such leases or in any other manner.

8812

5-157 - Continuation Sheet                                Contract No. 14-20-0603-

8) GAS - Notwithstanding any other provisions of this lease to the contrary, the lessor hereby expressly reserves the right to purchase any gas produced on the leasehold at a price not greater than the price being paid in the area for gases of similar characterisitics by purchasers in that area. Such right of purchase shall be exercised within sixty days of notice of the availability of gas to the lessor, otherwise, the lessee shall be relieved of any obligation whatsoever under this paragraph.

9) IMPROVEMENTS - Improvements, notwithstanding the provisions of Paragraph 3 (f) of Form 5-157, shall be defined for the purposes of this lease, as any house, barn, or other building or structure, any improved land being used for farm or agricultural purposes, and any other improvement to the land such as a lake, monument, etc. Where an improvement is present within 200 feet of a proposed oil and gas operation, the lessee, prior to entering the premises to begin any operation whatsoever, shall secure from the Oil and Gas Supervisor of the Navajo Tribe a cost free permit to conduct such operations. The lessee shall present a plan specifying the exact location and description of the operation that is to take place, and shall agree with the Oil and Gas Supervisor of the Navajo Tribe as to anticipated damages to any improvements. In the case of any dispute as to the amount of damages, the matter may be submitted to arbitration in the field between the Company, the Oil and Gas Department of the Navajo Tribe, and an independent arbitrator to be selected by the two.

4

IN WITNESS WHEREOF, the said parties have hereunto subscribed their names and affixed their seals on the day and year first above mentioned:

CHAIRMAN, NAVAJO TRIBAL COUNCIL

Two witnesses to execution by lessor:

_LaVerne Bartost_ _____ [SEAL]

P. O. WINDOW ROCK, ARIZONA

_Louise Janise_ _____ [SEAL]

P. O. WINDOW ROCK, ARIZONA

Two witnesses to execution by lessee:

_L. J. Linckler_ _____ [SEAL]

P. O. _Durango, Colorado_

_____ PUEBLO OIL & REFINING COMPANY

P. O. _Durango, Colorado_  Attest: _R A Lowe_
Attorney in fact

ACKNOWLEDGMENT OF LESSOR

STATE OF _Arizona_ } ss:
COUNTY OF _Apache_

Before me, a notary public, on this _21_ day of _October_ 19_64_, personally appeared RAYMOND NAKAI, Chairman, Navajo Tribal Council

to me known to be the identical person who executed the within and foregoing lease, and acknowledged to me that _he_ executed the same as _his_ free and voluntary act and deed for the uses and purposes therein set forth.

My commission expires _My Commission Expires June 29, 1965_

GALLUP, NEW MEXICO

DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS

OCT 26 1964 , 19......

APPROVED:

S/ JOHN C. DIBBERN
ASSISTANT Area Director  Area Director.
Per 21FR1905

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS

## EVIDENCE OF AUTHORITY OF OFFICERS TO EXECUTE PAPERS

(To be sworn to by secretary or president of a corporation and sealed with its seal)

I solemnly swear that _____ S. G. Taylor _____ and Carter J. Dudley _____ were on the 29th day of December, 19 72, the duly elected, qualified, and acting vice-president, and secretary, respectively, of _____ KERR-McGEE CORPORATION _____ a corporation organized under the laws of the State of Delaware on which day they executed _____ amendments of mining leases _____ for and in behalf of said corporation, covering certain Trust or Restricted Indian lands on the Navajo Tribal Indian Reservation, in the State of Arizona; that they were fully empowered to execute said instrument and all papers in connection therewith, and that their action in executing the same binds the said corporation to full performance of all obligations thereunder.

[CORPORATE SEAL]

_____ Carter J. Dudley _____
ASSISTANT SECRETARY

This 29th day of December, 19 72

Subscribed and sworn to before me this 29th day of December, 19__.

(Signed) _____

[SEAL]

(Title)