# WEST TEXAS NATIONAL BANK
6 Desta Drive, Suite 2400
Midland, Texas 79705

May 12, 2006

**BC&D Oil and Gas Corporation**
3001 Knox Street, Suite 403
Dallas, Texas 75205

**Apollo Resources International, Inc.**
3001 Knox Street, Suite 403
Dallas, Texas 75205

Re:  *Loan Agreement dated January 31, 2006 (hereinafter referred to as "Loan Agreement") between BC&D Oil and Gas Corporation ("Borrower" or "BC&D") and Apollo Resources International, Inc. ( hereinafter referred to as "Guarantor" or "Apollo") and West Texas National Bank ( hereinafter referred to as "Lender" or "WTNB")*

Gentlemen:

Pursuant to the request of BC&D, effective May 11, 2006, Lender agrees to increase the Borrowing Base from $500,000.00 to $800,000.00 under that certain Advance Type/Term Note dated January 31, 2006 executed by BC&D and payable to WTNB having a face amount of $3,500,000.00 ("Note") pursuant to Section 2. B. of the Loan Agreement, subject to (1) West Texas Energy Capital, Inc. ("WTEC") pledging an additional $300,000.00 Certificate of Deposit as additional collateral for the Note, (2) BC&D executing an Assignment of Overriding Royalty Interest to WTEC in form and substance as set out in Exhibit "B" attached to the First Amendment to Enhancement Agreement, (3) BC&D paying to WTEC an additional non-refundable Facility Fee of $6,000.00 at the time of execution of the First Amendment to Enhancement Agreement, (4) BC&D, Apollo and WTEC executing a First Amendment to Enhancement Agreement and (5) BC&D, Apollo and WTNB executing a First Amendment to Loan Agreement. This letter is for purposes and only for the purposes of increasing the Borrowing Base and shall not be deemed (a) to be an amendment to any other terms and conditions of the Loan Agreement and/or Enhancement Agreement or (b) to prejudice any right or rights which Lender and/or WTEC now have or may have in the future or in connection with the Loan Agreement and/or Enhancement Agreement .

BC&D Oil and Gas Corporation
Apollo Resources International, Inc.
May 12, 2006
Page 2


     If the above properly sets forth BC&D and Apollo's understanding and agreement to the above increase in the Borrowing Base, please execute this letter in the spaces provided below and return same to Lender.


                        Very truly yours,

                        **WEST TEXAS NATIONAL BANK**


                      By:   _____

                             **Chris L. Whigham, Senior Vice-President**


ACCEPTED AND AGREED TO
this   12th   day of May, 2006

**BORROWER:**

**BC&D OIL AND GAS CORPORATION,**
 a New Mexico Corporation

By:    _____
      **Mark Ariail, Chief Financial Officer**


**APOLLO RESOURCES INTERNATIONAL, INC.,**
 a Utah corporation

By:    _____
      **Mark Ariail, Chief Financial Officer**

JRLjr/ap
c:\wtnb\bc&d\06may\bc&d.ltr

## FIRST AMENDMENT TO ENHANCEMENT AGREEMENT

THIS FIRST AMENDMENT TO ENHANCEMENT AGREEMENT (the "First Amendment" or "First Amendment to Enhancement Agreement"), dated as of May 12, 2006, is by and between BC&D OIL AND GAS CORPORATION, a New Mexico corporation ("BC&D") and WEST TEXAS ENERGY CAPITAL, INC., a Texas corporation ("WTEC").

## R E C I T A L S:

WHEREAS, BC&D and WTEC entered into an Enhancement Agreement dated January 31, 2006 ("Original Enhancement Agreement"), providing for WTEC's pledge of a $500,000.00 Certificate of Deposit to West Texas National Bank ("Lender") as additional collateral for a loan transaction by and between BC&D and Lender ("Loan") evidenced by a Loan Agreement dated January 31, 2006 by and between BC&D, Apollo Resources International, Inc. ("Apollo") and Lender ("Loan Agreement"); and

WHEREAS, BC&D has requested that WTEC increase the Borrowing Base pursuant to Section 2.B. of the Loan Agreement; and

WHEREAS, Lender has agreed to increase the Borrowing Base from $500,000.00 to $800,000.00 effective May 12, 2006 provided WTEC pledges an additional $300,000.00 Certificate of Deposit to Lender as additional collateral for the above Loan; and

WHEREAS, WTEC is agreeable to pledging said additional $300,000.00 Certificate of Deposit provided BC&D (a) pays an additional non-refundable facility fee of $6,000.00 at the time of closing of the Borrowing Base increase and (b) assigns to WTEC an additional one percent (1.0%) Overriding Royalty Interest in the oil and gas properties as described in the Original Enhancement Agreement all as originally agreed to in the Original Enhancement Agreement; and

WHEREAS, the parties desire to amend the Original Enhancement Agreement by this instrument so as to (a) ratify and confirm the Original Enhancement Agreement and (b) to otherwise conform the terms of the Original Enhancement Agreement to the condition set out above.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, BC&D and West Texas Energy Capital, Inc. agree as follows:

1.     <u>Same Terms</u>.  The terms used, but not defined, herein shall have the same meanings as provided in the Original Enhancement Agreement, unless the context hereof otherwise requires or provides.  All references to the "Enhancement Agreement" in the Loan Agreement shall mean the Original Enhancement Agreement as amended by this First Amendment to Enhancement Agreement as the same may hereafter be amended or supplemented from time to time.

