# SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

ATTORNEYS AT LAW

DANIEL I. GOLDBERG*

dgoldberg@salonmarrow.com

direct dial (646) 843-1905
direct fax (646) 843-1906

*also admitted in New Jersey

292 MADISON AVENUE
NEW YORK, NEW YORK 10017
Telephone (212) 661-7100
Facsimile (212) 661-3339

2 University Plaza, Suite 210
Hackensack, NJ 07601
Telephone (201) 662-0656
Facsimile (201)487-9054

257 Lyons Plains Road
Weston, CT 06883
Telephone (203) 227-0023
Facsimile (646) 843-1910

800 Corporate Drive, Suite 208
Ft. Lauderdale, FL 33334
Telephone (954) 491-0099

August 8, 2007

**VIA ELECTRONIC FILING**
The Honorable Shira A. Scheindlin, U.S.D.J.
Southern District of New York
United States District Courthouse
500 Pearl Street
New York, New York 10007

Re: Castlerigg Master Investments Ltd. v. Apollo Resources International, Inc.
Civ. Action No. 07 CIV 6385

Dear Judge Scheindlin:

This office represents Apollo Resources International, Inc. ("Apollo"), in connection with the above matter. We are submitting this letter brief, along with the affidavit of Dennis McLaughlin, and the exhibits attached thereto, in opposition to Plaintiff Castlerigg Master Investments Ltd.'s ("Castlerigg") motion for a preliminary injunction. Castlerigg's motion is currently returnable before the Court on Wednesday, August 15, 2007. The Court is respectfully referred to the affidavit of Mr. McLaughlin for the facts. All of the capitalized terms used herein have the same definitions as set forth in Mr. McLauglin's affidavit.

The Court should deny Castlerigg's motion for a preliminary injunction, because the Court does not have the authority to issue the requested pre-judgment restraint on Apollo's assets. Moreover, while a defendant's insolvency or threatened insolvency does not create irreparable harm, Apollo is neither insolvent, nor at risk of becoming insolvent – even if it is permitted to proceed with the sale of its subsidiary's assets to Imperial – and Castlerigg cannot articulate any basis upon which completion of the Imperial deal will cause it to suffer irreparable harm.

SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

August 8, 2007
Page 2

The Court should further deny Castlerigg's motion, because the very "repayment" covenant contained in the note upon which it seeks its preliminary injunction permits Apollo and its subsidiary's sale of their assets. Additionally, the prohibition contained in the "repayment" covenant against Apollo paying Castlerigg in the event that Apollo is in default supports Apollo's meritorious defenses to Castlerigg's underlying claims. Moreover, the terms of the "repayment" covenant preclude a finding that Castlerigg has a likelihood of success on its newly "spun" specific performance claim. In the end, entry of a preliminary injunction would prevent Apollo from capitalizing on the value of its subsidiary's wasting assets through a sale to Imperial, and render Apollo's subsidiary's assets worthless.

    A.    *There is No Basis for the Court Imposing a Pre-Judgment Restraint*

Contrary to Castlerigg's characterization, the only time that the Court may impose a pre-judgment restraint on assets is if: (a) the plaintiff has already obtained a judgment in a prior proceeding fixing the debt and imposing a security interest in defendant's property, and is prosecuting an enforcement proceeding (*see Grupo Mexicano De Desarrollo, S.A. v. Alliance Bond Fund, Inc*, 527 U.S.308, 320, 119 S.Ct. 1961, 1969 (1999); or (b) the plaintiff is seeking both equitable and legal relief in relation to <u>specific</u> property in which it holds a security or equitable interest (*see eg. III Finance Ltd. v. The Aegis Consumer Funding Group, Inc.*, 1999 U.S. Dist. Lexis 10070 (S.D.N.Y. 1999) (preliminarily restraining disputed proceeds, upon evidence that they were plaintiff's collateral); *Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of Virginia*, 144 F.Supp.2d 241, 250, Fn 9 (S.D.N.Y. 2001) ("Indeed, courts since *Grupo Mexicano* have found that where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets."))

