UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
CASTLERIGG MASTER INVESTMENTS LTD., :
:
                Plaintiff, : Civ. Action No.: 07 CIV 6385 (SAS)
:
                v. :
:
APOLLO RESOURCES INTERNATIONAL, INC., : ECF Case
:
                Defendant. :
-----------------------------------------------------------------x

# MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

SCHULTE ROTH & ZABEL LLP
Alan R. Glickman
David M. Hillman
Dana M. Roth
Matthew J. Gagnon
919 Third Avenue
New York, New York 10022
(212) 756-2000
*Attorneys for Castlerigg Master Investments Ltd.*

10487138.1

Table of Contents

Page

Table of Authorities .................................................................................................................. ii
I. GRUPO MEXICANO IS NOT APPLICABLE HERE............................................................ 1
A. Grupo Mexicano Does Not Preclude Castlerigg's Application for a Preliminary Injunction.... 1
B. Apollo Contractually Agreed To An Injunction ...................................................... 3
II. CASTLERIGG HAS SHOWN IRREPARABLE HARM........................................................ 4
III. CASTLERIGG HAS ESTABLISHED LIKELIHOOD OF SUCCESS ON THE MERITS.... 6

Table of Authorities

Page

Cases

*Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*,
    No. 02 CV 10237 (GBD),
    2003 WL 328302 (S.D.N.Y. Feb. 11, 2003) ........................................................................4

*Alpha Capital Aktiengesellschaft v. Group Mgmt. Corp.*,
    No. 02 Civ. 2219 (LBS),
    2002 WL 31681798 (S.D.N.Y. Nov. 25, 2002)..............................................................3, 4

*Arias-Zeballos v. Tan*,
    No. 06 Civ. 1268 (GEL) (KNF),
    2007 U.S. Dist. LEXIS 5069 (S.D.N.Y. Jan. 24, 2007) .......................................................6

*Atlas Life Ins. Co. v. W.I. S., Inc.*,
    306 U.S. 563 (1939)........................................................................................................3, 4

*Castle Creek Tech. Partners, LLC v. Cellpoint Inc.*,
    No. 02 Civ. 6662 (GEL),
    2002 WL 31958696 (S.D.N.Y. Dec. 9, 2002) .................................................................3, 5

*In re Comverse Tech., Inc. Derivative Litig.*,
    No. 06-CV-1849 (NGG) (RER),
    2006 WL 2568461 (E.D.N.Y. Aug. 31, 2006) ....................................................................2

*CSC Holdings, Inc. v. Redisi*,
    309 F.3d 988 (7th Cir. 2002) ...............................................................................................2

*Deckert v. Independence Shares Corp.*,
    311 U.S. 282 (1940)........................................................................................................1, 2

*Ellipso, Inc. v. Mann*,
    480 F.3d 1153 (D.C. Cir. 2007)........................................................................................3, 4

*Federated Strategic Income Fund v. Mechala Group Jamaica Ltd.*,
    No. 99 CIV 10517 HB,
    1999 WL 993648 (S.D.N.Y. Nov. 2, 1999).........................................................................6

*In re Focus Media Inc.*,
    387 F.3d 1077 (9th Cir. 2004) .............................................................................................2

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
    527 U.S. 308 (1999)...............................................................................................1, 2, 3, 5

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
    295 F. Supp. 2d 366 (S.D.N.Y. 2003) .................................................................................3

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
    No. 07 Civ. 978 (SAS),
    2007 WL 1988144 (S.D.N.Y. July 9, 2007).........................................................................8

*Netwolves Corp. v. Sullivan*,
    No. 00 CIV. 8943(AGS),
    2001 WL 492463 (S.D.N.Y. May 9, 2001) ....................................................................5, 6

*Pandora Select Partners, LP v. Strategy Int'l Ins. Group, Inc.*,
    No. 06 Civ. 938 (KMW)(KNF),
    2006 U.S. Dist. LEXIS 85238 (S.D.N.Y. Aug. 11, 2006)....................................................6

*SEC v. ETS Payphones, Inc.*,
    408 F.3d 727 (11th Cir. 2005) ..............................................................................................2

*Serio v. Black, Davis & Shue Agency, Inc.*,
    No. 05 Civ. 15 (MHD),
    2005 WL 3642217 (S.D.N.Y. Dec. 30, 2005) ...............................................................2, 5