2.     <u>Amendment to Original Enhancement Agreement</u>.  As of the date of this First Amendment, Section 1 set out on Page 1 of the Original Enhancement Agreement shall be amended in its entirety to read as follows:

1.     **Consideration**. In consideration of WTEC pledging the Original Certificate of Deposit effective January 31, 2006 and an additional Certificate of Deposit of $300,000.00 effective May 12, 2006 as collateral for the Loan, BC&D agrees as follows:

(a)     To pay to WTEC a non-refundable facility fee of $10,000.00 at the time of the original closing of the Loan.

(b)     To pay to WTEC a non-refundable engineering fee of $12,000.00 at the time of the original closing of the Loan.

(c)     To pay to WTEC an additional non-refundable facility fee of $6,000.00 at the time of the increase of the Borrowing Base from $500,000.00 to $800,000.00 effective May 12, 2006.

(d)     To pay to Oil & Gas Advisors, Inc. any fees earned by it under that certain Agreement dated July 21, 2005 by and between Apollo and Oil & Gas Advisors, Inc. at the time of the increase of the Borrowing Base from $500,000.00 to $800,000.00.

(e)     To pay to Bullock, Scott, Neisig, Morgan, Leeton & Strauss, P.C. all reasonable legal fees incurred in connection with the preparation of Loan Documents associated with the increase in the Borrowing Base at the time of the increase in the Borrowing Base from $500,000.00 to $800,000.00.

(f)     To pay to WTEC an additional non-refundable facility fee of two percent (2.0%) of any future increases in the Borrowing Base arising after May 12, 2006.

(g)     To assign to WTEC the following Overriding Royalty Interest(s), limited in depth from the surface to the base of the Gallup Formation,

less and except from the top to the base of the Dakota Formation, in the Oil and Gas Properties based on the amount of the total advances made by Lender to BC&D:

| Timing of Advance | Total Amount of Advance | Overriding Royalty Interest Earned by WTEC |
|---|---|---|
| Initial Series of Advances | Advances from $1.00 to $500,000.00 | 4.00% Overriding Royalty Interest |
| Second Series of Advances | Additional advances of $1.00 and more above the initial advance | Additional 1.00% for a total 5.00 % Overriding Royalty Interest |

(i)     The Assignment of the initial 4.00% Overriding Royalty Interest will be executed and delivered by BC&D to WTEC substantially in the form set out in Exhibit "A" attached to the Original Enhancement Agreement at the time of closing of the original Loan and any Assignment of additional Overriding Royalty Interest earned by WTEC will be executed and delivered by BC&D to WTEC prior to any additional advances under the Second Series of Advances as set out above.  The Assignment of Overriding Royalty Interest will be final and non-refundable to BC&D notwithstanding the repayment of any obligations owed by BC&D to Lender and/or the results of any enhancement projects undertaken by BC&D on the Oil and Gas Properties.   Furthermore, the Assignment of Overriding Royalty Interest will be delivered free and clear of all Liens except Permitted Liens.

(ii)     The words "Oil and Gas Properties" mean the oil and gas leases, lands and equipment located thereon and proceeds derived therefrom described in Exhibit "A" to the Deed of Trust as said Exhibit "A" may hereafter be amended, modified and/or supplemented to cover additional Oil and Gas Properties.

(iii)     The words "Permitted Liens" mean as applied to BC&D [a] any Lien in favor of Lender to secure BC&D's Obligations to Lender hereunder; [b] easements, right-of-way, restrictions and other similar encumbrances on the use of the Oil and Gas Properties which do not interfere in any material respect with the ordinary conduct of the business of BC&D; [c] any zoning or similar law or right reserved to or vested in any tribunal to control or regulate the use of any Oil and Gas Properties and [d] the revenue interest granted to Neptune

Leasing, Inc. pursuant to that certain Equipment Purchase Agreement dated November 1, 2005 between Guarantor and Neptune Leasing, Inc.

(d) To pay to WTEC a portion of the interest set out in the Note said portion to be determined by and between Lender and WTEC, in their sole discretion, however in no event shall BC&D be required to pay an interest rate in excess of the Stated Rate and Past Due Rate as defined in the Note. For the convenience of BC&D, WTEC designates Lender as its administrative agent for purposes of collecting WTEC's interest under the Note.

(e) Any fees, assignments and/or interest paid and/or earned by WTEC is in addition to any fees and interest paid by BC&D to Lender.

3.  <u>Representations and Warranties</u>.  In order to induce WTEC to enter into this First Amendment to Enhancement Agreement, BC&D hereby represents and warrants to WTEC effective the date of BC&D's execution of this Agreement that the representations and warranties contained in the Original Enhancement Agreement are hereby remade by BC&D and said representations and warranties (together with the remedies contained in the Original Enhancement Agreement) are in full force and effect as of the date hereof and shall apply to the same extent and with the same force and effect as of the date of the Original Enhancement Agreement except to the extent that such representations and warranties relate solely to an earlier date.