As the court held in *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*, 295 F. Supp. 2d 366, 389 (S.D.N.Y. 2003), equitable claims that are merely incidental to the underlying claim do not provide an adequate basis for the imposition of a preliminary injunction:

> Because the plaintiff's action is one for money damages, and because the plaintiff asserts no lien or equitable interest in the assets it seeks to restrain, this Court lacks the power to grant the preliminary injunction it seeks. The plaintiff's argument that *Grupo Mexicano* is inapplicable here because its action is primarily equitable in nature is unpersuasive…. The equitable relief that the plaintiff seeks, including the setting aside of alleged fraudulent conveyances, is incidental to, and indeed contingent upon the success of, the plaintiff's [money judgment claim]… A preliminary injunction in this case would be issued in aid of the collection of a money judgment, not final equitable relief, an outcome barred by *Grupo Mexicano*.

SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

August 8, 2007
Page 3

Here, Castlerigg's amended Complaint includes a "specific" performance claim arising out of the "repayment" covenant in the note. However Castlerigg's claim is merely in aid of, and incidental to its money damage claim and, therefore, cannot provide an adequate basis for the Court's imposition of a preliminary injunction.

Plaintiff's reliance on *Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*, 2003 U.S. Dist. LEXIS 2077 (S.D.N.Y. 2003) is misplaced. In that case, the plaintiff asserted a claim to and an equitable interest in the very same property which was the subject of the court's preliminary injunction. The plaintiff claimed a right to the specific stock/warrants that was the subject of its requested preliminary relief. Accordingly, the court ordered the defendant to "turn over" the property to plaintiff. Here, Castlerigg does not claim any right or interest in the specific property which it is seeking to restrain. Instead, Castlerigg is improperly seeking to use the Court's equity powers to elevate its unsecured lender status to that of a secured lender. If Castlerigg wished to have taken a security interest in return for its loan, it should have contracted for such a right.

  B. The Threatened Uncollectability of Castlerigg's Anticipated Judgment Does Not Constitute Irreparable Harm, and Does Not Provide a Basis for the Court's Imposition of a Preliminary Injunction

In the current action, Castlerigg does not maintain a judgment, security or equitable interest in the *specific* asset it seeks to restrain. Plaintiff relies upon cases which predate *Grupo Mexicano* for the argument that an injunction is "proper to prevent a defendant from making a judgment uncollectible." (Plaintiff's Memo, p. 13). To be clear, post *Grupo Mexicano* – this NOT the law. As stated by the Court in *Arias-Zeballos v. Tan*, 2007 U.S.Dist.LEXIS 5069 at 9 (S.D.N.Y. 2007): "A litigant's fear that a defendant may not have assets to pay a future judgment is not the type of injury that necessitates the issuance of the equitable relief sought by the plaintiff." Citing *Grupo Mexicano*, 527 U.S. at 329-33.

The courts have repeatedly held that: "A showing of irreparable injury cannot be made based on a litigant's fear that a defendant may not have assets to pay a future judgment." *Pandora Select Partners, LP v. Strategy International Insurance Group*, 2006 U.S. Dist. LEXIS 85238 (S.D.N.Y. 2006) (denying motion for preliminary injunction, because the primary relief sought in the action was monetary). Moreover, the *Pandora* court held that "a preliminary injunction designed to freeze a defendant's assets, so as to preserve the defendant's funds for a future judgment, is beyond the court's equitable powers." *Id.* Thus, in determining whether or not to issue Castlerigg's preliminary injunction, it is improper for the Court to even consider Apollo and its subsidiary's solvency, or purported threatened insolvency in the event that the Imperial deal is completed.

SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

August 8, 2007
Page 4

      C.    *Issuance of the Preliminary Injunction Will Cause*
            *Apollo and its Subsidiaries to Suffer Irreparable Harm*

Mountain States and BC&D's liabilities (specifically including the potential termination of their leases) seriously compromise or threaten to compromise their ability to perform their business. In many instances, Mountain States and BC&D have been forced to cease their operation of certain wells, because they have failed to meet certain obligations. But in all respects, Mountain States and BC&D's inability to meet their obligations has caused the value of their assets to erode. Without immediate action, there is a threat that their assets will soon waste away to a point at which they no longer have any value.