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999) ..................................................................................................4

*United States ex rel. Rahman v. Oncology Assocs., P.C.*,
    198 F.3d 489 (4th Cir. 1999) ...............................................................................................2

Rules

Fed. R. Civ. P. 65(a) ........................................................................................................................1

Court Filings

Amended Complaint, *Pandora Select Partners, LP v. Strategy Int'l Ins. Group, Inc.*,
    No. 06 Civ. 938 (KMW)(KNF) (S.D.N.Y. Apr. 25, 2006) .................................................6

Plaintiff Castlerigg Master Investments Ltd. ("Castlerigg") respectfully submits this memorandum of law in further support of its application for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. As described more fully herein, Apollo Resources International, Inc. ("Apollo") has provided no arguments or facts to alter this Court's initial conclusion in granting a temporary restraining order (the "TRO") on July 31, 2007 that Plaintiff is entitled to the relief it seeks.[1]

## I. *GRUPO MEXICANO* IS NOT APPLICABLE HERE

Apollo contends that this Court is without the power to grant the preliminary injunction at issue, relying on *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). However, as the Court recognized in granting the TRO, *Grupo Mexicano* is inapplicable because Castlerigg seeks equitable relief in addition to its claim for money damages. (Hearing Tr. at 58.) In addition, Apollo consented to the equity jurisdiction of this Court to grant injunctive relief, thereby waiving any jurisdictional objection if there were one.

### A. *Grupo Mexicano* Does Not Preclude Castlerigg's Application for a Preliminary Injunction.

As set forth in Castlerigg's opening memorandum and now in its Amended Complaint at ¶¶ 51-64, Castlerigg seeks specific performance of certain covenants contained in the Note in addition to its claim for money damages. As the court in *Grupo Mexicano* itself held, where equitable relief is sought along with money damages, injunctive relief is appropriate under *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940). In *Deckert*, the Supreme Court upheld an injunction freezing defendant's assets, determining that it was a reasonable measure to preserve the *status quo* pending final determination of the underlying equitable claims. *Id.* at

---

[1] The legal standard for issuance of a TRO and a preliminary injunction is the same (Plaintiff's Initial Memorandum ("Initial Mem.") at 11 n.10), and Plaintiff has sought the same relief for both.

10487138.1

290. *Grupo Mexicano* distinguished this earlier precedent: "*Deckert* is not on point here because, as the Court took pains to explain, 'the bill stated a cause of action for equitable relief.'" *Grupo Mexicano*, 527 U.S. at 325 (quoting *Deckert*, 311 U.S. at 288).

As the Fourth Circuit pointed out in *United States ex rel. Rahman v. Oncology Associates, P.C.*, 198 F.3d 489 (4th Cir. 1999), a frequently-cited decision on this issue, *Grupo Mexicano*'s holding is "carefully circumscribed, providing specifically that the general equitable powers of the federal courts do not include the authority to issue preliminary injunctions in actions *solely at law*." 198 F.3d at 496 (emphasis added). Courts in this Circuit have employed the reasoning of *Oncology Associates,* holding that where a plaintiff seeks both legal and equitable relief, the court has the power to enjoin asset transfers. *See, e.g., In re Comverse Tech., Inc. Derivative Litig.*, No. 06-CV-1849 (NGG) (RER), 2006 WL 2568461, at *1 (E.D.N.Y. Aug. 31, 2006); *Serio v. Black, Davis & Shue Agency, Inc.*, No. 05 Civ. 15 (MHD), 2005 WL 3642217, at *9 (S.D.N.Y. Dec. 30, 2005).[2] Here, Castlerigg seeks injunctive relief restraining actions that would violate the covenants as to which it seeks specific performance, which is precisely the use of injunctive relief in aid of an equitable claim that is permitted.

Apollo argues that the injunctive relief sought does not relate to *specific* property as to which the equitable claim is directed. However, as described in Castlerigg's discussion of likelihood of success on the merits, the covenants Castlerigg seeks to specifically enforce preclude the incurrence or payment of certain debts, and it is precisely those debts that the injunction seeks to prevent Apollo from paying. Nor is there any basis for Apollo's claim that Castlerigg's request for specific performance "is merely in aid of, and incidental to its money

---

[2]  *Accord SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 998 (7th Cir. 2002); *In re Focus Media Inc.*, 387 F.3d 1077, 1085 (9th Cir. 2004).

damage claim." Castlerigg's claims for specific performance of the covenants are entirely independent of its claim on the Note, and do not depend on it in any way.[3] Accordingly, this is not an instance where a creditor merely seeks a generalized injunction freezing a debtor's assets in aid of its money damages claim.