4.  <u>Limitation on Amendments</u>.  The amendments set forth herein are limited precisely as written and shall not be deemed (a) to be a consent under or a waiver or amendment of any other term or condition of the Original Enhancement Agreement or the Loan Agreement or (b) to prejudice any right or rights which WTEC now has or may have in the future under or in connection with the Original Enhancement Agreement or any of the Loan Documents.

5.  <u>Enhancement Agreement</u>.  The term "Enhancement Agreement" as contained in the Original Enhancement Agreement as amended by this First Amendment to Enhancement Agreement include not only the Original Enhancement Agreement but also this First Amendment to Enhancement Agreement and all other documents, certificates or instruments executed or delivered in connection with the Original Enhancement Agreement and any renewals and extensions of the Enhancement Agreement.

6.    <u>Conditions of Increase in Borrowing Base</u>.  The effectiveness of this First Amendment to Enhancement Agreement, and the obligation to increase the Borrowing Base shall be subject to satisfaction of the following conditions precedent:

(a)    <u>BC&D's Documents</u>.  BC&D shall have executed and delivered this First Amendment to Enhancement Agreement, the First Amendment to Loan Agreement and the Assignment of Overriding Royalty Interest in the form attached hereto as Exhibit "B," and the other required Loan Documents, all in form and substance satisfactory to the WTEC and Lender.

(b)    <u>No Event of Default</u>.  To the best knowledge and information of BC&D's current management, no Event of Default shall have occurred and be continuing nor shall any event have occurred or failed to occur which, with the passage of time or service of notice, or both, would constitute an Event of Default, which has not been waived or otherwise excused by WTEC;

(c)    <u>Other Documents</u>.    WTEC shall have received such other instruments and documents incidental and appropriate to the transaction provided for herein as WTEC or its counsel may reasonably request, and all such documents shall be in form and substance reasonably satisfactory to WTEC;

(d)    <u>Absence of Certain Proceedings</u>.  No suit, action or other proceeding by a third party or a governmental authority shall be pending or threatened which relates to this Agreement or the transactions contemplated hereby except as set out in the Original Enhancement Agreement and/or the Loan Agreement;

(e)    <u>Legal Matters Satisfactory</u>.   All legal matters incident to the consummation of the transactions contemplated hereby shall be reasonably satisfactory to counsel for WTEC retained at the expense of BC&D;

7.    <u>Multiple Counterparts</u>. This First Amendment to Enhancement Agreement may be executed in a number of identical separate counterparts (including by facsimile transmission), each of which for all purposes is to be deemed an original, but all of which shall constitute, collectively, one agreement. No party to this First Amendment to Enhancement Agreement shall be bound hereby until a counterpart of this First Amendment to Enhancement Agreement has been executed by all parties hereto.

8.    <u>Governing Law</u>.    THIS AGREEMENT IS BEING EXECUTED AND DELIVERED, AND IS INTENDED TO BE PERFORMED, IN MIDLAND, MIDLAND COUNTY, TEXAS, AND THE SUBSTANTIVE LAWS OF TEXAS SHALL GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION OF THIS AGREEMENT AND ALL OTHER DOCUMENTS AND INSTRUMENTS REFERRED TO HEREIN, UNLESS OTHERWISE SPECIFIED THEREIN.

IN WITNESS WHEREOF, the parties hereto have executed this First Amendment to Enhancement Agreement effective the 12th day of May, 2006, although EXECUTED on the dates set out below.

**BORROWER:**

BC&D OIL AND GAS CORPORATION, a New Mexico corporation

EXECUTED on this /2th    By: _____
day of May, 2006            Mark Ariail, Chief Financial Officer

**BANK:**

WEST TEXAS ENERGY CAPITAL, INC.

EXECUTED on this /2th    By: _____
day of May, 2006            Chris L. Whigham, Senior Vice-President

c:\wtnb\bc&d\06may\enhancementagt.1amd

**EXHIBIT "B"**

Attached to and made a part of that certain First Amendment to Enhancement Agreement dated May 11, 2006, by and between WEST TEXAS ENERGY CAPITAL, INC. and BC&D OIL AND GAS CORPORATION.

**ASSIGNMENT OF OVERRIDING ROYALTY INTEREST**

| | |
|---|---|
| **STATE OF NEW MEXICO** | § |
| | § |
| **COUNTY OF MCKINLEY** | § |

WHEREAS, those certain Oil and Gas Leases were made and entered into by and between the Lessors and Lessees covering the lands ("Leases" and/or "Lands") described in Exhibit "A" attached hereto and made a part hereof; and

WHEREAS, **BC&D OIL AND GAS CORPORATION** is the record title owner of an undivided Leasehold and/or Operating Interest in and to the Leases and Lands described in Exhibit "A."