Given the threat that Mountain States and BC&D's revenue producing assets will continue to perish (and/or be terminated), and its current financial inability to address its liabilities, Mountain States and BC&D have attempted to maximize the value of their assets through an immediate sale (subject to the liabilities which attach to the assets). In so doing, Apollo (as a shareholder), along with Mountain States and BC&D have entered into a purchase and sale agreement with Imperial.

Apollo, Mountain States and BC&D have exercised their respective and collective "business judgment" in determining that, under the circumstances, their best course of action is to attempt to maximize the value of Mountain States and BC&D's perishable assets by selling them before they waste away any further. Mountain States and BC&D will be irreparably harmed if the Court interferes with their business judgment by attempting to stop the sale of their assets. Mountain States and BC&D simply don't have the cash necessary to satisfy their obligations and thereby stop their assets from declining in value, and further end the threat that their leases will be terminated. Accordingly, a sale is their best shot at maximizing the value of their assets.

      D.    *The Imperial Sale Does Not Violate the Terms of the Note*

Castlerigg contends that if the parties are permitted to complete the Imperial deal, the sale would violate Paragraph 13(d) of the December 29, 2006 promissory note Apollo provided to Castlerigg. However, in New York restrictive covenants, such as the "repayment" covenant at Par. 13(d) of the note are narrowly construed. Thus, Castlerigg cannot be permitted to read into the "repayment" covenant terms that do not exist.

S A L O N   M A R R O W   D Y C K M A N   N E W M A N   &   B R O U D Y   L L P

August 8, 2007
Page 5

Paragraph 13(d) prohibits Apollo and its subsidiary's repayment of certain "debt," in the event that Apollo defaults under its note. It states:

> 13(d) Restricted Payments. The Company shall not, and the Company shall not permit any of its Subsidiaries to, directly or indirectly, redeem, defease, repurchase, repay or make any payments in respect of, by the payment of cash or cash equivalents . . ., all or any portion of any Permitted Indebtedness if at the time such payment is due or is otherwise made or, after giving effect to such payment, (i) an event constituting an Event of Default has occurred and is continuing or (ii) an event that with the passage of time and without being cured would constitute an event of Default has occurred and is continuing.

However, Paragraph 13(d) does not restrict Mountain States or BC&D's sale of assets and, therefore, Mountain States and BC&D can proceed with the Imperial transaction without violating the terms of the note.

The sale of Mountain States and BC&D's assets does not constitute the "payment" of any debt. Instead, Imperial's purchase price is simply being adjusted to reflect the obligations directly related to and inseparable from the assets Mountain States and BC&D are selling. The total sale price and consideration to be paid by Imperial reflects the value of assets, net of the liabilities encumbering those assets, that Mountain States and BC&D are selling to Imperial. Imperial is under no obligation to, and has made no agreement to repay the obligations running with the assets it is purchasing. There is absolutely nothing in the note which prohibits Mountain States and BC&D's sale of assets. As Castlerigg is a sophisticated investor, had it intended to create such a limitation upon Mountain States and BC&D in the event of a default, it could have included such a restriction in the note, but it failed to do so.

But even if the Court were to construe Paragraph 13(d) as prohibiting not just the repayment of debts, but also the assumption of liabilities -- the note merely prohibits the payment of "Permitted Indebtedness." The note defines "Permitted Indebtedness" at Par. 27(z) as "(i) the Senior Indebtedness and (ii) the Indebtedness evidenced by this Note and the other Notes." "Senior Indebtedness" is defined at Par. 27(ii) of the note as "that certain securities purchase agreement dated as of July 25, 2006, by and among the Company and the initial holders of the Notes, as amended by the Amended Agreement."

SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

August 8, 2007
Page 6

   Paragraph 13(d) does nothing more than prohibit Apollo and its subsidiaries from paying a senior note holder, or Castlerigg – in the event that it is in default. It does not preclude Apollo or its subsidiaries from paying any other debt, or from assigning its debt to another. As a matter of law, the very provision upon which Castlerigg relies in support of its motion actually prohibits Apollo from paying to Castlerigg any amounts owing under the note and, therefore, provides a meritorious defense to not only Apollo's alleged default under the note, but also its purported threatened breach of the "repayment" covenant.