Not surprisingly, courts in this Circuit have granted preliminary injunctions after *Grupo Mexicano* in order to enforce protective covenants in debt instruments as Plaintiff seeks to do here. *See, e.g., Alpha Capital Aktiengesellschaft v. Group Mgmt. Corp.*, No. 02 Civ. 2219 (LBS), 2002 WL 31681798 (S.D.N.Y. Nov. 25, 2002) (granting preliminary injunctive relief for enforcement of contractual bond requirement intended to secure a loan); *Castle Creek Tech. Partners, LLC v. Cellpoint Inc.*, No. 02 Civ. 6662 (GEL), 2002 WL 31958696 (S.D.N.Y. Dec. 9, 2002) (granting preliminary injunction enforcing conversion rights intended to secure loan).

B.     **Apollo Contractually Agreed To An Injunction.**

Even if *Grupo Mexicano* were applicable, which it is not, an objection based upon that case can be waived and it has been here. *Grupo Mexicano* noted that federal courts derive their authority to grant equitable remedies from the Judiciary Act of 1789. 527 U.S. at 318. As the Supreme Court held in *Atlas Life Insurance Co. v. W.I. Southern, Inc.*, 306 U.S. 563, 568 (1939), on which *Grupo Mexicano* relied, equity jurisdiction is not the same as a court's subject matter jurisdiction and therefore "the parties may waive their objections to the equity jurisdiction by consent." *Id.* at 568 n.1 (citations omitted). *See Ellipso, Inc. v. Mann*, 480 F.3d 1153, 1160 (D.C. Cir. 2007) (citing *Atlas* in refusing to vacate preliminary injunction because party had

---

[3]     Apollo's invocation of *JSC Foreign Economic Ass'n Technostroyexport v. International Development & Trade Services, Inc.*, 295 F. Supp. 2d 366 (S.D.N.Y. 2003), is inapposite. In that case, plaintiff brought an alter ego action against directors and officers of a company to collect a money judgment against the company. In so doing, plaintiff asserted equitable claims that the Court held were *contingent* on the alter ego claim (which was deemed to be a legal cause of action). *Id.* at 388-89. No such contingency exists here.

10487138.1                                              3

waived objection thereto).  Here, Apollo expressly waived objection to the grant of injunctive relief to restrain violation of Note covenants: "[t]he Company [Apollo] . . . agrees that, in the event of any such breach or threatened breach, the Holder shall be entitled, in addition to all other available remedies, to an injunction restraining any breach."  (Exhibit B to the Glickman Decl. at § 18.)

## II.  CASTLERIGG HAS SHOWN IRREPARABLE HARM

In the same provision of the Note cited above, Apollo also agreed that a violation of the terms of the Note would cause Castlerigg irreparable harm.  As Castlerigg has pointed out, and as was noted by this Court (Hearing Tr. at 55-57), such provisions are to be afforded "great weight," in determining the issue of irreparable harm.  *Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*, No. 02 CV 10237 (GBD), 2003 WL 328302, at *5 (S.D.N.Y. Feb. 11, 2003) (citing *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999)).

It is clear that irreparable harm exists in this case even apart from the contractual acknowledgement.  As described in the discussion of likelihood of success on the merits, the protections provided in the covenants of the Note will be eviscerated if the Apollo/Imperial transaction proceeds.  Where, as here, parties specifically have bargained for protections in addition to providing a claim for money damages, a breach of those protections has been held to constitute irreparable harm *per se*.  *See Alpha Capital,* 2002 WL 31681798, at *11 (failure to provide the bond in that case established irreparable harm "whatever the financial condition of the Defendant").