NOW, THEREFORE, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, **BC&D OIL AND GAS CORPORATION** ("Assignor") does hereby bargain, sell, transfer, assign and convey a **One percent (1.0%)** overriding royalty interest in all of the oil and gas and associated hydrocarbons produced, saved and sold under and from the Leases and Lands described in Exhibit "A" to **WEST TEXAS ENERGY CAPITAL, INC.** ("Assignee"), whose address is 6 Desta Drive, Suite 2400-C, Midland, Texas 79705-5525.  Said interest as so conveyed shall be free and clear of all costs of exploration, development, operation, marketing or other expenses except that it shall bear its own ad valorem, pipeline and gross production taxes and all other lawfully assessed taxes and its proportionate part of the trucking and pipeline charges, if any.

Page 1 of 2

The overriding royalty interest hereby conveyed is subject to all of the rights of the owner or owners of said leases to pool the lands covered thereby with other lands for the production of oil and/or gas and it shall not be necessary for the owner of such overriding royalty interest to join in any pooling or unitization agreements.

In the event the Leases described in Exhibit "A" cover less than the full fee title to the oil and gas that may be produced from the Lands described in Exhibit "A" or in the event Assignor owns less than 100% of the Leasehold Interest, than the Overriding Royalty Interests conveyed to the Assignee shall be proportionately reduced.

TO HAVE AND TO HOLD all and singular, the Leases and Lands described in Exhibit "A" unto the Assignee, its successors in title and assigns, forever.

EFFECTIVE the 11th day of May, 2006, although EXECUTED on the date of the acknowledgment annexed hereto.

**ASSIGNOR:**

**BC&D OIL AND GAS CORPORATION, a New Mexico corporation**

By: <u>DO NOT SIGN - EXHIBIT ONLY</u>
**Mark Ariail, Chief Financial Officer**

STATE OF TEXAS            §
                          §
COUNTY OF DALLAS          §

This instrument was acknowledged before me on the _____ day of May, 2006, by MARK ARIAIL, as Chief Financial Officer of BC&D OIL AND GAS CORPORATION, a New Mexico corporation, on behalf of said corporation.

<u>DO NOT SIGN - EXHIBIT ONLY</u>
NOTARY PUBLIC, STATE OF TEXAS

c:\wtnb\bc&d\06may\assign-orrint          Page 2 of 2

## FIRST AMENDMENT TO LOAN AGREEMENT

THIS FIRST AMENDMENT TO LOAN AGREEMENT (the "First Amendment" or "First Amendment to Loan Agreement"), dated as of May 12, 2006, is by and between BC&D OIL AND GAS CORPORATION, a New Mexico corporation, ("BC&D") and APOLLO RESOURCES INTERNATIONAL, INC., a Utah corporation, ("APOLLO") and WEST TEXAS NATIONAL BANK ("Lender").

R E C I T A L S:

WHEREAS, BC&D, as Borrower, and APOLLO, as Guarantor, and Lender entered into a Loan Agreement dated January 31, 2006 ("Original Loan Agreement"), providing for a potential loan by Lender to BC&D up to but not exceeding $3,500,000.00 ("Loan"), which Loan is evidenced by an Advance Type/Term Promissory Note substantially in the form set out in Exhibit "B" attached to the Original Loan Agreement having a face amount of $3,500,000.00 ("Note") subject to the Borrowing Base limitation set out in Section 2. B. of the Loan Agreement; and

WHEREAS, the Original Loan Agreement and Note are secured by (a) Security Documents dated January 31, 2006 consisting of (i) an Oil and Gas Deed of Trust, (ii) an Equipment Security Agreement and (iii) a Stock Pledge Agreement between BC&D and Lender and (iv) a CD Pledge Agreement from West Texas Energy Capital, Inc. ("WTEC") for the benefit of Lender covering a $500,000.00 Certificate of Deposit and (b) a Guaranty from APOLLO for the benefit of Lender, all as defined and described in Section 1 of the Original Loan Agreement; and

WHEREAS, BC&D has requested that Lender increase the Borrowing Base by $300,000.00 pursuant to Section 2.B. of the Loan Agreement; and

WHEREAS, Lender has agreed to increase the Borrowing Base from $500,000.00 to $800,000.00 effective May 12, 2006 provided WTEC pledges an additional $300,000.00 Certificate of Deposit to Lender as additional collateral for the above Loan; and

WHEREAS, WTEC is agreeable to pledging said additional $300,000.00 Certificate of Deposit in return for (a) BC&D amending that certain Enhancement Agreement dated January 31, 2006 by and between BC&D and WTEC ("Original Enhancement Agreement") pursuant to such terms and conditions as set out in the First Amendment to Enhancement Agreement and (b) BC&D and APOLLO amending the Original Loan Agreement as set out below; and

WHEREAS, the parties desire to amend the Original Loan Agreement by this instrument so as to (a) ratify and confirm the Original Loan Agreement and (b) to otherwise conform the terms of the Original Loan Agreement to the conditions set out above.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, BC&D Oil and Gas Corporation and APOLLO Resources International, Inc. and West Texas National Bank agree as follows:

1.  <u>Same Terms</u>.  The terms used, but not defined, herein shall have the same meanings as provided in the Original Loan Agreement, unless the context hereof otherwise requires or provides.  All references to the "Loan Agreement" in the Loan Agreement shall mean the Original Loan Agreement as amended by this First Amendment to Loan Agreement as the same may hereafter be amended or supplemented from time to time.