   Nevertheless, even if Par. 13(d) were read to prohibit not just the repayment of "Permitted Indebtedness," but also "Indebtedness" on the basis that Par. 13(b) of the note prohibits Apollo and its subsidiaries from incurring "Indebtedness" unless it is "Permitted Indebtedness," completion of the Imperial deal would not violate the terms of the note, and further would not cause Castlerigg to suffer any irreparable harm. "Indebtedness" is defined as:

> 27(s) "Indebtedness" of any Person means, without duplication (i) all indebtedness for borrowed money, (ii) all obligations issued, undertaken or assumed as the deferred purchase price of property or services, including (without limitation) "capital leases" in accordance with GAAP (other than trade payables entered into in the ordinary course of business), (iii) all reimbursement or payment obligations with respect to letters of credit, surety bonds and other similar instruments, (iv) all obligations evidenced by notes, bonds, debentures or similar instruments, including obligations so evidenced incurred in connection with the acquisition of property, assets or businesses, (v) all indebtedness created· or arising under any conditional sale or other title retention agreement, or incurred as financing, in either case with respect to any property or assets acquired with the proceeds of such indebtedness (even though the rights and remedies of the seller or bank under such, agreement in the event of default are limited to repossession or ·sale of such property), (vi) all monetary obligations under any leasing or similar arrangement which, in connection with GAAP, consistently applied for the periods covered ,thereby, is classified as a capital lease, (vii) all indebtedness referred to in clauses (i) through (vi) above secured by (or for which the holder of such Indebtedness has an existing right, contingent or otherwise, to be secured by) any mortgage, lien, pledge, charge; security interest or other encumbrance upon or in property or assets (including accounts and contract rights) owned by any Person, even though the Person which owns such assets or property has not assumed or become liable for the payment of such indebtedness, and· (viii) all Contingent Obligations in respect of indebtedness or obligations of others of the kinds referred to in clauses (i) through (vii) above.

"Indebtedness" generally refers to contractually incurred liabilities. Of the obligations to be assumed by Imperial, the only two categories that could possibly qualify as "Indebtedness" are the $800,000 collateralized bank note, and the obligations that Mountain States and BC&D regularly incur in connection with their leases.

SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

August 8, 2007
Page 7

      As to the $800,000 secured note, BC&D issued this note to West Texas National Bank on January 31, 2006 (which was modified effective May 11, 2006) -- before Apollo's issuance of the instant note to Castlerigg. As the prohibition against Apollo and its subsidiaries incurring any "Indebtedness" that is not "Permitted Indebtedness," did not ante date the note, Mountain States/BC&D was not prohibited from incurring such pre-Castlerigg debt. Moreover, a plain reading of the note does not prohibit the repayment of this lawfully incurred debt. But in any event, the repayment of that note prior to the repayment of the Castlerigg note could not possibly cause Castlerigg to suffer any harm. The $800,000 note is collateralized by a certificate of deposit. Thus, regardless of whether that note is given payment priority over Castlerigg's note, Castlerigg's note will always be subject to the $800,000 bank note, the bank's security interest in the subject collateralized property, and the bank's right of foreclosure. Giving the bank note priority of payment does not in any way harm or injure Castlerigg or threaten it with the loss of any rights.

      As for the note's alleged prohibition against Mountain States and BC&D incurring any obligations appurtenant to their leases – this is simply absurd. The note cannot mean what it purports to say: that Mountain States and BC&D – whose businesses are based upon their utilization of leases, cannot incur any obligations in connection therewith. This would mean that it would be a violation of the note for Mountain States or BC&D to become obligated to perform certain service and repair work, or to become obligated to pay certain taxes and royalties arising out of the leases. To give effect to this term, Mountain States and BC&D would be required to shut-down their businesses – which would obviously make it impossible for them to generate revenue to repay the note which is the subject of this litigation. Clearly, this is not what the parties intended.

      For all of the foregoing reasons, including those set forth in the attached affidavit in opposition, Apollo respectfully request the Court deny Castlerigg's motion for a preliminary injunction.

Respectfully submitted,

*[signature]*
Daniel I. Goldberg (5745)

cc:   Alan R. Glickman, Esq.