What is more, it is clear that Apollo's financial condition does pose a significant risk that allowing it to pay other debts in violation of the covenants will prevent repayment of the Note.  Although Apollo attempts to refute this by claiming it has abundant assets, it does not dispute all of the evidence previously submitted by Castlerigg making plain that Apollo is in

10487138.1                                            4

serious financial trouble, including Apollo's nonpayment of principal and interest on the Note, its failure to file financial statements, the resignation of its Chief Financial Officer, and its lack of financial wherewithal to implement Sarbanes-Oxley.  (Initial Mem. at 10-11.)  Moreover, in his opposing affidavit, Apollo's Chief Executive Officer, Dennis McLaughlin, has admitted that Apollo's "cost of sales outstrips its revenues," and that it is "losing money." (McLaughlin Aff. at ¶ 27.)  Under these circumstances, the fact that Apollo allegedly has paper net assets of $65 million on financial statements that are seven months old (*id.*) is meaningless.[4]

       Mr. McLaughlin also concedes that its wholly-owned Mountain States and BC&D subsidiaries are in dire straits:  "[a]s a result of Mountain States and BC&D's growing losses, they cannot meet their liabilities - which are thereby causing their assets to suffer a downward spiral." (McLaughlin Aff. at ¶ 5.)  Those liabilities "seriously compromise or threaten to compromise their ability to perform their business." (*Id*. at ¶ 11.)  Nor has Apollo disputed that its Earth Biofuels subsidiary has been placed into involuntary bankruptcy by five of its creditors.  (Initial Mem. at 11 n.9.)  While Apollo seeks to distance itself from its subsidiaries (McLaughlin Aff. at ¶ 25), they obviously are among its assets and so their predicaments plainly are relevant.

       Contrary to Apollo's claim, courts post-*Grupo Mexicano* have found irreparable harm where a debtor's dire financial straits would frustrate a judgment.  *See Castle Creek*, 2002 WL 31958696, at *3 ("defendant's imminent insolvency can constitute irreparable harm when it is possible that the defendant will not be able to pay damages at the conclusion of the litigation"); *Serio*, 2005 WL 3642217, at *16 ("A serious threat of insolvency by a defendant can constitute such a 'substantial chance' of irreparable harm.") (citations omitted); *Netwolves Corp. v. Sullivan*, No. 00 CIV. 8943(AGS), 2001 WL 492463, at *11 (S.D.N.Y. May 9, 2001) ("[W]here the

---

[4]     As this Court contemplated, we will further cross-examine Apollo's affiant's statements on this and other issues at the preliminary injunction hearing.

defendant is insolvent, or may become insolvent during the pendency of the litigation, monetary injury is deemed irreparable because the plaintiff may never be able to recover damages."); s*ee also Federated Strategic Income Fund v. Mechala Group Jamaica Ltd.*, No. 99 CIV 10517 HB, 1999 WL 993648, at *8 (S.D.N.Y. Nov. 2, 1999).[5]

### III. CASTLERIGG HAS ESTABLISHED LIKELIHOOD OF SUCCESS ON THE MERITS

Apollo has presented nothing to alter this Court's prior finding that "Castlerigg has shown a likelihood of success on the merits that the asset sale transaction will violate the terms of the note." (Hearing Tr. at 59.)[6]

There are two covenants at issue here: Sections 13(b) and 13(d) of the Note.

---

[5] Apollo's purported authority to the contrary is inapposite. In *Arias-Zeballos v. Tan*, No. 06 Civ. 1268 (GEL) (KNF), 2007 U.S. Dist. LEXIS 5069, at *8-10 (S.D.N.Y. Jan. 24, 2007), plaintiff solely sought a claim for money damages for breach of contract and defamation. In *Pandora Select Partners, LP v. Strategy International Insurance Group, Inc.*, No. 06 Civ. 938 (KMW) (KNF), 2006 U.S. Dist. LEXIS 85238, *6-7 (S.D.N.Y. Aug. 11, 2006), plaintiffs sought money damages and only requested equitable relief as an *alternative* thereto. *See* Amended Complaint at ¶¶ 82, 88 & 94, *Pandora*, No. 06 Civ. 938 (KMW) (KNF) (S.D.N.Y. Apr. 25, 2006). As for irreparable harm, in *Arias-Zeballos* plaintiff complained that defendant's assets would be relocated at some unspecified future date, but offered no evidence that the harm was other than "speculative and remote." 2007 U.S. Dist. LEXIS 5069, at *9. In *Pandora*, the court found that "plaintiffs' concern that the defendants [were] dissipating or [would] dissipate their assets [was] based on nothing more than speculation." 2006 U.S. Dist. LEXIS 85238, at *7. By contrast, here there is abundant evidence of defendant's financial distress.