2.  <u>Amendments to Original Loan Agreement</u>.  As of the date of this First Amendment, the Loan Agreement shall be amended as follows:

    (a)  <u>Amendment to Section 2.B. of the Loan Agreement</u>.  Section 2.B. on Page 4 of the Loan Agreement shall be amended in its entirety to read as follows:

    B.  **Borrowing Base.**  The Borrowing Base has been (i) initially set at the amount of $500,000.00 to May 12, 2006 and (ii) thereafter subsequently set at the amount of $800,000.00.  Thereafter, the Borrowing Base shall be redetermined by Lender on a monthly basis for three months and quarterly thereafter with the first monthly redetermination on June 1, 2006 and the first quarterly redetermination on November 1, 2006 ("Redetermination Dates").  The Lender shall have the right to redetermine the Borrowing Base in the event that it appears to Lender, in its sole discretion, that there has been a material change in the value of the Collateral based on the Oil and Gas Reserve Evaluation described in Section 6.A. (vii), and an independent appraisal of the value of the equipment pledged under the Equipment Security Agreement and in the event of Borrower's failure to deliver a Title Opinion and/or assurance of title as required in Section 6.K. below.  In the event that the aggregate unpaid principal balance of the Note shall, at any time, be in excess of the Borrowing Base, Borrower shall, within 30 days after the date on which Lender shall have notified the Borrower of the amount of the Borrowing Base deficiency, (a) by instruments satisfactory in form and substance to Lender, provide Lender with additional Collateral

with value in amounts satisfactory to Lender in order to increase the Borrowing Base by an amount at least equal to such excess, (b) prepay the principal of the Note in an amount at least equal to such excess or (c) notify Lender that Borrower will reduce the outstanding principal amount of the Loan in an amount equal to or less than the Borrowing Base by the payment of all amounts outstanding under the loan in excess of the Borrowing Base in equal monthly installments over a five-month period. Although Borrower shall be obligated to provide at its own expense any Reserve Evaluation required under Section 6.A. below and any equipment appraisals, all Borrowing Base redeterminations shall be made by Lender in the exercise of its sole discretion in accordance with its customary practices and standards for loans in similar amounts to Borrower similarly situated at the time and under the circumstances then prevailing.

(b)    Amendment to Section 6.H. of the Loan Agreement. Section 6.H. on Page 9 of the Loan Agreement shall be amended in its entirety to read as follows:

H.    **Use of Proceeds.** Use the proceeds of the (i) initial $500,000.00 advance by Lender to BC&D for the payment of [a] remedial, repair, workover and/or developmental costs on the Oil and Gas Properties and [b] fees and expenses associated with the initial $500,000.00 advance under the Loan and (ii) May 12, 2006 commitment to advance $300,000.00 for the payment of fifty percent (50%) of [a] fees and expenses associated with the $300,000.00 commitment ("May Loan Fees") and [b] the remedial, repair, workover and/or developmental costs on the Oil and Gas Properties provided APOLLO pays and/or Loans to BC&D for the payment of the remaining fifty percent (50%) May Loan Fees and remedial, repair, workover and/or developmental costs on the Oil and Gas Properties up to $300,000.00. In the event APOLLO fails to pay and/or lend to BC&D for the payment of the remaining fifty percent (50%) portion of the May Loan Fees and remedial, repair, workover and/or developmental costs on the Oil and Gas Properties up to but not exceeding $300,000.00, Lender shall no longer be obligated to advance any further amounts arising under the May 12, 2006 $300,000.00 commitment.

(c)    Amendment to Section 7.I. of the Loan Agreement. Section 7.I. on Page 11 of the Loan Agreement shall be amended in its entirety to read as follows:

I.   **Other Indebtedness (Borrower).**  Borrower will not create, incur or have outstanding any indebtedness or obligation, secured or unsecured, recourse, or non-recourse, other than (i) the Note and the indebtedness described herein; (ii) accounts payable incurred in the ordinary course of business with maturities of 45 days or less that are not delinquent or past due under current industry practices or other accounts payable that are being contested in good faith; (iii) ad valorem taxes of every kind that are not delinquent or that are being contested in good faith and by proper proceedings except as in existence as of the date hereof and identified to Lender; (iv) letters of credit incurred in the ordinary course of Borrower's business; (v) as disclosed in note 8 to the financial statements of Guarantor, contained in Form 10-QSB for the quarter ended June 30, 2005, notes payable in the amount of approximately $700,000; (vi) indebtedness arising by APOLLO's obligation to advance to Borrower up to $300,000.00 for purposes of paying fifty percent (50%) of the remedial, repair, workover and/or developmental costs on the Oil and Gas Properties as required under Section 6.H. above; or (vii) other unsecured or secured indebtedness incurred by Borrower not to exceed $100,000.00 in the aggregate outstanding at any time.