[6] Because Castlerigg has established a likelihood of success on the merits, it is not necessary to balance the numerous claims that Apollo makes in its opposition papers as to why enjoining the transaction purportedly will harm it. *Id.* In any event, those claims were by and large made and addressed in connection with Plaintiff's TRO application. *See* Letters from Alan R. Glickman and Daniel Goldberg dated July 31, 2007. However, Castlerigg will be prepared to cross-examine Apollo's affiant, Dennis McLaughlin, on these issues at the preliminary injunction hearing. We would only note at this stage that, in addition to their other deficiencies, Apollo's exaggerated claims prove too much. In an effort to assert that Apollo will lose the Imperial transaction if the preliminary injunction is granted, Mr. McLaughlin states that Imperial would only extend the closing of the transaction until August 10. (McLaughlin Aff. at ¶ 17.) If that really is as far as Imperial will go, granting the preliminary injunction will not cause the loss of the transaction: August 10 (today) will pass during the pendency of the TRO before the preliminary injunction hearing is even held.

Section 13(b) precludes the direct or indirect incurrence of indebtedness other than Permitted Indebtedness, and Section 13(d) precludes Apollo from paying Permitted Indebtedness while the Note is outstanding once an Event of Default has occurred. (Exhibit B to the Glickman Decl. at §§ 13(b) and (d).) Apollo makes no effort to dispute that numerous Events of Default have taken place. (Initial Mem. at 3-5.)

Remarkably, Apollo's brief completely ignores Section 13(b). As for Section 13(d), Apollo argues for the first time that the debts at issue (set forth on Exhibit H to the Glickman Declaration at Exhibit B) are debts of its subsidiaries, Mountain States Petroleum Company and BC&D Oil & Gas Corporation, and therefore are not covered by the covenants. However, both Sections 13(b) and (d) not only prohibit *Apollo* from incurring and paying debt, but also state that Apollo "shall not permit any of its Subsidiaries" to do so.

Apollo also contends that it is not paying debts in violation of Section 13(d) by virtue of the Apollo/Imperial transaction, yet its own papers acknowledge that the purchase price is being commensurately reduced because Imperial is assuming these debts: "Imperial's purchase price is simply being adjusted to reflect the obligations directly related to and inseparable from the assets Mountain States and BC&D are selling." (Apollo Br. at 5.) That effectively constitutes payment, as this Court has found. (Hearing Tr. at 59.) Indeed, Section 13(d)'s prohibition expressly proscribes Apollo's paying debts "directly or indirectly." [7]

For the same reason, there is no basis for Apollo's claim that Section 13(d) is inapplicable because it does not restrict the sale of assets. (Apollo Br. at 5.) Section 13(d) does restrict the payment of debt, and the fact that assets are being sold as part and parcel of the

---

[7] The Note also contains a provision entitled "Noncircumvention," in which Apollo agreed that it would not take "any voluntary action to avoid or seek to avoid the performance of any of the terms of this Note." (Exhibit B to the Glickman Decl. at § 9.)

transaction does not change the fact that debt is being paid as well.  While an asset sale alone might not be problematic, Apollo has conjoined the two.  Apollo claims it has to do so because the debt is secured and runs with the assets, but securing impermissible debt does not render it permissible, as this Court recognized.  (Hearing Tr. at 24.)

In addition, Apollo asserts that Section 13(d) only prohibits the payment of Permissible Indebtedness, which is defined in the Note as "(i) the Senior Indebtedness and (ii) the Indebtedness evidenced by this Note and the Other Notes."  (Exhibit B to the Glickman Decl. at §27(z).)  However, the Court already has rejected such over-parsing of this language.  (Hearing Tr. at 59.)  Having violated Section 13(b) (which Apollo ignores) by incurring the debt to begin with, Apollo cannot capitalize on that misconduct by claiming it is entitled to pay the debt because it is not Permissible.  While Apollo (without support) characterizes the covenants as "restrictive covenants" that must be narrowly construed, it ignores the obligation of good faith and fair dealing inherent in all contracts.  *See Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, No. 07 Civ. 978 (SAS), 2007 WL 1988144, at *4 (S.D.N.Y. July 9, 2007).  In fact, Section 9 of the Note expressly requires that Apollo "at all times in good faith carry out all of the provisions of th[e] Note."  The obligation of good faith and fair dealing obviously prevents a party from taking advantage of its own wrong.