3.   <u>Representations and Warranties</u>.  In order to induce Lender to enter into this First Amendment to Loan Agreement, BC&D hereby represents and warrants to Lender effective the date of BC&D's execution of this Agreement that the representations and warranties contained in the Original Loan Agreement are hereby remade by BC&D and said representations and warranties (together with the remedies contained in the Original Loan Agreement) are in full force and effect as of the date hereof and shall apply to the same extent and with the same force and effect as of the date of the Original Loan Agreement except to the extent that such representations and warranties relate solely to an earlier date.

4.   <u>Limitation on Amendments</u>.  The amendments set forth herein are limited precisely as written and shall not be deemed (a) to be a consent under or a waiver or amendment of any other term or condition of the Original Loan Agreement or the Enhancement Agreement or (b) to prejudice any right or rights which Lender now has or may have in the future under or in connection with the Original Loan Agreement or any of the Loan Documents.

5.    <u>Loan Agreement</u>.  The term "Loan Agreement" as contained in the Original Loan Agreement as amended by this First Amendment to Loan Agreement include not only the Original Loan Agreement but also this First Amendment to Loan Agreement and all other documents, certificates or instruments executed or delivered in connection with the Original Loan Agreement and any renewals and extensions of the Loan Agreement.

6.    <u>Conditions to Increase in Borrowing Base</u>.  The effectiveness of this First Amendment to Loan Agreement, and the obligation to increase the Borrowing Base shall be subject to satisfaction of the following conditions precedent:

(a)    <u>BC&D's Documents</u>.  BC&D and APOLLO shall have executed and delivered this First Amendment to Loan Agreement and BC&D shall have executed the Enhancement Agreement along with accompanying Assignment of Overriding Royalty Interest in the form attached as Exhibit "B" to the Enhancement Agreement and the other required Loan Documents, all in form and substance satisfactory to the Lender and WTEC.

(b)    <u>No Event of Default</u>.  To the best knowledge and information of BC&D and APOLLO's current management, no Event of Default shall have occurred and be continuing nor shall any event have occurred or failed to occur which, with the passage of time or service of notice, or both, would constitute an Event of Default, which has not been waived or otherwise excused by Lender.

(c)    <u>Other Documents</u>.  Lender shall have received such other instruments and documents incidental and appropriate to the transaction provided for herein as Lender or its counsel may reasonably request, and all such documents shall be in form and substance reasonably satisfactory to Lender.

(d)    <u>Absence of Certain Proceedings</u>.  No suit, action or other proceeding by a third party or a governmental authority shall be pending or threatened which relates to this Agreement or the transactions contemplated hereby except as set out in the Original Loan Agreement.

(e)    <u>Legal Matters Satisfactory</u>.  All legal matters incident to the consummation of the transactions contemplated hereby shall

be reasonably satisfactory to counsel for Lender retained at the expense of BC&D.

7.    <u>Multiple Counterparts</u>. This First Amendment to Loan Agreement may be executed in a number of identical separate counterparts (including by facsimile transmission), each of which for all purposes is to be deemed an original, but all of which shall constitute, collectively, one agreement. No party to this First Amendment to Loan Agreement shall be bound hereby until a counterpart of this First Amendment to Loan Agreement has been executed by all parties hereto.

8.    <u>Governing Law</u>. THIS AGREEMENT IS BEING EXECUTED AND DELIVERED, AND IS INTENDED TO BE PERFORMED, IN MIDLAND, MIDLAND COUNTY, TEXAS, AND THE SUBSTANTIVE LAWS OF TEXAS SHALL GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION OF THIS AGREEMENT AND ALL OTHER DOCUMENTS AND INSTRUMENTS REFERRED TO HEREIN, UNLESS OTHERWISE SPECIFIED THEREIN.

IN WITNESS WHEREOF, the parties hereto have executed this First Amendment to Loan Agreement effective the 12th day of May, 2006, although EXECUTED on the dates set out below.

**BORROWER:**

BC&D OIL AND GAS CORPORATION, a New Mexico corporation

EXECUTED on this _12th_     By: _____
day of May, 2006                 Mark Ariail, Chief Financial Officer

**GUARANTOR:**

APOLLO RESOURCES INTERNATIONAL, INC., a Utah corporation

EXECUTED on this _12th_     By: _____
day of May, 2006                 Mark Ariail, Chief Financial Officer

**LENDER:**

WEST TEXAS NATIONAL BANK

EXECUTED on this _____     By:     _____
day of May, 2006                            Chris  L. Whigham, Senior Vice-
                                            President

## LOAN AGREEMENT

This Loan Agreement (this "Agreement") dated as of **January 31, 2006,** is entered into by and among **WEST TEXAS NATIONAL BANK** ("Lender") and the Borrower and Guarantor described below.

In consideration of the Loan or Loans described below and the mutual covenants and agreements contained herein, and intending to be legally bound hereby, Lender, Borrower and Guarantor agree as follows:

1.    <u>Definitions and Reference Terms</u>.  In addition to any other terms defined herein, the following terms shall have the meaning set forth with respect thereto:

A.    **Accounting Terms.**  All accounting terms not specifically defined or specified herein shall have the meanings generally attributed to such terms under GAAP, as defined below, as in effect from time to time, consistently applied, with respect to the financial statements referenced in Section 5.H. hereof.