Next, Apollo makes the extraordinary assertion that Castlerigg cannot invoke Section 13(d) because it prohibits payment of Castlerigg's Note itself -- specifically, the Permitted Indebtedness that is not to be paid upon the occurrence of Events of Default is defined to include the Note.  This merely deals with the possibility that there will be more than one Note holder (so that one holder is not preferred over another), but in this case it has not been disputed that Castlerigg holds the only Note.  (Initial Mem. at 9.)  Accordingly, Castlerigg obviously can

waive this provision as to itself, and manifestly did so by virtue of sending the Event of Default Redemption Notice to Apollo. (Exhibit F to the Glickman Decl.)

Finally, noting that the debt prohibited by the Note is the defined term "Indebtedness," Apollo argues that none of the debt to be paid in connection with the Apollo/Imperial transaction meets the definition. "Indebtedness" is defined in Section 27(s) (Exhibit O to the Glickman Decl.) and is extremely broad, with eight subparts that include such expansive terms as "all indebtedness for borrowed money." Apollo asserts, "[o]f the obligations to be assumed by Imperial, the only two caterogies that could possibly qualify as 'Indebtedness' are the $800,000 collateralized bank note, and the obligations that Mountain States and BC&D regularly incur in connection with their leases" (Apollo Br. at 6), but that is based on the unsupportable claim that Indebtedness "generally refers to contractually incurred liabilities." *Id.* In fact, however, there is nothing in the definition that so restricts the term.

Nor does Apollo succeed in disqualifying the two types of obligations it concedes "could possibly qualify as 'Indebtedness.'" Apollo claims that the $800,000 note is not covered because it antedated the Note. However, there is no such limitation in the definition of Indebtedness or elsewhere in the Note. Indeed, Section 13(b), ignored by Apollo, specifically provides that Apollo "shall not suffer to exist" any Indebtedness other than Permitted Indebtedness, so it precludes pre-existing debt unless Permitted. Only one such debt is Permitted: "Senior Indebtedness" incurred in June 2005 (which precedes the December 29, 2006 Note). (Exhibit B to the Glickman Decl. at §§ 27(s) and 27(ii).) Nor does it matter that the $800,000 is collateralized. As discussed above, this Court properly considered and rejected the similar argument that securing impermissible debt somehow makes it permissible, and concluding otherwise would eviscerate the debt covenants.

As for what Apollo characterizes as "the obligations that Mountain States and BC&D regularly incur in connection with their leases," Apollo does not dispute these are covered by the term Indebtedness but rather argues, "the note cannot mean what it purports to say." (Apollo Br. at 6, 7.)  However, there is nothing remarkable about the fact that a creditor would want a debt covenant to be as broad as possible.  If in fact Apollo were correct that in some instances prohibiting such debt would impede Apollo's ability to conduct its business, Apollo is perfectly free to consult Castlerigg and seek a waiver on the grounds that it is necessary and therefore would be in Castlerigg's own self-interest.  The breadth of the definition of Indebtedness simply requires Apollo to do so, and enables Castlerigg to make that judgment for itself.[8]

Based on all of the foregoing, Plaintiff requests that this Court grant the preliminary injunction and such other and further relief as this Court deems just and proper.

Dated:  New York, New York
       August 10, 2007

                                      SCHULTE ROTH & ZABEL LLP

                                      By:  /s/ Alan R. Glickman_____
                                            Alan R. Glickman
                                            David M. Hillman
                                            Dana M. Roth
                                            Matthew J. Gagnon
                                            919 Third Avenue
                                            New York, New York  10022
                                            (212) 756-2000
                                            *Attorneys for Castlerigg Master Investments Ltd.*

---

[8]    Apollo also contends that its "business judgment" that the Imperial Transaction is good for Apollo should not be disturbed.  However, the business judgment rule has no applicability here.  This is not a derivative suit brought on Apollo's behalf to challenge a board of directors' determination as to what is good for the Company.  It is an action brought by an independent third party based on contractual commitments.

10487138.1                                  10