B.    **Advance.**  The word "Advance" means any advance or other disbursement of Loan proceeds under the Note.

C.    **Borrower.**  The word "Borrower" means BC&D Oil and Gas Corporation, a New Mexico corporation.

D.    **Borrowing Base.**  The words "Borrowing Base" mean the value assigned by Lender from time to time to the Collateral pursuant to Section 2.B. hereof.

E.    **Change of Control.**  The words "Change of Control" mean, with respect to Borrower and Guarantor, the occurrence of any of the following events without the written consent of Lender: (i) any point in time when Guarantor no longer owns 100% of the shares of stock in Borrower and (ii) the liquidation or dissolution of any of Borrower and/or Guarantor.

F.    **CD Pledge Agreement.**  The words "CD Pledge Agreement" mean that certain Third Party Pledge Agreement dated on or about the date of this Agreement, executed by Pledgor described below for the benefit of Lender as such CD Pledge Agreement may hereafter be amended, modified, supplemented, renewed and/or extended at the sole discretion of Pledgor, or other CD Pledge Agreements hereinafter executed by Pledgor, Borrower and/or Guarantor to or for the benefit of Lender covering a $500,000.00 Certificate of Deposit ("Certificate of Deposit").

G.    **Collateral.**  The word "Collateral" means and includes without limitation all property and assets granted as collateral for any Loan, whether real or personal (tangible or intangible) property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, deed of trust, assignment, pledge, chattel mortgage, security agreement or pledge agreement intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise including but not limited to all Oil and Gas Properties as described below, Personal Property, stock and Certificate of Deposit.

H.    **Deed of Trust.**  The words "Deed of Trust" mean that certain Deed of Trust, Mortgage, Security Agreement, Assignment of Production and Financing Statement dated as of the date of this Agreement executed by Borrower to or for the benefit of Lender, as such Deed of Trust may hereafter be amended, modified, supplemented, renewed and/or extended, and all other mortgages and deeds of trust

- 1 -

E.    **Character of Business.** Borrower will not change the general character of its business as conducted at the date hereof, or engage in any type of business not reasonably related to its business as presently conducted.

F.    **Management Change.** Borrower and Guarantor will not make any substantial change in its present executive or management personnel.

G.    **Stock.** Transfer and/or assign or grant, suffer or permit to exist any lien on Guarantor's stock in Borrower.

H.    **Dividends and Distributions.** Except as permitted by this Section 7.H., make any loans, advances, dividends or distributions of any kind to its owner, or make any other distribution on account of, or purchase, acquire or redeem or retire any ownership interest in it, or in any way amend its capital structure, except that Borrower may make distributions to its owner to pay taxes of such owner attributable to such owner's interest in it; provided, however, that the computation of the amount of any such distribution shall have been proven by it to the reasonable satisfaction of Lender and such owner shall actually pay any taxes due, and, provided further, that no such distribution shall be permitted if (a) an Event of Default has occurred and is continuing, (b) an Event of Default would occur as a result of such distribution, or (c) a Borrowing Base deficiency exists.

I.    **Other Indebtedness (Borrower).** Borrower will not create, incur or have outstanding any indebtedness or obligation, secured or unsecured, recourse, or non-recourse, other than (i) the Note and the indebtedness described herein; (ii) accounts payable incurred in the ordinary course of business with maturities of 45 days or less that are not delinquent or past due under current industry practices or other accounts payable that are being contested in good faith; (iii) ad valorem taxes of every kind that are not delinquent or that are being contested in good faith and by proper proceedings except as in existence as of the date hereof and identified to Lender; (iv) letters of credit incurred in the ordinary course of Borrower's business; (v) as disclosed in note 8 to the financial statements of Guarantor, contained in Form 10-QSB for the quarter ended June 30, 2005, notes payable in the amount of approximately $700,000; or (vi) other unsecured or secured indebtedness incurred by Borrower not to exceed $100,000.00 in the aggregate outstanding at any time.

J.    **Amendment of Articles of Incorporation, Shareholder Agreements and/or Bylaws.** The Borrower will not permit any amendment to, or any alteration of, its Articles of Incorporation, Shareholder Agreements and/or Bylaws other than submitted to Lender prior to the date of closing of the Loan.

K.    **Prepayment of Other Indebtedness.** The Borrower will not, and will not permit any Subsidiary to, make any prepayment or other unscheduled principal payment on, or redeem any Indebtedness (other than Indebtedness owed to the Lender hereunder).

L.    **Sales and Leasebacks.** Borrower will not enter into any arrangement, directly or indirectly, with any third party whereby Borrower shall sell or transfer any of its property, whether now owned or hereafter acquired, and whereby Borrower shall then or thereafter rent or lease as lessee such property or any part thereof or other property which Borrower intends to use for substantially the same purpose as the property sold or transferred.

M.    **Terms of Other Agreements.** The Borrower will not become a party to any agreement (or any amendment, supplement, extension or other modification thereto or thereof) which, in any manner (i) violates, conflicts with or creates a breach of any of the terms or provisions of this Agreement or any of the other Loan Documents, (ii) provides for the granting or conveyance to any third party other than

- 11 -

Lender of Liens on or affecting the Collateral, (iii) restricts in any manner Borrower's (a) legal or equitable rights of ownership, possession, disposition or operation of all or any part of the Collateral or (b) rights or ability to direct the use or disposition of all or any part of the Collateral or (c) which requires the consent of any third party (other than Lender) to use or dispose of any of the Collateral for any purpose or to act or refrain from acting with respect thereto, or (iv) requires the prior consent (other than consents constituting a Permitted Lien) of any third party for the Borrower, to sell, assign, transfer or convey all or any portion of the Collateral.

      N.     **Proceeds of Note.** The Borrower will not permit the proceeds of the Note to be used for any purposes other than those expressly permitted in Section 6.I. above.

      O.     **Limitation on Leases.** The Borrower will not create, incur, assume or suffer to exist any obligation for the payment of rent or hire of property of any kind whatsoever (real or personal, including capital leases, but excluding oil, gas and hydrocarbon leases and Bureau of Land Management Permits), under leases or lease agreements which would cause the aggregate amount of all payments made by Borrower pursuant to such leases or lease agreements to exceed $25,000.00 in any period of twelve consecutive calendar months during the life of such leases.

      P.     **Compensation.** Borrower shall not collectively pay by way of salary, bonus, distribution or otherwise, annual compensation to their officers and other employees in an aggregate amount exceeding the amount currently paid.

      Q.     **Margin Securities.** Borrower shall not use any loan proceeds to purchase or carry "margin stock" (as defined in the Regulations).

8.    **Default.** Borrower and Guarantor shall be in default under this Agreement and under each of the other Loan Documents (a) (i) if Borrower shall default in the payment of any amounts due and owing under the Loan or (ii) after 30 days written notice by Lender to Borrower and/or Guarantor, and Borrower and/or Guarantor fails to cure said default within said 30 day period, should Borrower or Guarantor fail to timely and properly observe, keep or perform any term, covenant, agreement or condition in any Loan Document or in any other loan agreement, promissory note (except for Borrower's default in the payment of any amount due and owing under said Promissory Note), security agreement, deed of trust, deed to secure debt, mortgage, assignment or other contract to which Borrower and/or Guarantor is a party and securing, guaranteeing or evidencing payment of any indebtedness of Borrower or Guarantor to Lender including, but not limited to, the delivery of the Title Opinion as required in Section 6.K. above, (b) after 30 days written notice by Lender to Borrower and/or Guarantor and Borrower and/or Guarantor fail to cure same during said 30 day period, if an event of default shall occur under the Security Documents and any other Loan Document, (c) if the Guarantor should file bankruptcy or dissolve or (d) there shall occur a Change in Control of Borrower and/or Guarantor.

9.    **Remedies Upon Default.** If an Event of Default shall occur, Lender shall have all rights, powers and remedies available under each of the Loan Documents as well as all rights and remedies available at law or in equity, including, without limitation, the right to declare the Note immediately due and payable. Lender will attempt, but is not obligated, to take possession, repossess and/or foreclose the Collateral in the following order (a) stock, (b) Personal Property, (c) Oil and Gas Properties and (d) the Certificate of Deposit described in 1.F. above except in the event proceeding in the above order would be unreasonable to Bank and/or result in a decrease in or jeopardize the value of the Collateral, in the Lender's sole discretion.

10.   **Notices.** All notices, requests or demands which any party is required or may desire

C.     No material adverse change shall have occurred in the financial condition, assets or business prospects of Borrower or any Guarantor.

### NOTICE

THIS LOAN AGREEMENT, THE SECURITY DOCUMENTS, THE NOTE AND THE ACCOMPANYING UCC-1 FINANCING STATEMENTS AND GUARANTY AND/OR ANY AND ALL OTHER DOCUMENTS EXECUTED AT OR NEAR THE TIME OF THE EXECUTION OF THIS DOCUMENT CONSTITUTE A "LOAN AGREEMENT" AS DEFINED IN SECTION 26.02(a) OF THE TEXAS BUSINESS & COMMERCE CODE, AND REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.    THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

IN WITNESS WHEREOF, the parties hereto have caused this Loan Agreement to be duly executed as of the date first above written.

BORROWER:

BC&D OIL AND GAS CORPORATION, a New Mexico corporation

EXECUTED on the 7th day of February, 2006

By: _____
    Mark Ariail,
    Chief Financial Officer

GUARANTOR:

APOLLO RESOURCES INTERNATIONAL, INC., a Utah corporation

EXECUTED on the 7th day of February, 2006

By: _____
    Mark Ariail,
    Chief Financial Officer

LENDER:

WEST TEXAS NATIONAL BANK

EXECUTED on the 21st day of February, 2006

By: _____
    Chris L. Whigham,
    Senior Vice President

- 19 -